2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 9 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| WILLIAM K., Individually | § | |
| and as Next Friend of C.K., a minor child | § | |
| | § | |
| V. | § | CASE NO. B-00-125 |
| | § | |
| HARLINGEN CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |
| AND LUCIUS D. BUNTON, HEARING | § | |
| OFFICER FOR THE TEXAS | § | |
| EDUCATION AGENCY | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT AND APPLICATION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES, Plaintiff, William K., Individually and as Next Friend for C.K., a minor child, (hereinafter sometimes referred to as "Plaintiff"), complaining of the Harlingen Consolidated Independent School District, (hereinafter sometimes referred to as "HCISD"), and the Texas Education Agency, (hereinafter sometimes referred to as "TEA"), and in support hereof, Plaintiff would show the Court as follows:

### FACTS

1.      Plaintiff is a resident of Harlingen, Cameron County, Texas. Plaintiff is the natural father and custodial parent of CK, a 10 year-old child. Plaintiff and CK reside together in Cameron County, Texas, and Plaintiff has legal authority to bring this action.

2.      HCISD is a school district of Cameron County, Texas. It may be served with citation by serving its Superintendent, Dr. Jesus Chavez, 1409 E. Harrison, Harlingen, Cameron County, Texas.

3.      TEA, by and through its appointed hearing officer, Lucius Bunton, (hereinafter sometimes called "Bunton"), made rulings which violated CK's and the Plaintiff's federal and state

1

CtisPDF - www.fesio.com

constitutional and legal rights in an administrative proceeding styled: **Christopher K., b/n/f v.**

**Harlingen Independent School District**, Docket No. 388-SE-600.   Since the filing of this suit,

Lucius Bunton has resigned as hearing officer in this case and a new hearing officer has been

appointed, Stephen Webb.  The hearing officers at issue are agents of TEA.  TEA may be served

with summons by and through its Commissioner of Education, Jim Nelson, at 1701 North Congress

Avenue, Austin, Travis County, Texas 78701.

4.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331 because the issues to

be determined by the Court involve the interpretation of Plaintiff and CK's rights under several

federal statutes and the United States Constitution..

5.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391.  In this

regard, a substantial part of the events at issue took place in the Southern District of Texas and

HCISD's principal place of business is in the Southern District of Texas.

6. CK is a 10-year-old child who has been diagnosed with numerous mental disorders and learning

disabilities including Bi-polar Disorder with Psychotic Features, Attention Deficit Disorder with

Hyperactivity, and Pervasive Developmental Disorder, among other disabling disorders.  CK takes

significant dosages of several medications including: Tegretol, a mood stabilizer; Risperdal, an anti-

psychotic; Adderall, to control hyperactivity; and Synthroid for a hypothyroid condition.  CK's

numerous psychological disorders and learning disabilities combine to create intertwined obstacles

which need to be jointly overcome to enable CK to advance with his education. As a student at

HCISD's Treasure Hills Elementary School for the past five (5) years (Kindergarten through 4th

Grade), CK has barely advanced academically.  CK currently reads in the upper First Grade range

even through he has a verbal IQ in the low average range.  CK is far below where he should be

academically due to a failure of HCISD to properly address CK's mental disorders and learning

2

disabilities.

7. CK is a patient of Joseph Biederman, M.D. and Ellen Braaten, Ph.D. of Harvard Medical School and Massachusetts General Hospital. CK is also a patient of Susan Ander, Ph.D. of San Benito, Texas. All three doctors have recommended that CK be placed into a special education residential school to help CK with educational and social skills and to treat his anti-social behaviors. All three doctors have given their written opinions strongly recommending residential placement and these written opinions been delivered to HCISD.

8. Accordingly, on or about April 28, 2000, Plaintiff requested that HCISD conduct an ARD meeting to discuss and determine whether CK should be placed in a special residential school as recommended by Dr. Biederman, Dr. Braaten and Dr. Ander.[1] The ARD meeting was set by HCISD for May 30, 2000.

9. It is Plaintiff's information and belief that soon after the Plaintiff requested the ARD meeting, that HCISD hired the law firm of Walsh, Anderson, Brown, Schulze & Aldridge, P.C. of Austin, Texas, to represent HCISD for the purposes of defeating Plaintiff's request to have HCISD pay for CK's placement into a special education residential facility as recommended by the aforesaid doctors.[2] At this time, HCISD did not inform CK's parents of its intent to oppose Plaintiff's request. In fact, HCISD's employees verbally pretended to be open minded about the issue making comments about how Dr. Biederman was so impressive and like comments, when in fact, HCISD's attorneys

---

[1] An ARD meeting is the Texas version of an IEP meeting as described in 20 U.S.C. §1414(d). An ARD meeting is a meeting between the parents and the child's teachers, counselor and principal. See 34 C.F.R. 300.344 (1999) which describes who is on the ARD team. ARD meetings are supposed to be non-adversarial and private.

[2] Special education residential schools are expensive and HCISD apparently made a decision to fight the Plaintiff's request even before reviewing all of the facts.

3

and HCISD employees began preparing their opposition to deny Plaintiff and CK their federal rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq. (1997).

10.     On or about May 7, 2000, HCISD requested that CK's parents give consent to HCISD to conduct an educational evaluation of CK. CK's parents initially gave approval to HCISD to evaluate CK for the ARD meeting but at that time, Plaintiff believed that HCISD was going to do an in-house educational evaluation. There was never any statement made in requesting this evaluation that HCISD was rejecting the testing and conclusions of Dr. Biederman, Dr. Braaten, and Dr. Ander. No where in the alleged consent form signed by the Plaintiff was the testing fully explained nor did it state who was performing the tests. There was no "informed consent" as required by 20 U.S.C. §1414 and 34 C.F.R. §300.505 (1999). When Plaintiff signed said form, he was under the belief that HCISD was going to have one of its employees or possibly a local psychologist and/or educator test CK's reading and grade level. In any case, Plaintiff erroneously believed at that time that the testing by HCISD would be objective, unbiased and fair. Accordingly, since these were not the intentions of HCISD, Plaintiff never gave "informed consent." See also, e.g., 34 C.F.R. §300.500 and 34 C.F.R. §300.505 (1999).

11. It is Plaintiff's information and belief that shortly after Plaintiff requested the ARD meeting for the purposes of addressing Dr. Biederman's, Dr. Braaten's and Dr. Ander's opinions, (that CK needed to be placed in a special education residential school), HCISD's attorneys hired a testifying expert who HCISD and its said attorneys knew would give opinions favorable to HCISD's secret objective to deny CK his rights as a mentally handicapped child under federal law. Sometime between April 28, 2000 and May 19, 2000, HCISD's said attorneys hired Dr. Thomas Oakland, an alleged educational expert from Gainesville, Florida, who agreed, for a professional fee, to fly to Harlingen, Texas, and gather information to support his opinions. CK's parents, including the

4

Plaintiff, were not informed between April 28, 2000 and May 19, 2000 that HCISD was opposing

Plaintiff's request for residential placement, that HCISD had hired a law firm to oppose Plaintiff's

request, and that HCISD hired Dr. Oakland to defeat CK's said federal right to a residential special

education placement.

12.    On or about Friday, May 19, 2000, while Plaintiff was vacationing in California, Plaintiff had

a telephone conversation with HCISD's "Director of Special Education", Jolaine Lanehart, who for

the first time informed CK's father that HCISD had hired attorneys and that <u>HCISD's said attorneys</u>

<u>had hired Dr. Thomas Oakland</u> to perform educational and psychological testing on CK.  Being that

HCISD had hired lawyers when HCISD had given no previous verbal or written indication that it

was contesting Plaintiff's request for private residential school placement,[3] being that HCISD's

lawyers hired Dr. Oakland (from Gainesville, Florida), and not HCISD officials, and being that

Plaintiff had no information about Dr. Oakland, Plaintiff verbally withdrew his consent on or about

May 19, 2000, (if in fact, there was ever any "informed consent").  On May 25, 2000, after returning

from vacation in California, Plaintiff then delivered to HCISD a letter via first class mail and

facsimile.  Said letter was merely a written confirmation of the May 19, 2000 verbal statement to

Ms. Lanehart by Plaintiff that CK's parents were not agreeing to the examination of CK by Dr.

Oakland.  See **Exhibit "A"** attached hereto.  HCISD admits that it received both the verbal and

written recission of Plaintiff's consent to have Dr. Oakland conduct an evaluation of CK.

