UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**SEP 1 1 2000**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| WILLIAM K., Individually and as next friend | § | |
| of C.K., a minor child | § | |
| | § | |
| vs. | § | Civil Action No. B-00-125 |
| | § | |
| HARLINGEN CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT and | § | |
| LUCIUS D. BUNTON, HEARING | § | |
| OFFICER FOR THE TEXAS | § | |
| EDUCATION AGENCY | § | |

**DEFENDANT'S ORIGINAL ANSWER, RESPONSE IN OPPOSITION
TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION,
AND MOTION TO DISMISS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Defendant, the Harlingen Consolidated Independent School District

(Harlingen CISD), and in response to Plaintiff's First Amended Complaint files this Original Answer

and Response in Opposition to Plaintiffs' Application for a Preliminary Injunction. Additionally,

Defendant files its Motion to Dismiss for Lack of Jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

In support of this answer, response, and motion, Defendant shows as follows:

**I.**

**PRELIMINARY STATEMENT**

Plaintiff[1] is a party to a pending special education due process hearing. Through this lawsuit,

Plaintiff attempts to circumvent that hearing process and have this Court issue orders that conflict

with those entered by the Special Education Hearing Officer appointed by the State of Texas to

---

[1]     For purposes of reference and continuity, William shall be referred to as "Plaintiff" while the
minor child shall hereinafter be referred to as C.K.

preside over the special education due process hearing.

## II.

## DEFENDANT'S ORIGINAL ANSWER

Pursuant to FED. R. CIV. P. 8(b), Defendant denies each and every allegation contained in Plaintiff's First Amended Complaint and Application for Declaratory Judgment and Injunctive Relief except those expressly admitted herein.[2]

1.    Defendant denies that Plaintiff is a resident of Harlingen, Texas.  Defendant admits that Plaintiff is the natural father of CK, a ten year-old minor, but is without sufficient knowledge to admit or deny that Plaintiff's legal status with respect to CK.

2.    Defendant admits that the Harlingen Independent School District is a political subdivision of the State of Texas, and that it is located in Cameron County, Texas. Defendant further admits that Dr. Jesus Chavez is the Superintendent of the Harlingen Consolidated Independent School District and that service is proper upon him.

3.    Defendant admits that Lucius Bunton is a Special Education Hearing Officer who was formerly assigned by the Texas Education Agency (TEA) to hear Plaintiff's dispute in the administrative proceeding styled *Christopher K., b/n/f v/ Harlingen Consolidated Independent School District,* Docket No. 388-SE-600. Defendant further admits that Stephen Webb is the current hearing officer assigned to the aforementioned matter.

4.    Defendant admits that this Court has jurisdiction over federal questions and claims

---

[2]    Plaintiff filed his Original Complaint on August 14, 2000, and his First Amended Complaint on August 29, 2000.  Because Plaintiff amended within the time for Defendant to answer, Defendant is required to file an answer on or before twenty (20) days from the date of filing of the original complaint or within ten (10) days of the amendment, whichever is latter.  FED. R. CIV. P. 15.

arising under the United States Constitution but, as more fully explained in Defendant's motion to dismiss, denies that this Court has jurisdiction over this matter.

5.      Defendant admits that venue is proper in the Southern District of Texas, only to the extent this Court has jurisdiction over Plaintiff's claims.

6.      Defendant admits that CK is a ten year-old child who has been diagnosed with numerous mental disorders and learning disabilities including Bi-polar Disorder–Mixed Type, Attention Deficit Disorder with Hyperactivity, an Mild Mental Retardation among other disabling disorders. Defendant is without sufficient knowledge to admit or deny Plaintiff's assertions regarding the current medication prescribed to CK but Defendant admits that CK has been prescribed such medication in the past for the purposes alleged by Plaintiff. Defendant further denies that CK's psychological disorders and learning disabilities "combine to create intertwined obstacles." Defendant is without sufficient information to admit or deny Plaintiff's allegation that such obstacles need to be "jointly overcome to enable CK to advance with his education" as Defendant is unable to discern Plaintiff's meaning of this phrase. Defendant also denies that CK has barely advanced academically, that CK's reading is limited to the upper First Grade range, and that verbal IQ is the proper measurement of CK's abilities. Defendant assets that CK currently reads at the Second Grade-three month level and that the full-scale IQ is the proper measurement for CK's abilities. Defendant further denies that CK is far below where his should be academically or that such is a result of any failure by Defendant.

