9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 2 9 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| WILLIAM K., Individually and as Next Friend of C.K., a minor child | § § § | |
| V. | § § | CASE NO. B-00-125 |
| HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT AND LUCIUS D. BUNTON, HEARING OFFICER FOR THE TEXAS EDUCATION AGENCY | § § § § § § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT, HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**NOW COMES**, Plaintiff, William K., individually and as next friend of C.K., a minor child, and files this, his Response to Defendant Harlingen Consolidated Independent School District's ("HCISD") Motion to Dismiss for Lack of Jurisdiction, and in support hereof, Plaintiff would show the Court as follows:

**A.
FACTS**

1. Plaintiff incorporates herein by reference for all purposes all factual allegations made in Plaintiff's First Amended Original Complaint which were made by the Plaintiff under oath.

2. CK is a 10-year-old child who has been diagnosed with numerous mental disorders and learning disabilities including Bi-polar Disorder with Psychotic Features, Attention Deficit Disorder with Hyperactivity, and Pervasive Developmental Disorder, among other disabling disorders. CK takes significant dosages of several medications including: Tegretol, a mood stabilizer; Risperdal, an anti-

1

psychotic; Adderall, to control hyperactivity; and Synthroid for a hypothyroid condition. CK's numerous psychological disorders and learning disabilities combine to create intertwined obstacles which need to be jointly overcome to enable CK to advance with his education. As a student at HCISD's Treasure Hills Elementary School for the past five (5) years (Kindergarten through 4th Grade), CK has barely advanced academically. CK currently reads far below his grade level even through he has a verbal IQ in the average range. CK is far below where he should be academically due to a failure of HCISD to properly address CK's mental disorders and learning disabilities.

3. CK is a patient of Joseph Biederman, M.D. and Ellen Braaten, Ph.D. of Harvard Medical School and Massachusetts General Hospital. CK is also a patient of Susan Ander, Ph.D. of San Benito, Texas. All three doctors have recommended that CK be placed into a special education residential school to help CK advance his educational and social skills. All three doctors have given their written opinions strongly recommending residential placement and these written opinions have been delivered to HCISD.

4. Accordingly, on or about April 28, 2000, Plaintiff requested that HCISD conduct an ARD meeting to discuss and determine whether CK should be placed in a special residential school as recommended by Dr. Biederman

5. On or about June 6, 2000, the ARD meeting was conducted at the Treasure Hills Elementary School, Harlingen, Texas. At the conclusion of said meeting, Plaintiff asked for the hearing officer, (Principal, Linda Krabil), to take a vote among the ARD committee members. Mrs. Krabil then informed the Plaintiff that no vote would be taken because HCISD has already made its decision at "higher" level and that the matter was "out of her hands."

6. On or about June 21, 2000, Plaintiff filed with the Texas Education Agency an appeal of the decision by HCISD to deny CK the services recommended by Dr. Biederman, Dr. Braaten, and Dr. Ander. Mr. Lucius Bunton was assigned by TEA to be the Special Education Hearing Officer.

7. On or about June 30, 2000, HCISD filed its Motion to Compel a Comprehensive Assessment citing the case of **Andress v. Cleveland**, 64 F.3rd 176 (5th Cir. 1995) as its sole authority. In said motion, HCISD argued that it had the right to use the expert of its choice to examine CK and that CK's parents must comply with the examination or be denied any right to have CK receive residential special education services. A true and correct copy of said pleading was attached to Plaintiff's First Amended Original Complaint as **Exhibit "C"**.

8. On or about July 10, 2000, Plaintiff filed <u>Petitioner's Response to Respondent's Motion to Compel a Comprehensive Individual Assessment and Motion to Strike Dr. Oakland</u>. A true and correct copy of said pleading was attached to Plaintiff's First Amended Original Complaint as **Exhibit "D"**. In said pleading, Plaintiff correctly argued that **Andress v. Cleveland**, 64 F.3rd 176 (5th Cir. 1995), was effectively overruled by Congress when it overwhelmingly passed the bi-partisan 1997 amendments to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq. In the sweeping 1997 revisions to IDEA, Congress re-wrote the procedures for conducting evaluations and reevaluations of children and set forth the changes in 20 U.S.C. §1414 and 20 U.S.C. §1415. Said revisions require "informed parental consent" and provides mediation procedures when a parent refuses to consent.