13.    Despite being denied permission by Plaintiff to examine CK, on <u>May 26, 2000</u>, HCISD had

Oakland fly to Harlingen, Texas and Oakland was illegally given by HCISD and Oakland examined

---

[3]  In fact, HCISD's ARD committee had for a year and a half accepted the opinions and
diagnoses of CK's treating doctors, Dr. Joseph Biederman and Dr. Ellen Braaten of Harvard
Medical School, Boston Massachusetts and the opinions and diagnoses of said doctors had been
received and utilized in previous ARD meetings by HCISD personnel.

CK's private school and medical records. Dr. Oakland also interviewed CK's teachers, counselor and principal, all in violation of CK's privacy rights under federal and Texas law. A true and correct copy of Oakland's report is attached hereto as **Exhibit "B"** and incorporated herein by reference for all purposes. In said report, Oakland admits that he reviewed CK's medical and educational records.

14.  By its actions described hereinabove, HCISD has violated Plaintiff's and CK's right to privacy under the following state and federal authorities: Texas Occupation Code, §159.001 through §159.009 (Vernon 1999); Texas common law "invasion of privacy" tort law; Federal Constitutional Rights to "privacy"; 20 U.S.C. §1232g(b)(1); 20 U.S.C. §1232g(2)(A);   34 C.F.R. 99.30.and Plaintiff's and CK's privacy rights under the Texas Constitution.

15.  On or about May 30, 2000, the ARD meeting was conducted at the Treasure Hills Elementary School, Harlingen, Texas.  Despite being requested to leave by the Plaintiff, HCISD's attorneys attended the said meeting and refused to leave the meeting in violation of federal law. See 34 C.F.R. §300.344 which specifically states who is on the IEP team. The IEP team does not include a school district's attorneys.  HCISD's said attorneys attempted to dominate the meeting and as a result, Plaintiff and CK were further denied their federal rights to have a parent-teacher conference on this issue with the IEP team.  At the conclusion of said meeting, Plaintiff asked for the hearing officer, Principal Linda Krabil, to take a vote among the ARD committee members.  Mrs. Krabil then informed the Plaintiff that no vote would be taken because HCISD has already made its decision at "higher" level and that the matter was "out of her hands."[4]

16.  On or about June 21, 2000, Plaintiff filed with the Texas Education Agency an appeal of the decision by HCISD to deny CK the services recommended by Dr. Biederman, Dr. Braaten, and Dr.

---

[4] It is apparent that HCISD administrators intimidated the principal and teachers from performing their duties as IEP Team members all in violation of federal law.

Ander. Bunton was assigned by TEA to be the Special Education Hearing Officer.[5]

17.    On or about June 30, 2000, HCISD filed its Motion to Compel a Comprehensive Assessment citing the case of **Andress v. Cleveland**, 64 F.3rd 176 (5th Cir. 1995) as its sole authority.  In said motion, HCISD argued that it had the right to use the expert of its choice to examine CK and that CK's parents must comply with the examination or be denied any right to have CK receive residential special education services.  A true and correct copy of said pleading is attached hereto as **Exhibit "C"** and incorporated herein by reference for all purposes.

18.    On or about July 10, 2000, Plaintiff filed Petitioner's Response to Respondent's Motion to Compel a Comprehensive Individual Assessment and Motion to Strike Dr. Oakland.  A true and correct copy of said pleading is attached hereto as **Exhibit "D"** and incorporated herein by reference for all purposes.  In said pleading, Plaintiff correctly argued that **Andress v. Cleveland**, 64 F.3rd 176 (5th Cir. 1995), was effectively overruled by Congress when it overwhelmingly passed the bi-partisan 1997 amendments to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq.   In the sweeping 1997 revisions to IDEA, Congress re-wrote the procedures for conducting evaluations and reevaluations of children and set forth the changes in 20 U.S.C. §1414 and 20 U.S.C. §1415.  Said revisions require "informed parental consent" and provides mediation procedures when a parent refuses to consent.

19.   On July 13, 2000, Bunton entered an Order Granting Respondent's Motion to Compel a Comprehensive Individual Assessment.    A true and correct copy of said Order is attached hereto as **Exhibit "E"** and incorporated herein by reference for all purposes.  Said Order violates 20 U.S.C. §1414 and §1415, (as amended in 1997).

20.  On July 31, 2000, Plaintiff filed with Bunton a Motion for Clarification.   In said motion,

---

[5] See paragraph 3 above for the style of the administrative proceeding.

7

Plaintiff requested that Bunton clarify the following questions:

A. Do the parties have to agree upon the person who performs the examination or does the school district get to pick their own examiner?

B. Will CK's parents and/or their doctors be permitted to be present?

C. Will the parents of CK be permitted to videotape the examination in a non-intrusive manner? and,

D. Will it be disclosed to the Petitioner in detail the methods and types of examination prior to the examination itself?

A true and correct copy of said pleading is attached hereto as **Exhibit "F"** and incorporated herein by reference for all purposes.

21. On or about July 31, 2000, HCISD filed its Response to Motion for Clarification. A true and correct copy of said pleading is attached hereto as **Exhibit "G"** and incorporated herein by reference for all purposes. In its Response, HCISD refused to acknowledge any parental rights exist during the testing of CK. HCISD's attorneys further sent to Plaintiff a letter dated August 1, 2000, which further shows their refusal to follow the procedures set forth in 20 U.S.C. §1414 and §1415 (1997). A true and correct copy of said letter is attached hereto as **Exhibit "H"** and incorporated herein by reference for all purposes.

22. On or about August 9, 2000, Bunton entered an Order denying Plaintiff's Motion for Clarification. A true and correct copy of said Order is attached hereto as **Exhibit "I"** and incorporated herein by reference for all purposes.

## REMEDIES SOUGHT

23. **DECLARATORY JUDGMENT:** Based upon the facts set forth hereinabove, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §2201 and Federal Rules of Civil Procedure 57 against

8

HCISD, TEA, and TEA's hearing officers, that Plaintiff and CK have the following rights prior to CK being examined by HCISD under 20 U.S.C. §1414 and 1415:

a. That Plaintiff should be informed who the HCISD intends to use to examine CK and that if Plaintiff objects as to the identity of said individual because of Plaintiff's concerns that said individual is not objective or qualified, then the parties should proceed to mediation as provided by 20 U.S.C. §1415(e) to resolve this dispute;

b. That CK's parents should be afforded the opportunity to observe all phases of testing and examination so long as the observation is non-intrusive and does not interfere with the testing. This can be accomplished either through the use of a one-way window or through video camera observation;

c. That CK's psychologist and educational expert, Susan Ander, Ph.D., should be permitted to observe the testing or a video tape of the testing so that Plaintiff has the opportunity to scrutinize the testing that is so important to CK's future; and

d. That the types of testing and the procedures be fully explained prior to the testing so that Plaintiff is provided "informed consent" as mandated by 20 U.S.C. §1414.

24. **INJUNCTIVE RELIEF:** Based upon the facts set forth hereinabove, Plaintiff seeks a preliminary injunction and after final hearing hereof, Plaintiff seeks a permanent injunction pursuant to Federal Rules of Civil Procedure 65 against HCISD, TEA, and TEA's hearing officers enjoining HCISD, TEA and TEA's hearing officers from denying Plaintiff and CK the following rights under 20 U.S.C. §1414 and 1415:

a. That Plaintiff should be informed who the HCISD intends to use to examine CK and that if Plaintiff objects as to the identity of said individual because of Plaintiff's concerns that said individual is not objective or qualified, then the parties should proceed to mediation as provided by

20 U.S.C. §1415(e) to resolve this dispute;

b. That CK's parents should be afforded the opportunity to observe all phases of testing and examination so long as the observation is non-intrusive and does not interfere with the testing. This can be accomplished either through the use of a one-way window and/or through video camera observation;

c. That CK's psychologist and educational expert, Susan Ander, Ph.D., should be permitted to observe the testing or a video tape of the testing so that Plaintiff has the opportunity to scrutinize the testing that is so important to CK's future; and

d. That the types of testing and the procedures be fully explained to the Plaintiff prior to the testing so that Plaintiff is provided "informed consent" as mandated by 20 U.S.C. §1414.

25. It is clearly apparent from the facts set forth in this verified pleading that if the relief sought is not granted, that Plaintiff and CK will suffer an immediate and irreparable injury being that HCISD will conduct the examination of CK without following the procedures mandated by 20 U.S.C. §1414 and 1415 and will violate Plaintiff's right as a parent to be fully informed about medical and educational testing. Further, HCISD and TEA (by and through its hearing officers) will violate the most basic constitutional and legal rights of a parent to be present during a doctor's examination of their child.

26. Additionally, being that Plaintiff has clearly established his legal right to the injunctive relief sought, there is an established likelihood of success on the merits.