7.      Defendant, based upon information and belief, admits that CK is a patient of Dr. Joseph Biederman, M.D., Ellen Braaten, Ph.D., and Susan Ander, Ph.D. Defendant denies the remainder of Plaintiff's allegations in Paragraph 7.

-3-

8.     Defendant admits that Plaintiff requested an ARD meeting on or about April 28, 2000, but denies that the meeting was to discuss the placement of CK in special residential school, and that such a placement was recommended by Drs. Biederman, Braaten, and Ander. Defendant further admits that an ARD meeting was set but denies that it was set for May 30, 2000.

9.     Defendant denies that it hired the law firm of Walsh, Anderson, Brown, Schulze & Aldridge for the purpose of defeating any of Plaintiff's requests. Defendant further asserts that it was under no duty or obligation to inform Plaintiff of any position regarding the scheduled ARD. Defendant further objects to and denies Plaintiff's characterization that Defendant's employees "verbally pretended to be open minded." Defendant also asserts that it is without sufficient knowledge to admit or deny any comments made regarding Dr. Biederman. Defendant denies the remainder of Plaintiff's allegations in Paragraph 9.

10.    Defendant admits that on May 5, 2000, Defendant requested consent to conduct an educational evaluation of CK. Defendant also admits that approval was given to evaluate CK. However, Defendant is without sufficient knowledge to admit or deny Plaintiff's beliefs regarding the evaluation. Defendant denies that it rejected any testing or conclusions of Dr. Biederman, Dr. Braaten or Dr. Ander at the time alleged by Plaintiff. Defendant further admits that the consent form signed by Plaintiff did not contain the information described by Plaintiff but asserts that the notice of assessment provided to Plaintiff provided such information. Defendant denies that Plaintiff did not give "informed consent." Defendant is further without sufficient knowledge to admit or deny Plaintiff's beliefs regarding the testing to be conducted. Defendant further asserts that Plaintiff has misstated the obligations of Defendant in conducting its evaluation of CK and, therefore, the remainder of Paragraph 10 of Plaintiff's allegations are denied.

-4-

11.     Defendant denies Plaintiff's allegations contained in Paragraph 11 and further asserts that Plaintiff has misstated the obligations of Defendant in conducting its evaluation of CK.

12.     Defendant admits that on or about Friday, May 19, 2000, a telephone conference was held between Plaintiff and the Director of Special Education for Defendant while Plaintiff was honeymooning in California but Defendant denies Plaintiff's allegations regarding the content of said telephone conference. Defendant further admits that Plaintiff withdrew his consent for the evaluation of CK but denies the basis for the withdrawal alleged by Plaintiff. Defendant also admits that Plaintiff later delivered a letter to Defendant that purported to confirm the telephone conference on May 19, 2000. However, Defendant denies that the "parents" of CK did not agree to the evaluation of CK as the letter, attached as **Exhibit A** to Plaintiff's First Amended Complaint, is signed only by Plaintiff as CK's natural father. Defendant further admits that it received verbal and written recission of Plaintiff's consent to the evaluation of CK.

13.     Defendant denies any illegal conduct but admits that Dr. Oakland examined CK's school and medical records. Defendant also admits that Dr. Oakland interviewed CK's teachers, counselor, and principal, but Defendant denies that such conduct was illegal. Defendant admits that **Exhibit B** is a true and correct copy of Dr. Oakland's report and further admits that Dr. Oakland acknowledged that he had reviewed CK's medical and educational records.