9. On July 13, 2000, Mr. Bunton entered an Order Granting Respondent's Motion to Compel a Comprehensive Individual Assessment. A true and correct copy of said Order was attached to Plaintiff's First Amended Original Complaint as **Exhibit "E"**. Said Order violates 20 U.S.C. §1414

3

and §1415, (as amended in 1997).

10. Plaintiff in this case seeks a ruling concerning Plaintiff's rights as custodial "parent" of CK in regard to HCISD's educational and psychological examination of Plaintiff's son, CK. The former hearing officer in the underlying administrative hearing, Lucius Bunton, entered an order on July 13, 2000, granting HCISD's Motion to Compel a Comprehensive Individual Assessment. See **Exhibits "C", "D" and "E"** to Plaintiff's First Amended Original Complaint. Thereafter, Plaintiff filed with said hearing officer, a <u>Motion for Clarification</u>, seeking a clarification of Plaintiff's fundamental constitutional rights as CK's parent and Plaintiff's (and CK's) rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq. (1997). See in particular Sections 1414 and 1415 of IDEA. In said motion, Plaintiff requested that the hearing officer clarify the following questions:

A. Do the parties have to agree upon the person who performs the examination or does the school district get to pick their own examiner?

B. Will CK's parents and/or their doctors be permitted to be present?

C. Will the parents of CK be permitted to videotape the examination in a non-intrusive manner? and,

D. Will it be disclosed to the Plaintiff in detail the methods and types of examination prior to the examination itself?

A true and correct copy of said motion was attached to Plaintiff's First Amended Complaint herein as **Exhibit "F"**.

11. On or about July 31, 2000, HCISD filed its <u>Response to Motion for Clarification</u>. A true and correct copy of said pleading was attached to Plaintiff's First Amended Original Complaint as

4

**Exhibit "G"**. In its Response, HCISD refused to acknowledge any parental rights exist during the testing of CK. HCISD's attorneys further sent to Plaintiff a letter dated August 1, 2000, which further shows their refusal to follow the procedures set forth in 20 U.S.C. §1414 and §1415 (1997). A true and correct copy of said letter was attached to Plaintiff's First Amended Original Complaint as **Exhibit "H"**.

12. On or about August 9, 2000, Hearing Officer, Bunton, entered an Order denying <u>Plaintiff's Motion for Clarification</u>. A true and correct copy of said Order was attached to Plaintiff's First Amended Original Complaint as **Exhibit "I"**. Thereafter, Plaintiff filed this lawsuit.

## B.<br>AUTHORITIES

13. There are no comity or abstention issues in this case which would require a dismissal of this case because this court is not litigating any issue now before the administrative hearing officer. All issues now before this court,[1] have been ruled upon by the administrative hearing officer. Plaintiff would argue that he has exhausted all administrative remedies on the issue of Plaintiff's parental rights concerning HCISD's reevaluation of CK because Plaintiff has presented to the administrative Hearing Officer on two separate occasions[2] his complaints and objections now at issue in this suit. Both times the Hearing Officer ignored and refused to consider such arguments. See **Exhibits "E" and "I"** to Plaintiff's First Amended Original Complaint.

14. In the alternative, in the instance that this court rules that said exhibits "E" and "I" do not constitute an exhaustion of administrative remedies, Plaintiff would argue that Plaintiff does not

---

[1] Except the privacy issues in which the Plaintiff is seeking monetary damages.

[2] See Petitioner's Response to HCISD's Motion to Compel a Comprehensive Individual Assessment, Exhibit "D" to Plaintiff's First Amended original Complaint, and see Petitioner's Motion for Clarification, Exhibit "F" to Plaintiff's First Amended original Complaint.