27. Further, to preserve the status quo would be to preserve and allow the execution of acts which will violate the Plaintiff's and CK's federal rights. Accordingly, after notice and hearing to HCISD and TEA, the preliminary injunction should be granted to the Plaintiff as requested hereinabove.

28. Further, after final hearing hereof, the Court should enter a permanent injunction as requested

10

herein.

29. Plaintiff prays that the bond be set at a moderate and reasonable sum, or if the law permits, that the bond be waived by the Court.

30. **MONETARY DAMAGES**: The said illegal and tortious acts or omissions of HCISD and Oakland described in paragraphs 9-14 hereinabove, have been the proximate cause of actual damages to the Plaintiff and CK. Accordingly, Plaintiff seeks judgment of and from HCISD in an amount in excess of the minimum jurisdictional limits of this Court representing Plaintiff's and CK's actual damages pursuant to the authorities set forth in paragraph 14 above.

31. HCISD's actions in illegally disclosing CK's medical and educational records to Dr. Oakland was done by officers and vice principals of HCISD intentionally with the motive to deprive Plaintiff and CK their rights under Texas and federal law and the Texas and U.S. Constitutions. Accordingly, Plaintiff further seeks recovery of punitive damages of and from HCISD in an amount of $50,000.00.

32. Plaintiff further seeks recovery of Plaintiff's costs of court and reasonable attorneys fees in an amount in excess of the minimum jurisdictional limits of this Court.

33. Although the said administrative proceeding is still pending, there is no need for the Plaintiff to exhaust his administrative remedies in this situation because to do so would be futile and inadequate for the Plaintiff. See **Honig v. Doe**, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). In this regard, if Plaintiff waits for the administrative remedies to be exhausted, Plaintiff's and CK's federal rights described herein would have already been violated and Plaintiff and CK will be forever irreparably harmed and HCISD would have benefitted from the poisonous fruits of their illegal actions. Therefore, as for the injunctive relief and declaratory judgment sought by the Plaintiff, there is no need to exhaust administrative remedies. Further, as for the monetary damages sought, those causes of action are not the subject matter of the administrative proceeding. Plaintiff seeks

11

damages against HCISD only for violation of Plaintiff's and CK's privacy rights under federal and state statutes, Texas common law and the Texas and U.S. Constitutions. Accordingly, the suit for monetary damages is exempt from principles at issue.

**WHEREFORE, PREMISED CONSIDERED**, Plaintiff respectfully requests that HCISD and Bunton be cited to appear and answer herein, and after notice and hearing, that Plaintiff be granted a preliminary injunction against HCISD and Bunton as requested hereinabove, and that after final trial hereof, that the Plaintiff be granted a declaratory judgment and permanent injunction against HCISD and Bunton as requested hereinabove, and that after final trial hereof, that the Plaintiff be granted judgment of from HCISD in an amount in excess of the minimum jurisdictional limits of this Court representing the Plaintiff's and CK's actual damages, punitive damages, Plaintiff's reasonable attorneys fees, Plaintiff's costs of court, and pre-judgment and post judgment interest at the maximum legal rate, and that the Court grant to the Plaintiff such other and further relief, special or general, legal or equitable, as Plaintiff may show himself and CK justly entitled to receive.

Respectfully submitted,

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**
312 E. Van Buren
P. 0. Box 2878
Harlingen, Texas 78550
Tel. (956) 425-2000
Fax No. (956) 421-4258

BY: _____
        William Kimball
        State Bar No. 11418700
        Federal ID No. 6159

PRO SE AND AS ATTORNEY FOR CK

12

STATE OF TEXAS                    §
                                 §
                                 §
COUNTY OF CAMERON                §

## VERIFICATION

**BEFORE ME**, the undersigned Notary Public, personally appeared William Kimball, who under oath deposed and stated as follows:

"My name is William Kimball and I am over the age of 18 years and I am competent to testify to the facts stated herein. I am a licensed attorney in the State of Texas and I have been practicing law in Cameron County, Texas since 1984. I have read the above and foregoing pleading and each and every fact set forth therein is true and correct and within my personal knowledge except where it is stated that facts are based upon Plaintiff's information and belief. Facts stated based upon information and belief are my conclusions based upon information known to me.

_____
William Kimball

SIGNED AND SWORE TO BEFORE ME, under oath on this _29th_ day of August, 2000.

ENEDINA DELATORRE
NOTARY PUBLIC
State of Texas
Comm. Exp. 09-11-2001

_____
Notary Public in and for the State of Texas

My Commission expires on ___09-11-2001___.

13

WILLIAM KIMBALL
425 Palm Valley Circle
Harlingen, Texas 78552
(956) 364-0691

May 25, 2000

Jolaine Lanehart
Harlingen Consolidated ISD          Fax 427-3589 and Regular Mail
1409 E. Harrison
Harlingen, Texas

RE: CHRISTOPHER KIMBALL, DOB 12/19/89

Dear Ms. Lanehart:

This letter is to follow up my verbal conversation with you last week via telephone.

You informed me that the school district's attorneys picked Dr. Oakland to do an independent evaluation of Christopher. It is obvious to me that Dr. Oakland was hired as a testifying expert and not really for an objective evaluation. Accordingly, I am withdrawing my consent to have Christopher evaluated by the school district.

When I signed the consent, I was under the impression that it was for the school's counselor or a local psychologist to perform an independent study. I feel the district has made up its mind by hiring legal counsel and having the legal counsel now hire a professional expert witness.

Dr. Joseph Biederman was hired by me because I wanted the best doctor in the world for Chris. Dr. Biederman is world renowned in the field of child psychiatry and psychopharmacology. He is well published and leads numerous research projects for Harvard Medical School on child bipolar disorder, ADHD, and learning disabilities related to these disorders. I hired Dr. Biederman because he could and has helped Chris. I did not know that Dr. Biederman (and Dr. Braaten) from Harvard would strongly recommend a special school for Chris when I hired them. All I know is that they have been correct in every recommendation made so far.

Dr. Oakland was apparently hired to testify and his opinions are probably a foregone conclusion that Chris does not need a special school. Unfortunately, attorneys can call expert referral services that will find for a fee experts on just about every topic that are friendly to the attorney's cause. I asked for a copy of Dr. Oakland's resume from you and I have not received the same. I also asked for a written explanation as to how the district concluded that Dr. Oakland from Gainesville, Florida, is the best doctor for Christopher. I have not received any response. Accordingly, I have no choice but to withdraw my consent.

If you have any questions, please call me. I am willing to talk to the district's attorney if he or she wishes to talk to me. In any case, I wish to proceed with the ARD meeting. Please call me to schedule the same.

Yours very truly,

William Kimball

cc: Mrs. Linda Krabill
    Mr. Rocky Parkert



EXHIBIT
A

000087

# KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.

SKAGGS & KOPPEL BUILDING
312 EAST VAN BUREN AVENUE
POST OFFICE BOX 2878
HARLINGEN, TEXAS 78551

LLINS M. KOPPEL
CHAEL R. EZELL°
FREY L. JACKSON, P.C.
LIAM F. KIMBALL

JANDRO J. GARCIA

TELEPHONE: (956) 425-2000
FACSIMILE: (956) 421-4298
Email: wkimball@xxxxxx.com

# FACSIMILE TRANSMISSION COVER SHEET

| DATE : 5-25-00 | TIME : 11:14 am |
| TO : Jolaine Laneheart | FAX #: 427-3589 |
| FROM: William Kimball | |
| RE : Christopher Kimball | |

Original will NOT follow ___  ✓ Original will follow via: ✓ Regular Mail ___ Certified Mail
___ Overnight Delivery ___ Messenger

**CONFIDENTIALITY NOTICE**

IS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND NFIDENTIAL, OR WHICH CONSTITUTES WORK PRODUCT AND IS EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE ENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ' DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE TIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

AL NUMBER OF PAGES, INCLUDING COVER PAGE: 2

do not receive all the pages or if they are illegible, please call the operator at (956) 425-2000.

| Message/Special Instructions: |

000088

°Board Certified Residential Real Estate Law, Commercial Real Estate Law, Texas Board of Legal Specialization

```
HP LaserJet 3100                                    SEND CONFIRMATION REPORT for
Printer/Fax/Copier/Scanner                          Koppel, Ezell, Jackson, & Kimba
                                                    KOPPEL, EZELL, ET AL
                                                    May-25-00  11:15AM
```

| Job | Start Time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|-------------------|------|-------|------|--------|
| 423 | 5/25 11:15AM | 0'42" | 956 427 3589 | Send............. | 2/ 2 | EC144 | Completed.................................... |

```
        Total    0'42"    Pages Sent: 2    Pages Printed: 0
```

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**

### FACSIMILE TRANSMISSION COVER SHEET

| DATE : | 5-25-00 | TIME : | 11:17am |
|--------|---------|--------|---------|
| TO : | Julaine Lownace | FAX#: | 427-3589 |
| FROM: | William Kimball | | |
| RE : | California Kimball | | |

___ Original will NOT follow   ✓ Original will follow via   ___ Regular Mail   ___ Certified Mail
___ Overnight Delivery   ___ Messenger

TOTAL NUMBER OF PAGES, INCLUDING COVER PAGE: 2
If you do not receive all the pages or if they are illegible, please call the operator at (956) 425-3333.