14.     Defendant denies Plaintiff's allegations as asserted in Paragraph 14 of Plaintiff's First Amended Complaint.

15.     Defendant admits that an ARD meeting was held but asserts that said meeting was held on June 6, 2000. Defendant further admits that, even though notice was provided to Plaintiff of their attendance, Defendant's attorneys were requested to leave by Plaintiff. Defendant admits that

-5-

its attorneys did not leave the meeting but denies that their presence was in violation of any law. Defendant admits that 34 C.F.R. § 300.344 describes the requisite members of an IEP team but denies that Defendant's attorneys' were not permitted to be a part of the ARD meeting. Defendant further denies that its attorneys dominated the meeting or that Plaintiff's rights were violated in any way. Defendant also denies that Plaintiff requested of the "hearing officer...to take a vote" because there is no hearing officer as a part of an ARD meeting and voting is not procedurally proper at such a meeting. Additionally, Defendant admits that no vote was taken at the ARD meeting but denies that Mrs. Krabil made the statements or assertions alleged by Plaintiff. Defendant further denies Plaintiff's allegations contained in Footnote 4 of Plaintiff's First Amended Complaint.

16.     Defendant admits that on June 26, 2000, Plaintiff filed an appeal with the TEA appealing the decision of Defendant to deny residential school placement of CK at public expense. Defendant admits that Bunton was assigned by the TEA as the Special Education Hearing Officer.

17.     Defendant admits that on June 30, 2000, it filed a motion to compel a comprehensive assessment of CK but denies that its sole authority was based on *Andress v. Cleveland,* 64 F.3d 176 (5th Cir. 1995). Defendant further admits that in its motion, it asserted that the District had the right to use the expert of its choice to assess CK and that CK's parent were required to allow the examination in order to proceed with consideration of, and a hearing on, CK's educational needs. Defendant admits that **Exhibit C** is a true and correct copy of Defendant's motion to compel.

18.     Defendant admits that on July 10, 2000, Plaintiff flied a response to Defendant's motion to compel and that a true and correct copy has been attached by Plaintiff as **Exhibit D** to his First Amended Complaint. Although Defendant admits that mediation is an option when a parent refuses to consent to the assessment of a child, Defendant denies that mediation is mandatory and

further denies the remainder of Plaintiff's allegations contain in Paragraph 18 of his First Amended Complaint.

19.    Defendant admits that on July 13, 2000, an order was entered granting Defendant's motion to compel and that a true and correct copy of said order is attached to Plaintiff's First Amended Complaint as **Exhibit E.** However, Defendant denies that the order violated any law or statute.

20.    Defendant admits Plaintiff filed a motion for clarification, as attached as **Exhibit F** to Plaintiff's First Amended Complaint, and that said motion requested clarification of the issues contained in Paragraph 20 of Plaintiff's First Amended Complaint.

21.    Defendant admits that on July 31, 2000, it filed a response to Plaintiff's motion for clarification and that a true and correct copy is attached to Plaintiff's First Amended Complaint as **Exhibit G.** Defendant further admits that said response properly reflects the rights of the parents in the examination process.  Defendant denies Plaintiff's characterization of the letter sent to Plaintiff on August 1, 2000, regarding the evaluation procedures.  Defendant further denies that **Exhibit H** is a true and correct copy of said letter as portions of the letter appear to have been omitted.

22.    Defendant admits that on August 9, 2000, Bunton entered an Order denying Plaintiff's motion for clarification and that a true and correct copy of the is attached to Plaintiff's First Amended Complaint as **Letter "I."**

23.    **Declaratory Judgment.**  Defendant denies that Plaintiff is entitled to declaratory judgment.

24-29. **Injunctive Relief.** Defendant denies that Plaintiff is entitled to injunctive relief, as more fully explained below in Defendant's response to Plaintiff's application for injunctive relief and

-7-

further asserts that Plaintiff has failed to satisfy the requisite elements for such relief.