5

need to exhaust administrative remedies for the limited procedural issues raised in this lawsuit because to do so would be <u>futile</u> or <u>inadequate</u>. **Honig v. Doe**, 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988) and **Gardner v. School Board Caddo Parish**, 958 F.2d 108,111-112 (5th Cir. 1992). There is also an exception to the exhaustion requirement when irreparable injury is likely to result in the absence of immediate judicial review. **Lewis v. Reagan**, 660 F.2d 124, 127 (5th Cir. 1981) and **Sweet Life v. Dole**, 876 F.2d 402, 407 (5th Cir. 1989). The facts demonstrate that the administrative process would be futile, inadequate and that Plaintiff and CK would be irreparably harmed but for seeking relief in federal court. In this regard, the former hearing officer, Lucius Bunton, made final decisions which would have denied the Plaintiff parental rights outlined in Petitioner's Response to HCISD's Motion to Compel a Comprehensive Individual Assessment, Exhibit "D" to Plaintiff's First Amended Original Complaint, and Petitioner's Motion for Clarification, Exhibit "F" to Plaintiff's First Amended Original Complaint. Accordingly, Plaintiff would have had to submit his son to a very biased Dr. Oakland and Plaintiff would be barred by HCISD from observing the examination, (in a non-intrusive manner, i.e. video monitor or one-way glass). Further, Plaintiff's doctors would be barred from observing the testing (via videotape or one-way glass), and Plaintiff would be denied even an explanation as to exactly the type of testing and what the testing entails, all in violation of basic constitutional rights. See e.g., **Troxel v. Granville**, ___ U.S. ___, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Accordingly, Plaintiff herein has demonstrated based upon undisputed and uncontested facts, that his administrative remedies on the issue of his parental rights are <u>inadequate</u>, that to pursue the matter any further with the Texas Education Agency's hearing officers would be <u>futile</u> due to the fact that Mr. Bunton has made final rulings upon the subject matter, and that Plaintiff would be irreparably harmed due to the fact that

6

judicial review of Mr. Bunton's rulings at issue would only take place after Plaintiff was required to submit his son to unexplained, and secret examinations by HCISD's already biased expert, Dr. Oakland. Also see 20 U.S.C. §1414 and §1415 (1997), which require "informed parental consent."

15. In any case, parents and students do not abandon their constitutional rights at the school house door. **Goss v. Lopez**, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) and **Tinker v. Des Moines Independent Community School District**, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969).

16. Further, a school district does not have an absolute right to reevaluate a child under IDEA if in preparing to do so, the school district denies fundamental parental rights guaranteed under IDEA and under the federal constitution. See e.g., **Holland v. District of Columbia**, 71 F.3d 417 (D.C. Cir. 1995).

17. As demonstrated by exhibits to Plaintiff's First Amended Original Complaint, (specifically, Exhibits "C"-"I"), Plaintiff gave the hearing officer in the administrative proceeding every opportunity to rule upon the rights of Plaintiff as a parent and the rights of CK in regard to HCISD's efforts to reevaluate CK. The hearing officer declined to clarify Plaintiff's and CK's rights leaving the Plaintiff no other option but to file this lawsuit. If the Plaintiff did not file this suit, the Plaintiff would have had to submit his son to a biased examiner, (Dr. Thomas Oakland), who has already issued an opinion that CK does not need the services recommended by CK's three treating doctors. See **Exhibit "B"** to Plaintiff's First Amended Original Complaint which is a true and correct copy of Dr. Oakland's report. Further, to proceed with the administrative proceeding without seeking redress in federal court at this point in time, Plaintiff would have been denied any opportunity to observe the testing and evaluation of his son and Plaintiff would further be denied the right to have