Message/Special Instructions

000089

FROM : TOM OAKLAND C_____ .    J96        PHONE NO. : 352 376 8396

(4)

(956)
421 -
4258

Thomas Oakland Ph.D.
Psychologist

1921 SW 8th Drive
Gainesville, Fl 32601-8405
(352) 376 8396 telephone and fax

I was asked by the Harlingen Consolidated ISD to provide an on-site program review and
consultation in reference to the program being provided to Chris Kimball, a ten year old
student attending the Harlingen Consolidated ISD. I was requested to provide input and, if
warranted, recommendations prior to the forthcoming ARD meeting concerning two issues:
a need for the district to conduct an assessment that addresses Chris' academic and
nonacademic needs and whether program changes are needed.

To those ends I conducted a comprehensive review of available school and medical
records, observed Chris' ability to function in various settings, reviewed the behavioral
intervention strategies in place for him, and interviewed staff and the school's physical
resources on May 26th.

I met with the following staff during my visit:
Zelda Cano (Chris' self-contained classroom teacher)
Marlene Carper (assessment specialist)
Patricia Hofheinz (Chris' mainstream teacher)
Linda Krabill (principal of Treasure Hills Elementary School)
Jolaine Lanchart (director of special education)
Rebecca Montemayor (physical education teacher)
Jason (Rocky) Parkert (Chris' case manager and a self-contained classroom teacher)

I observed Chris in three settings: his self-contained classroom, his mainstream classroom,
and during physical education. The first two settings provided opportunities to observe his
behaviors in structured educational environments, and the third setting provided
opportunities to observe his behaviors in an unstructured educational environment.

Brief Educational History
Chris was referred for special education services in 1995. He was five years old and
attending Kindergarten. The majority of his behaviors that prompted concerns at that time
and during his early elementary years focused on inadequate attention and concentration,
speech and language-related impairments, and low achievement in math and reading. He
was found eligible for special education services in 1995 and has been receiving special
education services since first grade. Diagnoses have included Learning Disabled, Other
Health Impaired (OHI, given his ADHD qualities), and Emotional Disturbance (ED).
Related services included those to address speech and occupational therapy needs.

An evaluation conducted in the spring of 1998 found Chris' development in the following
areas to be below average: mental abilities, adaptive behaviors, receptive language skills,
fine motor development, and achievement in reading and math. In contrast, his expressive
language skills together with emotional and social behaviors at home and school were
within the normal range.

Self-contained Educational Setting
Chris receives his educational program in a self-contained class during much of the
morning. He qualifies for these services given his dual diagnosis of OHI and ED. His two
teachers, Mr. Parkert and Ms. Cano, work together as a team in providing services to the
students in their somewhat large and well-equipped classroom. They 15 pupils; thus, there

1

000124

EXHIBIT
B

the ratio between pupils and teachers is 7 1/2 to 1. Many students are out of the classroom for varying degrees of time during the school day. Four students, including Chris, were in class during my observation. Mr. Parkert and Ms. Cano are familiar with Chris' IPP, are conscientious in its implementation, and request needed resources when they are unavailable.

**Treasure Hills Elementary School**
Treasure Hills Elementary School has a reputation in the community for providing excellent educational services. Teacher and parent expectations are high, achievement levels generally are high, and parent involvement is strong. The principal, Linda Krabill, is supportive of special education services within her building. She also reports considerable support for these services from other faculty. Chris' teachers are academically and professionally prepared. All have at least a bachelor's degree, are certified in those areas in which they teach, and are experienced teachers.

Ms. Krabill reports Chris rarely has demonstrated a lack of self-discipline that warranted his being referred to her office. She reported on a recent school-sponsored day trip Chris and others took to Padre Island. Chris displayed excellent behaviors, consistent with those displayed by his mainstream peers.

**Education in Mainstream Settings**
Chris' physical education program occurs in a mainstream setting. His teacher, Ms. Montemayor, reports Chris displays no behavior problems in this unstructured setting. He blends in well with other students, is not inclined to initiate interactions with other students in the physical education class, and befriends mainly those in his class.

I also observed Chris in Ms. Hofheinz's classroom, a mainstream fourth grade setting in which Chris and other students receive instruction in science and social studies. Ms. Hofheinz describes Chris as being calm, easy going, interested in these subjects, generally not off task yet on occasion needing redirection and monitoring (similar to the needs of many fourth grade students in regular education). I observed Chris completing a lesson that required him to fill out a worksheet. He dictated his answers to another student who recorded his answers on the worksheet.

Classroom modifications include the following: Chris receives less complex questions and shorter assignments, is provided more time to complete assignments, is praised more frequently, and, as noted above, receives writing assistance from peers.

**Chris' Classroom Behaviors**
Chris generally is well behaved throughout the school day. He does not display behaviors at school that pose a problem to his safety or that of others. He never has physically confronted his teachers or peers. On one occasion, when frustrated, he picked up a chair. On another occasion he grasped a pencil in his fist in a knife-like manner. Both events were brief and appeared during a period of frustration. However, these are the only two events of this nature reported by his teachers during the last few years. Chris' teachers report his behaviors do not adversely impact their ability to provide for his academic and non-academic needs through his current school program.

On occasion, Chris speaks somewhat loudly and bluntly, is not focused, does not initiate social interactions with peers, and has a tendency to whine when asked to perform some activities; however, this whining is short-lived. There are no current reports of him becoming upset upon losing in a competitive situation or displaying hallucinations. He displays some diminished attention prior to lunch, at which time he takes additional

**2**

000125

medication to help overcome his ADHD-related behaviors. However, these behaviors improve following his lunch and medication.

His behavioral plan emphasizes three qualities: Chris will 1) stay in his assigned place at all times, 2) will speak and answer in a respectful manner; and 3) will follow teacher's directions. Chris level of attainment of 1) is very high; he generally displays these behaviors consistently. Chris level of attainment of 2) is somewhat high yet has not reached a level where these behaviors are habitual. Chris level of attainment of 3), although generally present, is less frequent and remains an area requiring continued attention.

Chris often displays self-restraint and good judgment. I observed him during a self-initiated 10 minute time out period at the beginning of his physical education class. His teacher had imposed this time out period the previous day on him and other students due to their failure to return promptly from the bathroom. In addition, his principal and teachers report that, when confronted by older boys, Chris has the ability to avoid confrontation and walk away. He also has shown considerable maturity by requesting assistance from the school counselor as to ways he can avoid and deal with confrontation when it arises.

Chris' Achievement
Chris' achievement is below grade level. It is highest in math, lower in reading, and lowest in writing. His teachers have utilized various instructional and curricular strategies together with technology to help advance his abilities in these three academic areas.

Recommendations

As noted above, I was asked to address two issues: is there is need for the district to conduct an assessment that addresses Chris' academic and nonacademic needs and whether program changes are needed. These two issues are discussed below.

Chris' last formal assessment that included school-based data occurred in the winter of 1998. Additional clinically based assessments have been performed by professionals that do not consider school-based data. Thus, I recommend a formal reassessment that examines Chris' academic and nonacademic qualities, reviews any external reports and, as needed, integrates their relevant information for purposes of guiding Chris' education.

My review of Chris' educational and behavioral programs suggest they are well-established, well-staffed, and provide needed services and benefits. Thus, based on my review of all existing data and my observations, Chris appears to be functioning well and receiving academic and nonacademic benefits from his present program. Thus, there is no need to suggest significant changes to his current educational and behavioral plans.

However, I would encourage the next ARD committee to consider the following issues.

Chris' present behavior plan focuses on his remaining in his assigned place at all times. This behavior is well-established and may be removed from the current list of three, to be replaced by another important behavior that may require attention.

The school staff, especially those providing special education services, may benefit from the provision of additional consultation services from professionals with expertise in childhood psychopathology, especially in the implementation of behavioral and educational programs for children who exhibit low incidence disorders (e.g., pervasive developmental disorders, bipolar disorders).

3

000126

Consultation with specialists in assistive technology from Region One may assist Chris by identifying technology that may help him become more adept in keyboarding and using a word processor to complete class assignments in light of his chronic fine motor deficits.