30.    **Monetary Damages.** Defendant denies the allegations contained in Paragraph 30 of Plaintiff's amended pleading and further denies that Plaintiff is entitled to monetary damages.

31.    Defendant denies the allegations contained in Paragraph 31 of Plaintiff's amended pleading and further denies that Plaintiff is entitled to punitive damages.

32.    Defendant denies that Plaintiff is entitled to costs and attorney's fees. *See e.g., Erickson v. Board of Education of Baltimore County,* 162 F.3d 289 (4th Cir. 1998).

33.    Defendant admits that Plaintiff has failed to exhaust has administrative remedies and further asserts that, for the reasons set forth in Defendant's motion to dismiss, this Court lacks jurisdiction over Plaintiff's claims.

### III.

### ENTITLEMENTS AND DEFENSES

34.    Defendant Harlingen Consolidated Independent School District asserts its entitlement to both sovereign immunity and Eleventh Amendment immunity from all claims asserted against it. The Harlingen Consolidated Independent School District is a unit of government and a political subdivision in the State of Texas and as such is protected from both suit and liability by the doctrines of sovereign immunity and Eleventh Amendment immunity.

35.    Defendant claims its entitlement to the defenses of waiver, estoppel, laches, failure to exhaust administrative remedies, failure to mitigate damages, and after acquired evidence for any claims asserted against it to which these defenses apply.

36.    Plaintiff is not entitled to punitive or exemplary damages or any other type or form of damages against Defendant.

-8-

# IV.

## MOTION TO DISMISS FOR LACK OF JURISDICTION

Pursuant to FED. R. CIV. P. 12(b)(1), Defendant moves for dismissal of this case for lack of jurisdiction.

### A. Principles of Abstention and Comity Preclude this Court's Exercise of Jurisdiction.

Exercising principles of abstention and comity, this federal court should decline to exercise jurisdiction in this case, in which plaintiff seeks intervention into and disruption of a pending special education proceeding in the State of Texas. Under *Younger v. Harris,* abstention is appropriate where assumption of jurisdiction by a federal court would interfere with pending state proceedings. 401 U.S. 37, 91 S. Ct. 746 (1971) *see also, Texas Railroad Comm'n v. Pullman,* 312 U.S. 496, 61 S. Ct. 643 (1941) (holding that abstention is appropriate where federal issue might be mooted or presented in a different posture by a state court determination of pertinent state law). Similarly, principles of comity preclude the this Court from exercising its jurisdiction over this matter. The principle of comity mandates:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

401 U.S. at 44, 91 S. Ct. at 751-752. Thus, comity suggests that federal courts should not "unduly interfere with the legitimate activities of the State."

In the case *sub judice*, principles of abstention and comity should by applied. The bases of Plaintiffs' claims are, and continue to be, subject to state law and the proceedings required in special education hearings within the State. Plaintiff acknowledges that the administrative proceedings

regarding CK are still pending and further seeks to enjoin the District and the TEA from allegedly

denying Plaintiff and CK's rights. *Plaintiff's First Amended Complaint,* at 9. Plaintiff's suit is merely

an attempt to circumvent the pending special education proceeding.  An intervention by this Court

in the pending state proceedings would interfere with the legitimate interests of the state.  Moreover,

the resolution of this matter at the State level may render moot federal involvement in a determination

of Plaintiff's rights.  Accordingly, based on the principles of the abstention and comity, this Court

should decline to exercise its jurisdiction over Plaintiff's claims.