7

CK's doctors view the testing. Plaintiff would further be denied the right to videotape the testing and evaluations for review by CK's treating doctors. Plaintiff also would have been denied an explanation of the exact testing methods, the testing objectives, and the exact psychological tests that HCISD intended to be performed by Dr. Oakland upon Plaintiff's son in secrecy. In any case, it is undisputed that these tests would be performed by HCISD without parental consent. See e.g., **Holland v. District of Columbia**, 71 F.3d 417 (D.C. Cir. 1995). The result would have been a complete denial of Plaintiff's and CK's rights under IDEA, (specifically 20 U.S.C. §1414 and 1415) and a denial of Plaintiff's and CK's constitutional rights under both the Texas and United States Constitutions. See Texas Constitution, Art. 1, Section 19 and the United States Constitution, Amendment 14. See also the following authorities which have held that parents have fundamental constitutional rights to care for, manage and control the care of their children without governmental intrusion. **Troxel v. Granville**, ___ U.S. ___, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).[3] Also see, **Pierce v. Society of Sisters**, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); **Stanley v. Illinois**, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d. 551 (1972); **Wisconsin v. Yoder**, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); and **Santosky v. Kramer**, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

18. The ruling of Mr. Bunton at issue, (Exhibits "E" and "I" to Plaintiff's First Amended Original Complaint), were based upon the sole authority cited by HCISD: **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995). Plaintiff has argued in the administrative proceeding (and argues in this federal

---

[3] In **Troxel**, the Supreme Court struck down a Washington state statute granting grandparent visitation over the objections of a custodial parent stating: "The liberty interest at issue in this case–the interest of parents in the care, custody and control of their children–is perhaps the oldest of the fundamental interests recognized by this Court." **Troxel** contains a historical discussion of United States Supreme Court decisions which have shaped the constitutional rights of parents over their children and the limitations of government to infringe upon those rights. 102 S.Ct at 2060.

8

lawsuit), that since **Andress** was decided prior to the sweeping 1997 amendments to IDEA, that **Andress** has been effectively overruled by Congress.

**19.** There is no question that Congress completely revised IDEA in 1997, from its "goals and purposes" in 20 U.S.C. §1400(d), to the "procedural rights" of parents in conducting evaluations and reevaluations of their children, as set forth in the new Sections 1414 and 1415 of IDEA. See e.g, **Greater Expectations: How the 1997 IDEA Amendments Raise the Basic Floor of Opportunity for Children with Disabilities**, 103 Dick. L.Rev. 613 (1999) and **The Individuals with Disabilities Education Act Amendments of 1997**, 122 Ed. Law Rep. 1103 (1998). The emphasis of the new IDEA Act has been expanded from access to education, to meaningful educational outcomes so that mentally handicapped students are prepared for employment and later social life. Congress overwhelmingly, and in a bipartisan manner, voted 98 to 1 in the Senate and 420 to 3 in the House of Representatives, to enact the revolutionary changes to IDEA including an increase in appropriations to fund special educational programs of $750.6 million, to $4 billion in 1997. See 103 Dick. L.Rev. 613, 637 (1999). The Congressional mandate is crystal clear. Now school districts **MUST,** as national policy, improve educational results and achievements for children with mental disabilities to prepare these children for later educational challenges and employment. See 20 U.S.C. §1400 (c) and (d). Also see President William Clinton's Remarks, on signing the IDEA Amendments of 1997 available on Westlaw at 1997 WL 10084718.

**20.** The most relevant Congressional amendments to the issues now before this court are the 1997 changes to the procedural and substantive rights of parents under IDEA in the area of "evaluations" and "reevaluations" of mentally disabled children. In this regard, in the 1997 amendments, Congress combined several previous procedural provisions under IDEA into Sections 1414 and 1415 of the

9

new IDEA, saving previous parental notice requirements, but also adding the requirements of parental "informed consent" and dispute "mediation" requirements. See 122 Ed. Law Rep. 1103, 1119-1121. Since the said 1997 amendments to IDEA, parents now have more legal rights. Parents <u>must</u> now be fully informed about evaluations and reevaluations and parents <u>must</u> also provide to the school district "informed consent" to proposed evaluations and reevaluations of their children. If informed consent is not given by a parent, the district and the parents <u>must</u> proceed to mediation under the 1997 amendments to IDEA. See 20 U.S.C. §1414 and §1415. Also see the U.S. Department of Education's 1999 Federal Regulations which elaborate upon these new requirements, 34 C.F.R. §300.505 and §300.506 (1999).