The school staff expressed a desire to acquire additional information as to the most effective methods to help advance the academic development of students who display diminished mental abilities. The administration and staff should remain alert to the publication of empirically-based research that examines these issues. A recent book by H. Lee Swanson, Interventions for Students with Learning Disabilities (1999, Guilford Press), may be of some benefit to this end. However, current research indicates no one program can advance students' reading and math achievement to average levels when they display diminished mental abilities.

Chris, like other students, will be expected to obtain more information from textbooks and other reading materials as he advances through the grades. The provision of recorded textbooks may assist Chris to acquire information in ways that bypass his diminished sight word and word attack reading skills. One must recognize too that his diminished mental abilities and reading comprehension also attenuate his ability to understand grade-level text. Nevertheless, this and other efforts to transmit needed information to Chris should be attempted and their effects evaluated.

000127

DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRISTOPHER K. | § | BEFORE A SPECIAL EDUCATION |
| B/N/F WILLIAM K. | § | |
| | § | |
| V. | § | HEARING OFFICER |
| | § | |
| HARLINGEN CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | FOR THE STATE OF TEXAS |

## MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT

TO THE HONORABLE HEARING OFFICER:

COMES NOW the Respondent, Harlingen Consolidated Independent School District [hereinafter "HCISD"] and hereby moves the Hearing Officer to order a comprehensive individual evaluation of Christopher K., the child who is the subject of this hearing, and under the reported custody and control of his parent, William K., and in support of this motion shows:

I.

On May 5, 2000, HCISD requested consent from Christopher K.'s parents for a comprehensive individual assessment. [See Exhibit A] On May 7, 2000, such consent was given. [See Exhibit B] On May 25, 2000, his father withdrew his consent. [See Exhibit C] At an ARD held on June 6, 2000, Petitioner represented he intended to send Christopher K. out of state for an extended summer vacation with a relative. On June 15, 2000, HCISD again requested parental consent for a comprehensive individual assessment. [See Exhibit D] On June 26, 2000, the Texas Education Agency received Petitioner's request for a due process hearing. This hearing is currently set for July 25, 2000.

II.

Petitioner alleges that Respondent has denied Christopher K. a free and appropriate public education in violation of the Individuals with Disabilities Education Act (IDEA) in its refusal to place Christopher in a residential treatment facility per parental request at an ARD of June 6, 2000. Petitioner demands that Respondent rely solely on his private assessments to place this student residentially. Petitioner submitted reports from his own experts, Dr. Joseph Biederman and Dr.

DOCKET NO. 388-SE-600
*CHRISTOPHER K. B/N/F WILLIAM K. V. HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT*
MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT
PAGE 1



EXHIBIT
C

CAMPDF - www.fasoo.com

Ellen B. Braaten from Harvard Medical School, which provide insufficient educationally-based data and various inconsistent diagnoses. The HCISD has not only the right to conduct its own evaluation using the expert of its choice but also has a legitimate and genuine need for an evaluation which will provide a conclusive diagnosis and recommendations based on educational needs. Respondent has been unable to conduct its own evaluation due to the Petitioner's withdrawal of consent.

## III

The information sought to be elicited from the comprehensive individual assessment of Christopher K. is necessary to the Respondent's determination of an appropriate educational placement for Christopher K. in the least restrictive environment. Pursuant to the IDEA, State Board of Education Rules and Andress v. Cleveland, 64 F.3d. 176 (5th Cir.1995), the Respondent has a right to conduct its own evaluation of the Petitioner and there is no exception to this rule. Additionally, the school district cannot be compelled to accept independent assessments in lieu of completing its own re-evaluation. Moreover, in accordance with Texas Rules of Civil Procedure Rule 204.1, "[w]hen the mental or physical condition...of a party...is in controversy, the court in which the action is pending may issue an order for an examination." The parent's refusal to cooperate with the comprehensive individual assessment when the appropriate educational placement of the student is at issue is an attempt to prejudice the HCISD in this proceeding.

The IDEA requires the Respondent to re-evaluate each child at least once every three years to determine if the child continues to be a child with a disability. 34 CFR 300.536. The comprehensive individual assessment sought is a re-evaluation to fulfill this duty. Petitioner's lack of cooperation has impeded the Respondent's ability to fulfill its obligation under 34 CFR 300.536.

## IV.

Movant requests that the Hearing Officer make a finding that good cause exists for ordering the comprehensive individual assessment of Christopher K. and that the Hearing Officer order (1) Christopher K. and his father to appear for the examination and to cooperate with the HCISD in completing the assessment in every respect and (2) to abate these proceedings until such evaluation is completed.

WHEREFORE, Movant respectfully requests that the Hearing Officer grant Movant's Motion for a Comprehensive Individual Assessment of Christopher K., a person under the reported care, custody, or control of his parent, William K., on the terms and conditions requested and order Petitioner to cooperate with Respondent in all respects while conducting said evaluation.

DOCKET NO. 388-SE-600
*CHRISTOPHER K. B/N/F WILLIAM K. V. HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT*
MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT
PAGE 2

Respectfully submitted,

WALSH, ANDERSON, BROWN,
    SCHULZE & ALDRIDGE, P.C.
P.O. Box 2156
Austin, Texas 78768
TELEPHONE:  (512) 454-6864
FACSIMILE:   (512) 469-9318

BY: _____
        DENISE H. ANDERSON
        State Bar No. 100 95500

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2000, a true and copy of the above and foregoing

pleading has been sent to Lucius Bunton via facsimile number (512) 478-3910 and to Mr. William

Kimball via facsimile number 956-421-4258.

_____
DENISE H. ANDERSON

DOCKET NO. 388-SE-600
*CHRISTOPHER K. B/N/F WILLIAM K. V. HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT*
MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT
PAGE 3

**Docket No. 388-SE-600**

| | | |
|---|---|---|
| CHRISTOPHER K. | § | BEFORE A SPECIAL EDUCATION |
| B/N/F WILLIAM K. | § | |
| | § | |
| V. | § | HEARING OFFICER |
| | § | |
| HARLINGEN CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | FOR THE STATE OF TEXAS |

## PETITIONER'S RESPONSE TO RESPONDENT'S MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT AND MOTION TO STRIKE DR. OAKLAND

TO THE HONORABLE HEARING OFFICER:

NOW COMES, Petitioner, Christopher K. b/n/f William K., (hereinafter sometimes referred to as "Petitioner"), and files this, his response to the Motion filed by Respondent, Harlingen Consolidated Independent School District, (hereinafter sometimes referred to as "HCISD"), and support hereof, Petitioner would show as follows:

1. This case involves the request by Petitioner to pay for Christopher K's ("CK's") admission into a private residential school so that CK can overcome learning and mental handicaps which have prevented CK from learning to read and from achieving "meaningful" academic progress at Respondent's Treasure Hills Elementary School.[1] CK currently reads at a first grade level even though he is now entering the Fifth Grade. HCISD failure to properly address CK's mental and learning disabilities in violation of 20 U.S.C. §1400, et. seq., as amended in 1997, is the reason CK has poorly achieved in school and is the reason Petitioner makes this petition to the TEA.

---

[1] See Board of Education v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed. 690 (1982) which required that educational benefits must be "meaningful" and not trivial or slight. This standard has undoubtedly been greatly increased by the 1997 amendments by Congress to IDEA.

1



EXHIBIT
**D**

CMPDF - www.fsxia.com

2.   Petitioner admits that on or about May 7, 2000, CK's parents initially gave approval to HCISD to evaluate CK for the ARD meeting but deny that HCISD requested a "comprehensive individual assessment." In fact, no where in the alleged consent form offered by the Respondent as an exhibit to its motion, does it state that HCISD would conduct a "comprehensive individual assessment." The June 5, 2000 letter specifically states: "the school district will need to conduct its own evaluation of Chris' educational needs at this time." When CK's parents signed said form, they were under the belief that HCISD was going to have one of its employees test CK's reading and grade level. CK's parents were never informed that HCISD intended to hire a Florida psychologist to perform a comprehensive psychological and educational test upon CK. Further, there were no details provided in said consent form as to how and to what extent the examination would be conducted. Accordingly, CK's parents never gave "informed consent."

3.   From May 5, 2000 until on or about May 18, 2000, CK's parents were not aware that HCISD had actually hired the law firm of Walsh, Anderson, Brown, Schulze & Aldridge, P.C. of Austin, Texas, for the purposes of denying Petitioner's request for placement of CK into a private residential school for the Fall 2000. Until on or about May 18, 2000, CK's parents were also unaware that HCISD's lawyers had hired Dr. Thomas Oakland, from Florida, to examine CK in an effort to gather information for his expert testimony against CK and his parents.