**B.**     **This Court lacks jurisdiction because Plaintiff failed to exhaust administrative remedies.**

Exhaustion of administrative remedies under the Individuals with Disabilities Education Act

(IDEA), with limited exceptions not present in this case, is a prerequisite to filing suit. *See Gardner*

*v. School Bd. of Caddo Parish,* 958 F.2d 108, 110-11 (5th Cir. 1992); *Doe v. Vernon Parish Sch.*

*Board,* 928 F. Supp. 663, 664 (W.D. La. 1996).  IDEA expressly requires that before filing a civil

action, a plaintiff must exhaust the IDEA procedures.  20 U.S.C. § 1415(f).  The exhaustion of

administrative remedies serves to purposes of protecting administrative agency authority and

promoting judicial authority. *McCarthy v. Madigan,* 503 U.S.140, 145, 112 S. Ct. 1081, 1086

(1992).  Moreover, § 1415(e)(2) provides that "[i]f either party is dissatisfied with the *result of the*

*hearing* before the special education hearing officer, that party may appeal to federal district court."

20 U.S.C. § 1415(e)(2) (emphasis added).  Thus, § 1415(e)(2) provides that only *after* the decision

of the hearing has been issued may a party appeal the hearing officer's decision. *See e.g., Smith v.*

*Robinson,* 468 U.S. 1014, 1014, n. 17, 104 S. Ct. 3457, 3469 (1984); *Teague Independent School*

*District v. Todd L.,* 999 F.2d 127, 130, n. 10 (5th Cir. 1993). § 1415(l) further provides that

-10-

> Nothing in this part shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is available under this part, the procedures under subsections (f) and (g) of this section *shall be exhausted* to the same extent as would be required had the action been brought under this part.

20 U.S.C. § 1415(l)(emphasis added).  Available relief means relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers. *Charlie F. v. Bd. of Educ. of Skokie School Dist.,* 98 F.3d 989, 993 (7th Cir. 1996).  Parents of special education children cannot ignore remedies available under the IDEA and insist upon remedies of their own choosing. *Id.*  Only in the limited instances where exhaustion would be futile or inadequate to protect the plaintiff's rights is the exhaustion of administrative remedies not required. *Honig v. Doe,* 484 U.S. 305, 326-327, 108 S. Ct. 192 (1988).  Additionally, the burden of demonstrating that the exhaustion of administrative remedies would be futile is on the party seeking the exception. *Id.* at 327.

Plaintiff's failure to exhaust his administrative remedies deprives this Court of jurisdiction over his claims.  It is undisputed that Plaintiff failed to exhaust his administrative remedies as the administrative review of Plaintiff's claims are still pending. *Plaintiff's First Amended Complaint,* at p. 11, ¶ 33.  The statutory language under IDEA clearly requires that, absent an exception, a party must exhaust it administrative remedies.  To that end, Plaintiff has failed to meet his burden of demonstrating that their exhaustion of the requisite administrative remedies would be futile or inadequate. *Honig,* 484 U.S. at 327. Plaintiff argues that CK's federal rights will have been violated and that CK would be forever harmed if required to exhaust their administrative remedies. *Plaintiff First Amended Complaint,* at p. 11, ¶ 33.  However, to the extent injunctive relief falls within the

-11-

terms of "also available" under § 1415(f) of IDEA, the exhaustion of administrative remedies is still required.[3]  *See Eddins v. Excelsior Independent School District,* 26 IDELR 550, 555 (E.D. Tex. 1997); *see also Smith v. Robinson,* 468 U.S. 1014, 1014, n. 17, 104 S. Ct. 3457, 3469 (1984) (observing that some courts have interpreted the IDEA as providing a basis for the granting of injunctive relief).  Moreover, the fact that a party anticipates an inability to prevail on the merits in the appropriate forum does not confer jurisdiction in a different forum.  Thus, Plaintiff was required to exhaust his administrative remedies  prior to filing of this suit and, because he has failed to do so, this Court lack jurisdiction over Plaintiff's claims.  Accordingly, Plaintiff's claims must be dismissed.