21. HCISD has refused all offers of mediation in this case both verbally and in writing by opposing Petitioner's Motion for Mediation in the administrative proceeding, all in violation of the letter and spirit of 20 U.S.C. §1414 and 1415 (1997).

22. Plaintiff in this case only seeks clarification of his rights as a parent relevant to the school district's proposed reevaluation of CK. Plaintiff is not seeking in this federal lawsuit a final determination of CK's educational placement. That issue is currently set for final determination by the current Texas Education Agency hearing officer, Mr. Stephen Webb, for October 26-27, 2000[4].

23. In any case, Plaintiff asserts that since Mr. Bunton made final rulings upon the parental rights issues now before this court and since those rights will be extinguished if this court does not make immediate rulings upon the parental rights of the Plaintiff herein, Plaintiff has exhausted his administrative remedies on these issues. Examining the 1997 version of IDEA, there appears to be no specific limitations which would prevent the Plaintiff in this case from having this court

---

[4] Mr. Lucius Bunton resigned as hearing officer upon the filing of this lawsuit.

determine Plaintiff's parental rights under IDEA and pursuant to the Texas and federal constitutions, in regards to HCISD's efforts to reevaluate CK. In particular, the administrative Orders of Mr. Bunton at issue which Plaintiff argues denied the Plaintiff his parental rights, were made by Mr. Bunton under the authority granted him under 20 U.S.C. §1415(f)(1). Accordingly, under 20 U.S.C. §1415(i)(1), it states:

> "<u>A decision made in a hearing conducted pursuant to subsection (f)</u> or (k) of this section <u>shall be final</u>, except that any party involved in such hearing may appeal such decision under the provisions of subsection (g) of this section and paragraph (2) of this subsection." (Emphasis added).

In 20 U.S.C. §1415(i)(2)(A), entitled, "<u>Right to Bring Civil Action</u>", it goes on to state:

> "<u>Any party aggrieved by the findings and decisions made under subsection (f)</u> or (k) of this section who does not have the right to an appeal under subsection (g) of this section, <u>and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section</u>, which may be brought in ...a district court of the United States without regard to the amount in controversy." (Emphasis added).

The above said provisions of the 1997 version of IDEA seems to indicate that the entire controversy in the administrative proceeding need not be determined by the administrative officer so long as the administrative officer has made a decision on a matter which is by statute, "final". In other words, Mr. Bunton's order denying Plaintiff's Motion for Clarification was in fact a final ruling which was immediately appealable to this Court.

24. This interpretation of Section 1415 of IDEA (1997) would not conflict with case law decisions discussing exhaustion requirements and exceptions. In **Fuller v. Rich**, 11 F.3d 61 (5th Cir. 1994), the Court made the following observations:

> "Exceptions to the exhaustion requirement are appropriate where either the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action. (Citations omitted). 11 F.3d at 62.

11

> "Although the exhaustion doctrine does not require that the National Appeals Board actually rule on the merits of Fuller's claims, it does require that Fuller present the claims to the Board, thereby giving it an opportunity to review the decision reached by the Parole Commission." (Citations omitted and emphasis added). 11 F.3d at 62.

In this case, Mr. Bunton had an opportunity to review Plaintiff's Motion for Clarification which outlined Plaintiff's objections and complaints concerning Plaintiff's alleged denial of parental rights. Mr. Bunton made rulings which were final concerning those issues. Plaintiff herein is still pursuing a decision by the current hearing officer to require HCISD to pay for CK's placement in a special education residential school. That issue is not being infringed upon by this Court. Accordingly, it appears that both under the above cited IDEA provisions and under **Fuller**, (supra), the issues now before this Court are final rulings.