4. While vacationing in California on or about Friday, May 19, 2000, CK's father had a telephone conversation with HCISD's "Director of Special Education", Jolaine Lanehart, who for the first time informed CK's father that HCISD had hired attorneys and that <u>HCISD's said attorneys hired Dr.</u> <u>Thomas Oakland</u> to perform educational and psychological testing on CK. Being that HCISD had hired lawyers when HCISD had given no verbal or written indication that it was contesting CK's

2

request for private residential school placement,[2] being that HCISD's lawyers hired Dr. Oakland and not HCISD officials, and being that CK's father had no information about Dr. Oakland, CK's father verbally withdrew his consent on or about May 19, 2000, (if in fact, there was ever any informed consent). After returning from vacation in California, CK's father then delivered, via facsimile and first class mail to HCISD, a letter dated May 25, 2000. Said letter was merely written confirmation of the May 19, 2000 verbal statement to Ms. Lanehart by CK's father that CK's parents were not agreeing to the examination of CK by Dr. Oakland. See **Exhibit "A"** attached hereto.

5.  Despite being denied permission by CK's parents to examine CK, on <u>May 26, 2000</u>, HCISD had Dr. Oakland fly to Harlingen, Texas and Dr. Oakland examined CK's private school and medical records. Dr. Oakland also interviewed CK's teachers, counselor and principal, all in violation of CK's privacy rights under law. A true and correct copy of Dr. Oakland's report is attached hereto as **Exhibit "B"** and incorporated herein by reference for all purposes.

6. Petitioner maintains that HCISD's actions described above demonstrate that HCISD is not attempting to obtain an objective second opinion from a qualified doctor. Instead, HCISD is attempting to obtain access to CK so that its testifying "expert witness", (who has already given his opinions in Exhibit "B" attached hereto), can claim that he has examined CK. Petitioner would not have opposed an appropriate "independent" assessment of CK but HCISD has not offered any other examiner other than Dr. Oakland. Petitioners would have agreed to a psychologist who Petitioners believed was objective, fair, and competent. Dr. Oakland has demonstrated bias and dubious methods of examination and ethics. If the Hearing Officer herein does in fact believe that a new

---

[2] In fact, HCISD's ARD committee had for a year and a half accepted Dr. Biederman's and Dr. Braaten's reports as true and correct and the same were utilized in previous ARD meetings.

comprehensive examination is necessary, then Petitioner would alternatively request that the Hearing Officer chose a truly unbiased, competent, and independent psychologist so that CK's future is not impacted by a professional "witness for hire."

7.  By its actions described above, HCISD (and Dr. Oakland) have already violated Petitioner's and CK's right to privacy under the following state and federal authorities: Texas Occupation Code, §159.001 through §159.009 (Vernon 1999); Texas common law "invasion of privacy" tort law; **Billings v. Atkinson**, 489 S.W.2d 858, 859 (Tex. 1973) and **Household Credit Services, Inc. v. Driscol**, 989 S.W.2d 72, 84 (Tex.App.-El Paso 1998, no hist.); Federal Constitutional Rights to Privacy, as explained in **Tarrant County Hospital District v. Hughes**, 734 S.W.2d 675, 679 (Tex.App.-Fort Worth, no writ hist.), and the authorities cited therein; 20 U.S.C. §1232g(b)(1); 20 U.S.C. §1232g (2)(A); and 34 C.F.R. 99.30.

8.  CK was given a comprehensive examination in April 1999 and in February 2000, by Ellen Braaten, Ph.D. of Massachusetts General Hospital, (assisted by Alysa Doyle, Ph.D. in April 1999, and by Gretchen Felopulos, Ph.D.in February 2000). Said standardized tests were ordered by CK's treating psychiatrist, Joseph Biederman, M.D. True and correct copies of Dr. Biederman's and Dr. Braaten's reports and resumes were filed simultaneously herewith by Petitioner for review by the Hearing Officer. These examinations and reports were made in the course and scope of Dr. Biederman's and Dr. Braaten's treatment of CK as CK's treating doctors. These reports were not made in the anticipation of litigation. Accordingly, Petitioner maintains that there is no need for an additional examination being that the testing is current, being that HCISD has failed to request or perform its legal obligations for reevaluations during the past year and a half, and being that Dr. Biederman and Dr. Braaten's reports have been accepted and used by HCISD in CK's IEP for the

4

past year and a half without contest or question by HCISD officials. HCISD officials have told CK's parents several times that they did in fact accept Dr. Biederman's and Dr. Braaten's reports as true and correct at previous ARD meetings and informally. HCISD is accordingly estopped at this point in time from challenging the validity and accuracy of said tests and test results.

9.   The reports of Dr. Braaten and Dr. Biederman do not contain "insufficient educationally based data" nor are there "variously inconsistent diagnoses," as alleged by HCISD. The records and opinions of Dr. Biederman and Dr. Braaten speak for themselves. Further, such records are consistent with prior psychological and educational testing Betty Lanier, Ph.D.(12-11-1998),[3] all part of the school record concerning CK. There is no need for further testing because the test results now in the possession of HCISD were done objectively and said conclusions have never been challenged by HCISD. In fact, the test results have been part of CK's school records and have been relied upon by HCISD in their failed attempts to overcome CK's learning disabilities.

10.   HCISD cites **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995) as its authority for requesting its own re-evaluation by its chosen examiner. **Andress** was decided upon pre-1997 facts and applies provisions of the Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. §1400, et. seq., prior to the Congressional sweeping revisions of IDEA effective June 4, 1997. Further, **Andress** was decided prior to the 1999 amendments to 34 C.F.R. 300, et. seq.  Accordingly, **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995) is no longer valid law due to the overwhelming changes to IDEA.

---

[3] Dr. Susan Ander, CK's treating psychologist, requested that CK's parents have Dr. Lanier do an educational evaluation of CK in 1998 and CK's parents consented to do so at CK's father's expense. Dr. Ander arranged the scheduling of Dr. Lanier's evaluation.

11. The 1997 amendments to IDEA has greatly expanded "findings" and "purposes" of IDEA. It no longer is merely a law to guarantee access to special education services. The 1997 IDEA now mandates effectiveness of special education by removing impediments to educational progress, particularly those resulting from society's preconceived notions of the limitations of the disabled. See e.g., 20 U.S.C. §1400(c)(1); 20 U.S.C. §1400(d)(4); and 103 Dick.L.Rev. 613, <u>Greater Expectations: How the 1997 IDEA Amendments Raise the Basic Floor of Opportunity for Children With Disabilities</u>, Tara L. Eyer (Spring 1999). Also see President Bill Clinton's remarks at the signing of the bill into law, found at 1997 WL 10084718.

12. With the 1997 amendments to IDEA, Congress moved all provisions related to evaluation and reevaluation of children with disabilities to one place in the law, 20 U.S.C. §1414(a), (b), and (c). Section 1414 now combines procedural requirements of evaluations and reevaluations with the overall Congressional intent and purpose being that such evaluations and reevaluations be non-discriminatory and scientifically sound. See 20 U.S.C.§1414(b)(2) and (3). Section 1414 also requires that such testing be done <u>with parental consent</u> and that if the parents do not consent, then the school district is required to utilize the mediation and due process procedures of 20 U.S.C. §1415. See 20 U.S.C. §1414(c). Instead of following the Congressional mandates of Section 1414, (even though it had legal counsel at that time), and ignoring and violating CK's and CK's parents rights to privacy discussed above, HCISD still had Dr. Oakland travel to Harlingen, Texas from Florida on May 26, 2000 and HCISD intentionally and maliciously allowed Dr. Oakland to conduct an illegal examination of CK's medical and educational records as admitted by Dr. Oakland in his report, (See **Exhibit "B"** attached hereto), and allowed Dr. Oakland to make an unauthorized evaluation of CK, in violation of 20 U.S.C. §1414 (1997).

6

13. There is no requirement in the 1997 version of IDEA that a school district be allowed an independent evaluation by a psychologist or psychiatrist of its own choosing. In 1997, Congress chose not to insert such language despite the existence of the decision in **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995) and the authorities cited therein. Instead Congress worded Section 1414 of IDEA to lay out a procedures guaranteeing that reevaluations be non-discriminatory and technically sound. There is no mention in Sections 1414 or 1415 of any right of a school district to a reevaluation of a child using a psychologist or psychiatrist of its own choosing. In fact, the provision relied upon so heavily by the Fifth Circuit Court of Appeals in **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995), (i.e., 34 C.F.R. §300.503), has been repealed and re-written by the 1999 amendments to 34 C.F.R. 300.1 through 300.756 (1999).