## V.

## STANDARD OF REVIEW OVER THE MERITS, ASSUMING ARGUENDO JURISDICTION OF THE FEDERAL COURT

In this case, plaintiff challenges the actions of a school district.  It is not the role of this Court to second-guess the decisions of the school district in the application of its policies and the Education Code.  Absent a deprivation of a fundamental property or liberty interest, "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland,* 420 U.S. 308, 326, 95 S. Ct. 992, 1003 (1975). Rather, the review of proceedings under IDEA requires that "due weight" be given to the state administrative proceedings.  *See Board of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S. Ct. 3034, 3050 (1982). In *Rowley*, the Court looked at the procedural safeguards in the IDEA that indicated that a court "shall receive the record of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall

---

[3]     Similarly, Plaintiffs have failed to demonstrate how they will be "forever harmed" should this Court not address their claim for declaratory judgment.

-12-

grant such relief as the court determines is appropriate." *Id.* at 205, 102 S. Ct. 3050 (quoting 20 U.S.C. §§ 1415(e)(2)). The Court held that "[t]he fact that §§ 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." *Id.* at 206, 102 S. Ct. at 3050.

## VI.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

Even assuming, *arguendo,* the Court chooses to exercise jurisdiction over Plaintiff's claims, Plaintiff cannot establish the required elements to obtain a preliminary objection. To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat that irreparable injury will result in the absence of the injunction; (3) that the threatened harm to the plaintiff outweighs the threatened harm to the defendant; and (4) that granting the injunction will not disserve the public interest. *Southerland v. Thigpen,* 784 F.2d 713, 715 (5th Cir. 1986); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985); *Garcia v. United States,* 680 F.2d 29, 31 (5th Cir. 1982); *Johnson v. Humble Independent School District,* 799 F. Supp. 43, 44 (S.D. Tex. 1992). In the case at bar, Plaintiff cannot meet the four prongs necessary to obtain a preliminary injunction.

A.   **Plaintiff cannot show a substantial likelihood of prevailing on the merits.**

In this suit, Plaintiff claims CK's constitutional right of due process were, and will be, violated. However, Plaintiff cannot show a substantial likelihood of success on the merits of his claims. *See Andress v. Cleveland,* 64 F.3d 176 (5th Cir. 1995)(district entitled to choose its own expert for purposes of education evaluation of minor child under IDEA).

Case 1:00-cv-00125   Document 4   Filed in TXSD on 09/11/2000   Page 14 of 17

Plaintiff asserts that CK's rights under 20 U.S.C. § 1400, *et seq.* (IDEA), were violated by Defendant. However, Plaintiff's assertions are without bases. Plaintiff originally gave his consent for the educational examination of CK, and then latter withdrew his consent. Because of Plaintiff's withdrawal, Defendant Harlingen CISD was unable to complete its assessment of CK to determine his educational needs. The District has the right to conduct its own educational evaluation of a minor child for the purpose of IDEA. *Andress v. Cleveland,* 64 F.3d 176 (5th Cir. 1995).

Additionally, Plaintiff asserts that he should be entitled to an injunction against Defendants, enjoining Defendants from denying Plaintiff and CK their rights under 20 U.S.C. §§ 1414 and 1415. Plaintiff asserts that his rights are as follows:

a.      Right to mediation under 20 U.S.C. § 1415(e);

b.      Right to observe testing of CK;

c.      Right to have CK psychologist Dr. Susan Ander, observe the testing, or review a video of the testing of CK;

d.      That the types of testing to be fully performed be fully explained to Plaintiff under 20 U.S.C. § 1414.

*Plaintiff's First Amended Complaint,* at 9-10.

However, Plaintiff is not entitled to any of the rights asserted. For example, with respect to Plaintiff's assertion of a right to mediation, 20 U.S.C. § 1415(b)(5) requires only that the opportunity to mediate be made available. Additionally, § 1414 specifically states that where a parent refuses to give informed consent, "the agency *may pursue* an evaluation by utilizing the mediation and due process procedures under section 1415 of this title...." Thus, there is no *requirement* that issues such as those pled by Plaintiff be mediated. Similarly, there is no basis for Plaintiff's claim of a right to observe the testing of the minor child, or that such testing and evaluation be subject to the

-14-

scrutinization of Plaintiff's hired experts.  Finally, Plaintiff was provided with information so that he could give his "informed consent" through a notice of assessment.  The fact that Plaintiff later withdrew his consent does not create a cause of action for any claim asserted by Plaintiff which would warrant the entry of injunctive relief.  Plaintiff cannot prevail on claims for which there is no established right; consequently, his application for injunctive relief must be denied.