25. Alternatively, in the instance that this court rules that said exhibits "E" and "I" do not constitute an exhaustion of administrative remedies, Plaintiff would argue that Plaintiff does not need to exhaust administrative remedies for the limited procedural issues raised in this lawsuit because to do so would be <u>futile</u> or <u>inadequate</u>. **Honig v. Doe**, 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988) and **Gardner v. School Board Caddo Parish**, 958 F.2d 108,111-112 (5th Cir. 1992). In **Honig**, (supra), the Supreme Court, under an older version of IDEA, ruled in 1988:

> " [I]t is true that judicial review is normally not available under §1415(e)(2) until all administrative proceedings are completed, but as we have previously noted, parents may bypass the administrative process where exhaustion would be futile or inadequate. Exhaustion ...should not be required...in cases where exhaustion would be futile either as a legal or practical matter. " **Honig**, 108 S.Ct. at 606 (citations omitted).

The Supreme Court in **Honig** ruled that despite the fact administrative remedies are not exhausted under IDEA, a party may seek and obtain injunctive relief under special circumstances. 108 S.Ct. 606. These special circumstances exist in this case. There is also an exception to the exhaustion requirement when "irreparable" injury is likely to result absent immediate judicial review. **Lewis**

12

**v. Reagan**, 660 F.2d 124, 127 (5th Cir. 1981) and **Sweet Life v. Dole**, 876 F.2d 402, 407 (5th Cir. 1989). The facts of this case demonstrate that the administrative process would be <u>futile, inadequate</u> and that Plaintiff and CK would be <u>irreparably harmed</u> but for seeking relief in federal court. In this regard, the former hearing officer, Lucius Bunton, made final decisions which would have denied the Plaintiff's parental rights outlined in <u>Petitioner's Response to HCISD's Motion to Compel a Comprehensive Individual Assessment</u>, Exhibit "D" to Plaintiff's First Amended Original Complaint, and <u>Petitioner's Motion for Clarification</u>, Exhibit "F" to Plaintiff's First Amended Original Complaint. Accordingly, Plaintiff would have had to submit his son to a very biased Dr. Oakland and Plaintiff would be barred by HCISD from observing the examination, (in a non-intrusive manner, i.e. video monitor or one-way glass). Further, Plaintiff's doctors would be barred from observing the testing (via videotape or one-way glass), and Plaintiff would be denied even an explanation as to exactly the type of testing and what the testing entails, all in violation of Plaintiff's and CK's fundamental constitutional rights. See e.g., **Troxel v. Granville**, ___ U.S. ___, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Accordingly, Plaintiff herein has demonstrated based upon undisputed and uncontested facts, that his administrative remedies on the issue of his parental rights are <u>inadequate</u>, that to pursue the matter any further with the Texas Education Agency's hearing officers would be <u>futile</u> due to the fact that Mr. Bunton has made final rulings upon the subject matter, and that Plaintiff would be irreparably harmed due to the fact that judicial review of Mr. Bunton's rulings at issue would only take place after Plaintiff was required to submit his son to unexplained, and secret examinations by HCISD's already biased expert, Dr. Oakland. Also see, 20 U.S.C. §1414 and §1415 (1997), which require "informed parental consent."

26. For all of the above and foregoing reasons, HCISD's Motion to Dismiss should be denied in all respects.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that HCISD's Motion to Dismiss should be denied in all respects. Plaintiff also prays for such other and further relief as the Court deems just in this matter.

Respectfully submitted,

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**
Post Office Box 2878
312 E. Van Buren
Harlingen, Texas 78551
Tel. (956) 425-2000
Fax No. (956) 421-4258

BY: _William Kimball_
William Kimball
State Bar #11418700
Fed. I.D. No. 6159

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was on this 28th day of September, 2000, mailed by certified mail, return receipt requested to: Ms. Bridget Robinson, **Walsh, Anderson, Brown, Schulze & Aldridge, P.C.**, P.O. Box 2156, Austin, Texas and Ms. Valerie R. Esparza, **Assistant Attorney General**, General Litigation Division, P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548.

_William Kimball_
William Kimball

14