14. In any case, Dr. Oakland felt that he had enough data on May 26, 2000, to give his educational and psychological conclusions as evidenced by **Exhibit "B"** attached hereto. HCISD has not since May 26, 2000, identified any particular additional data needed nor has it identified exactly what it proposes to test or evaluate. HCISD's motion on its face violates 20 U.S.C. §1414(a)(1)(C), 20 U.S.C. §1414(b)(1), and 20 U.S.C. §1415(b)(3) and (4) (1997) because HCISD has failed to disclose exactly what testing or evaluations it intends to perform, the testing methods, or any of the necessary details required for there to be an "informed consent." Section 1414(a)(1)(C)(I) requires parental "informed consent."

15. Based upon the facts and authorities discussed hereinabove, HCISD should be denied its request to have a new comprehensive examination of CK. It has had a year and a half to make such a request and has chose not to do so despite having copies of Dr. Biederman's and Dr. Braaten's reports in its possession. Further, for the past year and a half, HCISD has accepted and utilized Dr. Biederman's

7

and Dr. Braaten's reports in making its decisions concerning CK. In any case, Dr. Oakland believed he had enough information when he wrongfully prepared his May 26, 2000 report.

16. Alternatively, if in fact, that the Honorable Hearing Examiner does determine that an additional evaluation of CK is appropriate, then Petitioner would request that such evaluation be done by an independent psychologist or educator agreed upon by the parties and the Hearing Examiner based upon the independence, neutrality, qualifications and experience of said individual. This would satisfy the new Congressional mandates as set forth in 20 U.S.C.§1414 and §1415.

17. Additionally, Dr. Oakland should be disqualified to submit reports, testimony, and evidence in this case due to his wrongful and illegal acts described above. To permit his participation in this case would create precedence for school districts in Texas to violate the procedural requirements of IDEA and it would reward and condone unethical and illegal acts which affect the future of mentally handicapped children in this state.

**WHEREFORE, PREMISED CONSIDERED,** Petitioner respectfully requests that Respondent's Motion be denied in all respects for the reasons set forth hereinabove, that Dr. Oakland be disqualified and stricken to testify herein for the reasons set forth herein, that in the alternative, if the Honorable Hearing Examiner does determine that an independent examination is appropriate, that a truly independent, unbiased, and qualified psychologist or educator be named to examine CK on specifically identified areas of concern with specifically identified modes of examination, that parental consent to the psychologist or educator be obtained and/or that the procedures of 20 U.S.C. §1414 be followed, and that the Honorable Hearing Examiner grant to Petitioner such other and further relief as Petitioner may show himself justly entitled to receive.

8

Respectfully submitted,

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**
312 E. Van Buren
P. 0. Box 2878
Harlingen, Texas 78550
Tel. (956) 425-2000
Fax No. (956) 421-4258

BY: _____

William Kimball
State Bar No. 11418700

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was on this 10TH day of July, 2000, sent via facsimile and mailed by certified mail, return receipt requested to: Ms. Denise H. Anderson, Walsh, Anderson, Brown, Schulze & Aldridge, P.C., P.O. Box 2156, Austin, Texas.

William Kimball

9

RECEIVED JUL 1 7 2000

DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRISTOPHER K., | § | BEFORE A SPECIAL EDUCATION |
| B/N/F WILLIAM K. | § | |
| | § | |
| VS. | § | HEARING OFFICER |
| | § | |
| HARLINGEN INDEPENDENT SCHOOL | § | |
| DISTRICT | § | FOR THE STATE OF TEXAS |

### ORDER GRANTING RESPONDENT'S MOTION
### TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT

On the 13th day of July, 2000, came on for consideration Respondent's Motion to Compel a Comprehensive Individual Assessment and Petitioner's response to the motion. After due consideration of the Motion and Petitioner's response, IT IS HEREBY ORDERED that Respondent's motion is GRANTED and that Christopher and his father are ordered to cooperate with Respondent in completing its assessment of Christopher. Respondent is entitled to conduct its own evaluation of Christopher. <u>Andress vs. Cleveland</u>, 64 Fed.3d 176 (5th Cir. 1995).

SIGNED this 13 day of July, 2000.

Lucius D. Bunton
Special Education Hearing Officer



**EXHIBIT**

**E**

**Docket No. 388-SE-600**

| | | |
|---|---|---|
| **CHRISTOPHER K.** | § | **BEFORE A SPECIAL EDUCATION** |
| **B/N/F WILLIAM K.** | § | |
| | § | |
| **V.** | § | **HEARING OFFICER** |
| | § | |
| **HARLINGEN CONSOLIDATED** | § | |
| **INDEPENDENT SCHOOL DISTRICT** | § | **FOR THE STATE OF TEXAS** |

## PETITIONER'S MOTION FOR CLARIFICATION

TO THE HONORABLE HEARING OFFICER:

NOW COMES, Petitioner, Christopher K. b/n/f William K., (hereinafter sometimes referred to as "Petitioner"), and files this, his Motion for Clarification seeking clarification of the Order Granting Respondent's Motion to Compel a Comprehensive Individual Assessment, and support hereof, Petitioner would show as follows:

1. The Hearing Examiner granted Harlingen Independent School District's, (hereinafter sometimes referred to as "HCISD"), motion to Compel a Comprehensive Individual Assessment on or about July 13, 2000 citing **Andress v. Cleveland**, 64 F.3rd 176 (5th Cir. 1995).[1]

2. Without waiving Petitioner's objections to the said ruling, Petitioner seeks the following clarification of that ruling:

   A. Do the parties have to agree upon the person who performs the examination or does the school district get to pick their own examiner?

   B   Will CK's parents and/or their doctors be permitted to be present?

---

[1] Petitioner continues to maintain that said authority was effectively overruled by the 1997 revisions to 20 U.S.C. §1400, et. seq.  20 U.S.C. Sections 1414 and 1415 were completely rewritten by a bi-partisan Congress and required "informed consent" by the parents of the child for any reevaluation.  See 103 Dick.L.Rev. 163, <u>Greater Expectations: How the 1997 IDEA Amendments Raise the Basic Floor of Opportunity for Children with Disabilities</u>, (Spring 1999).



EXHIBIT

**F**

C.   Will the parents of CK be permitted to videotape the examination in a non-intrusive manner?  and

D.   Will it be disclosed to the Petitioner the methods and types of examination prior to the examination itself?

3.  Although the undersigned has not yet received any request for an examination by HCISD, CK would be available for examination beginning on August 8, 2000.

4.  Petitioner maintains that the "parental informed consent" provisions of 20 U.S.C. §1414 requires clarification of the Order and that if an agreement as to these questions cannot be reached, that 20 U.S.C. §1415 requires mediation on the matter.  Petitioner merely wishes to assert Petitioner's rights under Sections 1414 and 1415.

5.  Petitioner does not object to a fair and objective evaluation of CK, but HCISD has in the past hired an expert (Dr. Oakland) who has already made up his mind as to the needs and abilities of CK without the necessity of a "comprehensive examination."[2]  His opinions are a foregone conclusion. CK's entire future and his ability to fit into society may depend upon the decision of whether CK receives the requested services of residential treatment and schooling.   Accordingly, Petitioner requests clarification of the previous Order to assure fairness and objectivity.

**WHEREFORE, PREMISED CONSIDERED,** Petitioner respectfully requests that this motion be heard as soon as possible by telephonic conference, and that the Honorable Hearing Examiner clarify the previous Order as requested above and grant to the Petitioner such other and further relief as Petitioner may show himself justly entitled to receive.

---

[2] In fact, HCISD has in the past disclosed to Dr. Oakland CK's medical and educational records in violation of various state and federal statutes creating a civil cause of action.

2

Respectfully submitted,

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**
312 E. Van Buren
P. O. Box 2878
Harlingen, Texas 78550
Tel. (956) 425-2000
Fax No. (956) 421-4258

BY: _____

William Kimball
State Bar No. 11418700

**ATTORNEYS FOR PETITIONER**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was on this 31st day of July, 2000, sent via facsimile and mailed by certified mail, return receipt requested to: Ms. Denise H. Anderson, **Walsh, Anderson, Brown, Schulze & Aldridge, P.C.,** P.O. Box 2156, Austin, Texas.