**B.**     **Plaintiff cannot show a substantial threat that irreparable injury will result in the absence of an injunction.**

Plaintiff cannot show that irreparable harm will result in the absence of an injunction.  Plaintiff suggests that "it is clearly apparent" that Defendant will conduct an examination of CK without the consent of Plaintiff.  Despite Plaintiff's unsupported assertions, Defendant has not, and will not, without proper authorization from a proper authority, conduct an evaluation or testing of a minor child.  Additionally, having failed to establish any right to be present for any testing, Plaintiff provides no basis for his assertion that "irreparable harm" shall result by the evaluation of CK outside of a parent's presence.[4]  Moreover, Plaintiff originally consented to the testing and examination of CK. The fact that Plaintiff later withdrew his initial consent does not necessitate that the "informed consent" requirements  under § 1415 be enforced through injunctive relief.

**C.**     **There is no threatened harm to plaintiff if the injunction is not granted.**

Any threatened harm to Plaintiff in the absence of an injunction is not outweighed by threatened harm to the school district.  Again, Plaintiff suggests that "it is clearly apparent" that Defendant will conduct an examination of CK without the consent of Plaintiff. Plaintiff's perception

---

[4]     Defendant notes, however, that without an educational examination, CK's educational needs cannot be evaluated and his placement in an appropriate educational environment cannot be determined.

-15-

that some harm may befall CK is baseless and is wholly unsupported.  As stated, without proper authorization, the District cannot, and will not, perform an examination of CK.  There is no threatened harm to Plaintiff which would entitle Plaintiff to an injunction; accordingly, Plaintiff's request should be denied.

**D.**     **Granting the requested injunction will disserve the public interest.**

The last prong Plaintiff must satisfy in order to entitle him to an injunction is to establish that the granting of the injunction will not disserve the public interest.  Plaintiff cannot meet that burden.  Rather, granting the injunction will disserve the public interest.  IDEA was created in an effort to ensure that "all handicapped children have available to them...a free appropriate education which emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(c).  Thus, IDEA was itself designed to provide for the needs of children attending public schools.  The interest of the public is clearly to see that a child with special needs has those needs addressed and that such children are properly cared for.  By granting Plaintiff's application for injunction, the public's interest in seeing that children with special needs receive proper care and a free and appropriate education will be disserved.  Consequently, Plaintiff cannot meet the fourth prong necessary to obtain an injunction and his application should be denied.

## VIII.

## CONCLUSION

For the above reasons, Defendant respectfully requests that this Court deny Plaintiff's Application for a Preliminary Injunction; that Plaintiff be denied all relief demanded in his Complaint; that this case be dismissed with prejudice; and that the Court award Defendant its attorneys' fees and costs and such other and further relief as the Court deems just and proper.

Respectfully submitted,

WALSH, ANDERSON, BROWN,
  SCHULZE & ALDRIDGE, P.C.
P.O. Box 2156
Austin, Texas  78768
TELEPHONE: (512) 454-6864
FACSIMILE: (512) 467-9318

BY: _____

    BRIDGET ROBINSON
    State Bar No. 17086800
    S. Dist. Admission No. 16521

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2000, a true and correct copy of the above and foregoing pleading was served upon counsel of record by placing same in the United States mail, certified, return receipt requested, postage prepaid and addressed as follows:

William Kimball
Koppel, Ezell, Jackson & Kimball, L.L.P.
312 E. Van Buren
Harlingen, TX 78550

_____
BRIDGET ROBINSON

-17-