_____
William Kimball

3

## DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRIS K., b/n/f WILLIAM K., <br> Petitioner, | § <br> § <br> § | BEFORE A SPECIAL EDUCATION |
| V. | § <br> § | HEARING OFFICER |
| HARLINGEN CONSOLIDATED <br> INDEPENDENT SCHOOL DISTRICT <br> Respondent. | § <br> § <br> § | FOR THE STATE OF TEXAS |

### RESPONDENT'S RESPONSE TO MOTION FOR CLARIFICATION

TO THE HONORABLE HEARING OFFICER:

COMES NOW, Harlingen Consolidated Independent School District, Respondent herein, and files its response to Petitioner's Motion for Clarification of the Order Granting Respondent's Motion to Compel a Comprehensive Individual Assessment and for cause shows as follows:

1.  On July 13, 2000, the Hearing Officer granted Respondent's Motion to Compel a Comprehensive Individual Assessment.

2.  On July 26, 2000, Respondent requested Petitioner advise the District of Chris K.'s availability and included the Notice of Assessment which detailed the specific areas identified for assessment.

3.  On July 31, Respondent received Petitioner's Motion for Clarification and responds to the issues raised therein as follows:

    A.  Under Andress v. Cleveland ISD, 64 F.3d 176 (5ᵗʰ Cir. 1995), the District has the right to choose its own examiner.

    B.  Parents or their doctors presence in the examination is not a right afforded to parents under IDEA or 20 U.S.C. §§1414 or1415.

    C.  Videotaping of the examination in a non-intrusive manner is not a right afforded to parents under IDEA or 20 U.S.C. §§1414 or 1415.

    D.  The methods and types of examination have been disclosed in the Notice of Assessment sent to Petitioner on July 26, 2000.

---



EXHIBIT

G

4.    Responding to Petitioner's argument concerning "informed consent", the Hearing Officer's Order Granting Respondent's Motion to Compel ... overrides the requirement for parental consent and allows the Respondent to proceed with its assessment.  In addition, Petitioner misrepresents the language in 20 U.S.C. §1415 as requiring the parties to mediate.  In fact, §1415(b)(5) states that the procedures required shall include "an opportunity for mediation ..." and (e)(2)(A)(i) states that the procedures shall ensure the mediation process is "voluntary on the part of the parties."

5.    With reference to Petitioner's footnote #2, Respondent has not violated any state or federal statutes by disclosing existing records to its own consulting psychologist.

WHEREFORE, PREMISES CONSIDERED, Respondent prays that the Hearing Officer deny the matters requested by Petitioner in his Motion for Clarification.

Respectfully submitted,

WALSH, ANDERSON, BROWN,
    SCHULZE & ALDRIDGE, P.C.
P.O. Box 2156
Austin, Texas 78768
TELEPHONE:  (512) 454-6864
FACSIMILE:  (512) 467-9318

BY: _____
        DENISE H. ANDERSON
        State Bar No. 10095500

ATTORNEYS FOR RESPONDENT

Docket No. 388-SE-600
*Chris K., b/n/f William K. v. Harlingen Cons. Independent School District*
Respondent's Response to Motion for Clarification
Page 2 of 3

## CERTIFICATE OF SERVICE

I hereby certify that on the 31[h] day of July, 2000, a true and copy of the above and foregoing

pleading has been sent to Lucius Bunton via facsimile number (512) 478-3910, Mr. William Kimball

via facsimile number 956-421-4258, and via certified mail P 960 136 168 to Jill Johnson 2817 Quail

Run, Apt. A, Harlingen, Texas 78550.


DENISE H. ANDERSON

Docket No. 388-SE-600
*Chris K., b/n/f William K. v. Harlingen Cons. Independent School District*
Respondent's Response to Motion for Clarification
Page 3 of 3

# WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE, P.C.
### ATTORNEYS AT LAW

Jim Walsh
Denise Howell Anderson
Judy Brown
Eric W. Schulze†
John S. Aldridge
Paul W. Hunn
Elena M. Gallegos
Nan P. Hundere
Joe B. Hairston
Dorcas Ann Green
Therold I. Farmer
Robert Russo
Paige C. Kyle
Oscar G. Treviño
Bridget R. Robinson*
Mark C. Goulet
Susan B. Graham

6300 La Calma Suite 200 Austin, Texas 78752
Austin Mailing Address:
P.O. Box 2156 Austin, Texas 78768
(512) 454-6864   FAX (512) 467-9318

San Antonio Office:
P.O. Box 460606, San Antonio, Texas 78246-0606
(210) 979-6633 FAX (210) 979-7024

Dallas/Fort Worth Office:
P.O. Box 168044, Irving, Texas 75016-8046
(214) 574-8800 FAX (214) 574-8801

Nona C. Matthews
Denise Hays
Paula Maddox Roalson
Daniel M. "Matt" Burns ‡
Terry L. Kyle
JoAnn S. Wright
Liza M. Crow
Stacy Tuer Castillo
Joe A. De Los Santos
George E. Grimes, Jr.
Yvonnilda G. Muñiz
Marquette M. Maresh
Michael J. DePonte

Texas Board of Legal Specialization
†Board Certified Civil Appellate Law
*Board Certified Civil Trial Law
‡Board Certified Personal Injury Trial Law

August 1, 2000

Mr. William Kimball
Koppel, Ezell, Jackson & Kimball, L.L.P.        VIA FACSIMILE (956)421-4258
312 East Van Buren
Harlingen, Texas 78551

RE: *Chris K. v. Harlingen CISD*; Docket No. 388-SE-600

Dear Mr. Kimball:

Responding to your letter dated July 31, 2000, concerning the issues you raised in your Motion for Clarification, the District's position as to those matters is set out in Respondent's Response to Petitioner's Motion for Clarification, transmitted to you yesterday by FAX.

Thank you for advising as to the dates of Chris' availability for testing. We would like to schedule the District's CIA for August 14 and 15, 2000. Please have Chris at Treasure Hills Elementary at 9 a.m. on August 14th and 15th. You have been provided specific notice of the areas of testing and types of instruments in the form sent twice to you, first by Ms. Lanehart and most recently by myself on July 26, 2000. We will notify you should any additional time be needed beyond those two days.

As to the deposition of Dr. Braaten, my availability during the week of August 21 to 25, is as follows: August 21st (entire day), and August 25th (9 to 12 noon).

I question the need to take the depositions of HCISD school personnel, as they are available conference you agreed there was no need to take their depositions.



EXHIBIT
H

August 1, 2000
Page 2

Finally, with respect to your suggestion that the parties proceed to mediation concerning the District's CIA, the District declines to subject its evaluation to the mediation process. The Hearing Officer's Order follows 5th Circuit authority as to the District's right to conduct its own assessment for a child it is obliged to serve. Additionally, should you disagree with the evaluator used by the District, or with any of the instruments selected by our evaluator, your remedy is to challenge the appropriateness of our evaluation and to seek an independent evaluation at public expense.

Sincerely,

Denise H. Anderson

cc:    Lucius D. Bunton, VIA FAX: 512-478-3910

       Jill Johnson, VIA Certified Mail - P 960-136-201
       2817 Quail Run, Apt. A.
       Harlingen, TX 78550

       Jolaine Lanehart, VIA FAX (956) 427-3456

## DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRISTOPHER K., | § | BEFORE A SPECIAL EDUCATION |
| B/N/F WILLIAM K. | § | |
| | § | |
| VS. | § | HEARING OFFICER |
| | § | |
| HARLINGEN INDEPENDENT SCHOOL | § | |
| DISTRICT | § | FOR THE STATE OF TEXAS |

### ORDER DENYING PETITIONER'S MOTION FOR CLARIFICATION

On the 9th day of August, 2000, came on for consideration Petitioner's motion to clarify

an order of July 13, 2000, granting Respondent's motion to compel a comprehensive assessment.

After due consideration of the motion and Respondent's response to the motion, IT IS HEREBY

ORDERED that Petitioner's motion for clarification is DENIED.

SIGNED this _9th_ day of August, 2000.

_____
Lucius D. Bunton
Special Education Hearing Officer


EXHIBIT
"I"

# United States District Court

## SOUTHERN DISTRICT of TEXAS, BROWNSVILLE DIVISION

**WILLIAM K., Individually,**
and as Next Friend of C.K., a minor child

### SUMMONS IN A CIVIL ACTION

v.

**Case Number:** B-00-125

**HARLINGEN CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT
AND LUCIUS D. BUNTON, HEARING
OFFICER FOR THE TEXAS EDUCATION AGENCY**

TO:     **TEXAS EDUCATION AGENCY,** by and through its Commissioner of Education, Jim Nelson, at 1701 North Congress Avenue, Austin, Travis County, Texas 78701.

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

**PLAINTIFF'S ATTORNEY:** William Kimball, **Koppel, Ezell, Jackson & Kimball, L.L.P.,** 312 E. Van Buren, P.O. Box 2878,  Harlingen, Texas 78550.

an answer to the complain which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**Michael N  Milby, Clerk**

*8-29-00*

CLERK

BY DEPUTY CLERK

DATE