United States District Court
Southern District of Texas
FILED 24

NOV 1 4 2000

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **WILLIAM K., Individually** | § | |
| **and as Next Friend of C.K., a minor child** | § | |
| | § | |
| **V.** | § | **CASE NO. B-00-125** |
| | § | |
| **HARLINGEN CONSOLIDATED** | § | |
| **INDEPENDENT SCHOOL DISTRICT** | § | |
| **AND LUCIUS D. BUNTON, HEARING** | § | |
| **OFFICER FOR THE TEXAS** | § | |
| **EDUCATION AGENCY** | § | |

## PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**NOW COMES**, Plaintiff, William K., Individually and as Next Friend for C.K., a minor child, (hereinafter sometimes referred to as "Plaintiff"), complaining of the Harlingen Consolidated Independent School District, (hereinafter sometimes referred to as "HCISD"), and in support hereof, Plaintiff would show the Court as follows:

### FACTS

1.      Plaintiff is a resident of Harlingen, Cameron County, Texas. Plaintiff is the natural father and custodial parent of CK, a 10 year-old child. Plaintiff and CK reside together in Cameron County, Texas, and Plaintiff has legal authority to bring this action.

2.      HCISD is a school district of Cameron County, Texas. HCISD has been served with process and has made its general appearance herein.

3.      The Texas Education Agency ("TEA"), by and through its appointed hearing officer, Mr. Lucius Bunton, (hereinafter sometimes called "Bunton"), made rulings which violated CK's and the Plaintiff's federal and state constitutional and legal rights in an administrative proceeding styled: **Christopher K., b/n/f v. Harlingen Independent School District**, Docket No. 388-SE-600. Since

1

the filing of this suit, Bunton has resigned as hearing officer in this case and a new hearing officer has been appointed, Stephen Webb, ("Webb").   TEA and its current hearing officer, Webb, on November 7, 2000, wrongfully dismissed the above said administrative proceeding.  This suit is in part an appeal of that dismissal and in part a suit seeking monetary damages based upon HCISD's tortious conduct described hereinbelow.

4.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331 because the issues to be determined by the Court involve the interpretation of Plaintiff and CK's rights under several federal statutes and the United States Constitution. This Court also has jurisdiction over the appeal of the ruling dismissing the administrative proceeding described below pursuant to 20 U.S.C. §1415(I)(3)(A).

5.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391.  In this regard, a substantial part of the events at issue took place in the Southern District of Texas and HCISD's principal place of business is in the Southern District of Texas.

6. CK is a 10-year-old child who has been diagnosed with numerous mental disorders and learning disabilities including Bi-polar Disorder with Psychotic Features, Attention Deficit Disorder with Hyperactivity, and Pervasive Developmental Disorder, among other disabling disorders. CK takes significant dosages of several medications including: Tegretol, a mood stabilizer; Risperdal, an anti-psychotic; Concerta, to control hyperactivity; and Synthroid for a hypothyroid condition.  CK's numerous psychological disorders and learning disabilities combine to create intertwined obstacles which need to be jointly overcome to enable CK to advance with his education. As a student at HCISD's Treasure Hills Elementary School for the past five (5 ) years (Kindergarten through 4th Grade), CK has slowly advanced academically.  CK is currently enrolled at Stuart Place Elementary, part of HCISD.  At the end of CK's 4th Grade, CK read at a First Grade Level even though he had a verbal IQ in the average range. CK has made some advancement since transferring to Stuart Place

2

Elementary but he is still far below where he should be academically due to a failure of HCISD to properly address CK's mental disorders and learning disabilities.

7. CK is a patient of Joseph Biederman, M.D. and Ellen Braaten, Ph.D. of Harvard Medical School and Massachusetts General Hospital. CK is also a patient of Susan Ander, Ph.D. of San Benito, Texas. All three doctors have recommended that CK be placed into a special education residential school to help CK with educational and social skills and to treat his anti-social behaviors. All three doctors have given their written opinions strongly recommending residential placement and these written opinions been delivered to HCISD.

8. Accordingly, on or about April 28, 2000, Plaintiff requested that HCISD conduct an ARD meeting to discuss and determine whether CK should be placed in a special residential school as recommended by Dr. Biederman, Dr. Braaten and Dr. Ander.[1] The ARD meeting was set by HCISD for June 6, 2000.

9. It is Plaintiff's information and belief that soon after the Plaintiff requested the ARD meeting, that HCISD hired the law firm of Walsh, Anderson, Brown, Schulze & Aldridge, P.C. of Austin, Texas, to represent HCISD for the purposes of defeating Plaintiff's request to have HCISD pay for CK's placement into a special education residential facility as recommended by the aforesaid doctors.[2] At this time, HCISD did not inform CK's parents of its intent to oppose Plaintiff's request. In fact, HCISD's teachers and principal verbally pretended to be open minded about the issue making comments about how Dr. Biederman was so impressive and like comments, when in fact, HCISD's attorneys and HCISD employees began preparing their opposition to deny Plaintiff and

---

[1] An ARD meeting is the Texas version of an IEP meeting as described in 20 U.S.C. §1414(d). An ARD meeting is a meeting between the parents and the child's teachers, counselor and principal. See 34 C.F.R. 300.344 (1999) which describes who is on the ARD team. ARD meetings are supposed to be non-adversarial and private.

[2] Special education residential schools are expensive and HCISD apparently made a decision to fight the Plaintiff's request even before reviewing all of the facts.

CK their federal rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq. (1997).

10.    On or about May 7, 2000, HCISD requested that CK's parents give consent to HCISD to conduct an educational evaluation of CK. CK's parents initially gave approval to HCISD to evaluate CK for the ARD meeting but at that time, Plaintiff believed that HCISD was going to do an in-house educational evaluation. There was never any statement made in requesting this evaluation that HCISD was rejecting the testing and conclusions of Dr. Biederman, Dr. Braaten, and Dr. Ander. No where in the alleged consent form signed by the Plaintiff was the testing fully explained nor did it state who was performing the tests. Further, at all times material herein, HCISD school officials knew that CK's parents were divorced, that CK's mother was herself suffering from mental illness, and that the Plaintiff had the sole authority to make the educational, psychological, and medical decisions concerning CK.[3]   There was no "informed consent" as required by 20 U.S.C. §1414 and 34 C.F.R. §300.505 (1999) to conduct the testing and evaluations secretly intended by HCISD. When Plaintiff signed said form, he was under the belief that HCISD was going to have one of its employees or possibly a local psychologist and/or educator conduct a fair and unbiased test of CK's reading and grade level. Accordingly, since these were not the intentions of HCISD, Plaintiff never gave "informed consent." See also, e.g., 34 C.F.R. §300.500 and 34 C.F.R. §300.505 (1999).

11. It is Plaintiff's information and belief that shortly after Plaintiff requested the ARD meeting for the purposes of addressing Dr. Biederman's, Dr. Braaten's and Dr. Ander's opinions, (that CK needed to be placed in a special education residential school), HCISD's attorneys hired a testifying expert who HCISD and its said attorneys knew would give opinions favorable to HCISD's secret objective to deny CK his rights as a mentally handicapped child under federal law. Sometime

---

[3] CK's mother verbally told HCISD officials at the ARD meeting that Plaintiff was making the educational and medical decisions concerning CK.

between April 28, 2000 and May 19, 2000, HCISD's said attorneys hired Dr. Thomas Oakland, an alleged educational expert from Gainesville, Florida. Dr. Oakland agreed, for a professional fee, to fly to Harlingen, Texas, and gather information to support his opinions. CK's parents, including the Plaintiff, were not informed between April 28, 2000 and May 19, 2000 that HCISD was opposing Plaintiff's request for residential placement, that HCISD had hired a law firm to oppose Plaintiff's request, and that HCISD hired Dr. Oakland to defeat CK's said federal right to a residential special education placement.

12.     On or about Friday, May 19, 2000, while Plaintiff was vacationing in California, Plaintiff had a telephone conversation with HCISD's "Director of Special Education", Jolaine Lanehart, who for the first time informed CK's father that HCISD had hired attorneys and that HCISD's said attorneys had hired Dr. Thomas Oakland to perform educational and psychological testing on CK. Being that HCISD had hired lawyers when HCISD had given no previous verbal or written indication that it was contesting Plaintiff's request for private residential school placement,[4] being that HCISD's lawyers hired Dr. Oakland (from Gainesville, Florida), and not HCISD officials, and being that Plaintiff had no information about Dr. Oakland, Plaintiff verbally withdrew his consent on or about May 19, 2000, (if in fact, there was ever any "informed consent"). On May 25, 2000, after returning from vacation in California, Plaintiff then delivered to HCISD a letter via first class mail and facsimile. Said letter was merely a written confirmation of the May 19, 2000 verbal statement to Ms. Lanehart by Plaintiff that CK's parents were not agreeing to the examination of CK by Dr. Oakland. See **Exhibit "A"** attached hereto. HCISD admits that it received both the verbal and written recission of Plaintiff's consent to have Dr. Oakland conduct an evaluation of CK.

---

[4] In fact, HCISD's ARD committee had for a year and a half accepted the opinions and diagnoses of CK's treating doctors, Dr. Joseph Biederman and Dr. Ellen Braaten of Harvard Medical School, Boston Massachusetts and the opinions and diagnoses of said doctors had been received and utilized in previous ARD meetings by HCISD personnel.

5

CVisPDF - www.texisi.com

13. Despite being denied permission by Plaintiff to examine CK, on <u>May 26, 2000</u>, HCISD had Oakland fly to Harlingen, Texas and Oakland was illegally given by HCISD and Oakland examined CK's private school and medical records. Dr. Oakland also interviewed CK's teachers, counselor and principal, all in violation of CK's privacy rights under federal and Texas law. A true and correct copy of Oakland's report is attached hereto as **Exhibit "B"** and incorporated herein by reference for all purposes. In said report, Oakland admits that he reviewed CK's medical and educational records[5].

14. By its actions described hereinabove, HCISD has violated Plaintiff's and CK's right to privacy under the following state and federal authorities: Texas Occupation Code, §159.001 through §159.009 (Vernon 1999); Texas common law "invasion of privacy" tort law; Federal Constitutional Rights to "privacy"; 20 U.S.C. §1232g(b)(1); 20 U.S.C. §1232g(2)(A);   34 C.F.R. 99.30.and Plaintiff's and CK's privacy rights under the Texas Constitution.

15. On or about June 6, 2000, the ARD meeting was conducted at the Treasure Hills Elementary School, Harlingen, Texas[6]. Despite being requested to leave by the Plaintiff, HCISD's attorneys attended the said meeting and refused to leave the meeting in violation of federal law. See 34 C.F.R. §300.344 which specifically states who is on the IEP team. The IEP team does not include a school district's attorneys. HCISD's said attorneys attempted to dominate the meeting and as a result, Plaintiff and CK were further denied their federal rights to have a parent-teacher conference on this issue with the IEP team. At the conclusion of said meeting, Plaintiff asked for the hearing officer, Principal Linda Krabil, to take a vote among the ARD committee members. Mrs. Krabil then

---

[5]  At the time of this illegal act, CK's mother was an in-patient at the psychiatric ward of Valley Baptist Medical Center in Harlingen, Texas. CK was with his mother at the time she was taken by police to the psychiatric ward of the hospital. Principal, Linda Krabil personally took possession of the children and knew that CK's mother was totally mentally incapacitated from at least Monday, May 22, 2000 through Friday, May 26, 2000, and possibly beyond, leaving only the Plaintiff as CK's sole mentally sound parent.

[6]  CK's mother attended this ARD meeting with her sister and the Plaintiff. CK's mother verbally told all persons present that the Plaintiff was making all decisions for CK concerning his education and medical health treatment.

6

CUtePDF - www.tadsc.com

informed the Plaintiff that no vote would be taken by the ARD committee because HCISD has already made its decision at "higher" level and that the matter was "out of her hands."[7] Plaintiff requests that HCISD be permanently enjoined from committing such illegal acts in future ARD meetings concerning CK.

16.   On or about June 21, 2000, Plaintiff filed with the TEA an appeal of the decision by HCISD to deny CK the services recommended by Dr. Biederman, Dr. Braaten, and Dr. Ander.  Bunton was assigned by TEA to be the Special Education Hearing Officer.[8]

17.   On or about June 30, 2000, HCISD filed its Motion to Compel a Comprehensive Assessment citing the case of **Andress v. Cleveland**, 64 F.3rd 176 (5th Cir. 1995) as its sole authority.  In said motion, HCISD argued that it had the right to use the expert of its choice to examine CK and that CK's parents must comply with the examination or be denied any right to have CK receive residential special education services.  A true and correct copy of said pleading is attached hereto as **Exhibit "C"** and incorporated herein by reference for all purposes.

18.   On or about July 10, 2000, Plaintiff filed Petitioner's Response to Respondent's Motion to Compel a Comprehensive Individual Assessment and Motion to Strike Dr. Oakland.   A true and correct copy of said pleading is attached hereto as **Exhibit "D"** and incorporated herein by reference for all purposes.   In said pleading, Plaintiff correctly argued that **Andress v. Cleveland**, 64 F.3rd 176 (5th Cir. 1995), was effectively overruled by Congress when it overwhelmingly passed the bi-partisan 1997 amendments to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq.   In the sweeping 1997 revisions to IDEA, Congress re-wrote the procedures for conducting evaluations and reevaluations of children and set forth the changes in 20 U.S.C. §1414

---

[7]  It is apparent that HCISD administrators intimidated the principal and teachers from performing their duties as IEP Team members all in violation of federal law.

[8]  See paragraph 3 above for the style of the administrative proceeding.

and 20 U.S.C. §1415. Said revisions require "informed parental consent" and provides mediation procedures when a parent refuses to consent.

19.  On July 13, 2000, Bunton entered an Order Granting Respondent's Motion to Compel a Comprehensive Individual Assessment.  A true and correct copy of said Order is attached hereto as **Exhibit "E"** and incorporated herein by reference for all purposes.  Said Order violates 20 U.S.C. §1414 and §1415, (as amended in 1997).

20.  On July 31, 2000, Plaintiff filed with Bunton a Motion for Clarification.   In said motion, Plaintiff requested that Bunton clarify the following questions:

A.  Do the parties have to agree upon the person who performs the examination or does the school district get to pick their own examiner?

B.  Will CK's parents and/or their doctors be permitted to be present?

C.  Will the parents of CK be permitted to videotape the examination in a non-intrusive manner? and,

D.  Will it be disclosed to the Petitioner in detail the methods and types of examination prior to the examination itself?

A true and correct copy of said pleading is attached hereto as **Exhibit "F"** and incorporated herein by reference for all purposes.

21.  On or about July 31, 2000, HCISD filed its Response to Motion for Clarification.  A true and correct copy of said pleading is attached hereto as **Exhibit "G"** and incorporated herein by reference for all purposes.  In its Response, HCISD refused to acknowledge any parental rights exist during the testing of CK.  HCISD's attorneys further sent to Plaintiff a letter dated August 1, 2000, which further shows their refusal to follow the procedures set forth in 20 U.S.C. §1414 and §1415 (1997). A true and correct copy of said letter is attached hereto as **Exhibit "H"** and incorporated herein by reference for all purposes.

CutePDF - www.fasau.com

22. On or about August 9, 2000, without any hearing or explanation, Bunton entered an Order denying Plaintiff's Motion for Clarification. A true and correct copy of said Order is attached hereto as **Exhibit "I"** and incorporated herein by reference for all purposes.

23. On August 11, 2000, HCISD filed its Motion to Dismiss because of the Plaintiff's refusal to submit his son to secret and unexplained testing by a very biased and non-objective Dr. Oakland.

24. On August 14, 2000, this lawsuit was filed by the Plaintiff. Shortly thereafter, on August 16, 2000, Bunton resigned as hearing officer and TEA appointed Webb as its new hearing officer. Since the filing of this lawsuit, Plaintiff has agreed to submit CK for testing and an evaluation to HCISD's hired expert, Dr. Oakland, but only under the condition that the Plaintiff be permitted to observe the testing from behind a one-way glass or some other non-intrusive means, and that the Plaintiff be permitted to have the testing videotaped so that CK's treating doctors could scrutinize the testing to make sure it was fair and objective. HCISD has recently agreed to allow the Plaintiff to watch the testing from behind a one-way glass, but has refused to allow the Plaintiff to videotape the testing from behind the same one-way glass.

25. On October 6, 2000, Webb issued an Order in which he agreed that the Plaintiff should be permitted to be present and videotape the testing by Dr. Oakland, among other issues discussed and set a telephonic hearing on the matter for October 26, 2000. A true and correct copy of said Order is attached hereto as **Exhibit "J"** and incorporated herein by reference for all purposes.

26. On October 10, 2000, in response to said October 6, 2000 Order, Plaintiff filed a Motion to Reconsider Petitioner's Previous Motion for Clarification in the administrative proceeding. A true and correct copy of said motion is attached hereto as **Exhibit "K"** and incorporated herein by reference for all purposes.

27. On October 26, 2000, a telephonic hearing was held among the parties herein and Webb. At that time, HCISD had conceded, (in its administrative pleadings and verbally), that Plaintiff would be

9

CHMPDF - www.fenlio.com

permitted by HCISD to be present to watch his son be tested by Dr. Oakland from behind a one-way glass, but refused to allow the Plaintiff to videotape the testing from behind the same one-way glass. Webb apparently changed his previous opinions expressed in the October 6. 2000 Order and his opinions expressed in a previously recorded telephonic conference on August 21, 2000[9]. Webb ruled that Plaintiff could not videotape the testing and that unless Webb and TEA were enjoined by this federal court. Webb further ruled that he would dismiss the administrative proceeding unless Plaintiff submitted his son to Dr. Oakland without being able to videotape the testing on or before November 1, 2000.

28. On November 1, 2000, this Court held a hearing on Plaintiff's Motion for Preliminary Injunction seeking to enjoin HCISD, TEA and Webb from dismissing the administrative proceeding and to allow the Plaintiff herein to: (1) observe the testing by Dr. Oakland from behind a one-way glass or some other non-intrusive manner; (2) be permitted to videotape Dr. Oakland's testing and evaluation form behind a one-way glass or some other non-intrusive manner; and (3) to have the testing fully explained to the Plaintiff. Although this Court obviously agreed with the Plaintiff's position as for videotaping and being present for testing from behind a one-way glass, the Court did not believe it had jurisdiction to hear the matter because of the pending administrative proceeding. Accordingly, this Court entered its Order of November 3, 2000, dismissing the injunctive portion of this suit.

29. On November 7, 2000, Webb signed an order dismissing the administrative proceeding. A true and correct copy of said Order is attached hereto as **Exhibit "L"** and incorporated herein by reference for all purposes. The administrative proceedings have now been completely exhausted and this court has jurisdiction to hear the entire case. See e.g., 20 U.S.C. §1415(I)(3)(A).

---

[9] This telephonic conference was recorded by Mr. Webb and a transcript of the hearing has been prepared by Plaintiff's law firm.

## REMEDIES SOUGHT

30. **DECLARATORY JUDGMENT:** Based upon the facts set forth hereinabove, Plaintiff seeks

a declaratory judgment (pursuant to 28 U.S.C. §2201 and Federal Rules of Civil Procedure 57), that

Plaintiff and CK have the following rights under 20 U.S.C. §1414 and 1415:

a. That Plaintiff should be informed as to every aspect of the proposed testing by HCISD including

the exact tests proposed by HCISD, who will perform the tests, the test objectives, the test protocols,

and the purposes of each such test;

b. That CK's parents should be afforded the opportunity to observe all phases of testing and

examination so long as the observation is non-intrusive and does not interfere with the testing. This

can be accomplished either through the use of a one-way window or through video camera

observation;

c. That CK's psychologist and educational experts, including but not limited to Susan Ander, Ph.D.,

should be permitted to observe the testing in a non-intrusive manner;

d. Plaintiff should be permitted to have a videographer video tape the testing and evaluation in a

non-intrusive manner such as behind a one-way glass so that Plaintiff has the opportunity to have

CK's doctors scrutinize the testing that is so important to CK's future; and

e. That HCISD violated IDEA and 34 C.F.R. §300.344 (1999) by having its attorneys attend the

June 6, 2000 ARD meeting concerning CK over the objections of the Plaintiff.

f. That HCISD violated IDEA when it failed to allow the ARD committee vote on the placement

of CK on June 6, 2000;

g. That HCISD violated of the privacy statutes and the Plaintiff's and CK's constitutional rights

cited herein when it turned over confidential educational records and medical and psychological

records to Dr. Oakland without the consent or approval of CK's parents; and

h. That HCISD has an illegal and unconstitutional policy of passing special education students,

11

including CK, on to higher grade levels without such students achieving meaningful academic progress. In this regard, HCISD has failed to follow the 1997 objectives of IDEA. In this case, HCISD has not followed its own IEP plans for CK, it has failed to hire and utilize remedial reading teachers, and it has failed to hire and utilize properly trained and experienced educators and psychologists to conquer learning disabilities CK, all in violation of the spirit and letter of IDEA and in violation of CK's constitutional rights. The conscious failure of HCISD to aggressively attend to CK's learning disabilities and to in effect, warehouse him, is a violation of CK's rights under IDEA and the Texas and United States Constitutions.

31.  **INJUNCTIVE RELIEF:**  Based upon the facts set forth hereinabove, Plaintiff seeks a preliminary injunction and after final hearing hereof, Plaintiff seeks a permanent injunction pursuant to Federal Rules of Civil Procedure 65 against HCISD,  enjoining HCISD, its officers, agents, employees, hired experts, servants or persons working in active concert with HCISD, from denying Plaintiff and CK the following rights:

a.  That Plaintiff should disclose to the Plaintiff prior to such testing taking place, every aspect of the proposed testing by HCISD, including the exact tests to be performed upon CK, who will perform the tests, the test objectives, the test protocols, and the purposes of each test, (i.e. what HCISD is trying to measure);

b.  That CK's parents should be afforded the opportunity to observe all phases of testing and examination so long as the observation is non-intrusive and does not interfere with the testing. This can be accomplished either through the use of a one-way window or through video camera observation;

c.  That CK's psychologist and educational experts, including but not limited to Susan Ander, Ph.D., be permitted to observe the testing by HCISD in a non-intrusive manner;

d.  Plaintiff should be permitted to have a videographer  video tape the testing and evaluation in a

12

non-intrusive manner such as behind a one-way glass so that Plaintiff has the opportunity to have CK's doctors scrutinize the testing by HCISD's paid expert.

32.  It is clearly apparent from the facts set forth in this verified pleading that if the relief sought is not granted, that Plaintiff and CK will suffer an immediate and irreparable injury being that HCISD will conduct the examination of CK without following the procedures mandated by 20 U.S.C. §1414 and 1415 and will violate Plaintiff's right as a parent to be fully informed about mental and educational testing.  Further, HCISD will violate the most basic constitutional and legal rights of a parent to be present during a doctor's examination of their child.

33.  Additionally, being that Plaintiff has clearly established his legal right to the injunctive relief sought, there is an established likelihood of success on the merits.  In this regard, the Court has already expressed opinions that it sees no reason why the Plaintiff should not be able to observe and videotape the testing of CK by Dr. Oakland as long as it is in a non-intrusive manner.  Plaintiff has clearly demonstrated constitutional rights to observe and collect educational and psychological information about his minor son for use by CK's treating doctors.

34.  Accordingly, after notice and hearing to HCISD,  the preliminary injunction should be granted to the Plaintiff as requested hereinabove.

35.  Further, after final hearing hereof, the Court should enter a permanent injunction as requested herein.

36.  Plaintiff prays that the bond be set at a moderate and reasonable sum, or if the law permits, that the bond be waived by the Court.

37.  **MONETARY DAMAGES**:  The said illegal and tortious acts or omissions of HCISD and Oakland described in paragraphs 9-14 hereinabove, have been the proximate cause of actual damages to the Plaintiff and CK.  Accordingly, Plaintiff seeks judgment of and from HCISD in an amount in excess of the minimum jurisdictional limits of this Court representing Plaintiff's and CK's actual

13

damages pursuant to the authorities set forth in paragraph 14 above.

38.    HCISD's actions in illegally disclosing CK's medical and educational records to Dr. Oakland was done by officers and vice principals of HCISD intentionally with the motive to deprive Plaintiff and CK their rights under Texas and federal law and the Texas and U.S. Constitutions. Accordingly, Plaintiff further seeks recovery of punitive damages of and from HCISD in an amount of $50,000.00.

39.  Plaintiff further seeks recovery of Plaintiff's costs of court and reasonable attorneys fees in an amount in excess of the minimum jurisdictional limits of this Court. Plaintiff further requests that HCISD be permanently enjoined from any future such violation.

40.   PRIVATE RESIDENTIAL SCHOOL PLACEMENT AND ATTORNEYS FEES: Now that the administrative proceeding has been dismissed, Plaintiff respectfully requests that this Court hear the entire case at issue in the administrative proceeding pursuant to 20 U.S.C. §1415(I)(3)(A).

41.  Taking into account the factual pleadings make herein by the Plaintiff, it is required pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq. (1997), that HCISD should pay for CK's tuition, room and board, Plaintiff's and CK's traveling expenses, and all related costs relating to CK's placement in a residential special education school. HCISD has to date violated various statutes, common law doctrines and the constitutional rights of CK and the Plaintiff, all in an effort to deprive CK of rights under IDEA. HCISD has wholly failed to assess and implement adequate educational measures to address CK's psychological and educational disabilities in defiance and disobedience of IDEA. Consequently, as a result of HCISD's negligent efforts or inability to address CK's learning disabilities and mental disabilities, CK has not adequately progressed educationally at HCISD in violation of IDEA. CK could not at this time pass a second grade exit exam, yet he is passing through the special education 5th grade at HCISD because HCISD has a policy and practice that passes special education students on to the next grade regardless of their abilities and achievements. In effect, HCISD has "warehoused" CK in the past by refusing to

14

hire and utilize remedial reading teachers and psychologists which would be necessary to fix CK's educational problems. It is Plaintiff's information and belief that HCISD, like many other school districts in South Texas, has an illegal and unconstitutional policy and practice in which it has failed to hire or utilize personnel that can actually achieve meaningful educational advancement of special education students, including CK. Instead, HCISD has decided that it is cheaper to just pass these unprepared and ill-equipped children on to the next grade, despite the fact that the student has not achieved the academic progress which should be necessary to be passed to the next grade level. This policy and practice is illegal, unconstitutional and leaves the child without the proper educational and academic skills to succeed in later life. Such policy and practice constitutes a civil rights violation which is actionable, should be enjoined, and condemned by this federal court.

42. Plaintiff accordingly requests that the federal court enter judgment against HCISD that it must forthwith pay the costs to have CK placed in an appropriate special education residential school chosen by Plaintiff's educational consultant, including but not limited to tuition, room and board, related psychological service expenses, travel and hotel costs for CK and Plaintiff, among other expenses permitted under IDEA. Further, Plaintiff seeks recovery of his reasonable attorneys fees and court costs in bringing this suit. Plaintiff further seeks a permanent injunction which would enjoin HCISD from maintaining and enforcing the illegal and unconstitutional policies described hereinabove.

**WHEREFORE, PREMISED CONSIDERED**, Plaintiff respectfully requests that HCISD be cited to appear and answer herein, and after notice and hearing, that Plaintiff be granted a preliminary injunction against HCISD as requested hereinabove, and that after final trial hereof, that the Plaintiff be granted a declaratory judgment and permanent injunctions against HCISD as requested hereinabove, and that after final trial hereof, that the Plaintiff be granted judgment of from HCISD in an amount in excess of the minimum jurisdictional limits of this Court representing the

costs and expenses of CK's placement in a residential special education facility as requested hereinabove, that Plaintiff and CK be awarded actual damages, punitive damages, relating to the privacy rights violations described hereinabove, that Plaintiff be awarded his reasonable attorneys fees as requested hereinabove, that Plaintiff be awarded his costs of court, and pre-judgment and post judgment interest at the maximum legal rate, and that the Court grant to the Plaintiff such other and further relief, special or general, legal or equitable, as Plaintiff may show himself and CK justly entitled to receive.

Respectfully submitted,

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**
312 E. Van Buren
P. O. Box 2878
Harlingen, Texas 78550
Tel. (956) 425-2000
Fax No. (956) 421-4258

BY: William Kimball
William Kimball
State Bar No. 11418700
Federal ID No. 6159

PRO SE AND AS ATTORNEY FOR CK

16

STATE OF TEXAS                    §
                                 §
COUNTY OF CAMERON                §

## **VERIFICATION**

**BEFORE ME**, the undersigned Notary Public, personally appeared William Kimball, who under oath deposed and stated as follows:

"My name is William Kimball and I am over the age of 18 years and I am competent to testify to the facts stated herein. I am a licensed attorney in the State of Texas and I have been practicing law in Cameron County, Texas since 1984. I have read the above and foregoing pleading and each and every fact set forth therein is true and correct and within my personal knowledge except where it is stated that facts are based upon Plaintiff's information and belief. Facts stated based upon information and belief are my conclusions based upon information known to me.

_____
William Kimball

SIGNED AND SWORE TO BEFORE ME, under oath on this __9__ day of November, 2000.

Donna R. Stokes
Notary Public, State of Texas
My Commission Expires
JULY 27, 2002

_____
Notary Public in and for the State of Texas

My Commission expires on ___July 27, 2002___.

17

**WILLIAM KIMBALL**
425 Palm Valley Circle
Harlingen, Texas  78552
(956) 364-0691

May 25, 2000

Jolaine Lanehart
Harlingen Consolidated ISD                    Fax 427-3589 and Regular Mail
1409 E. Harrison
Harlingen, Texas

RE: CHRISTOPHER KIMBALL, DOB 12/19/89

Dear Ms. Lanehart:

This letter is to follow up my verbal conversation with you last week via telephone.

You informed me that the school district's attorneys picked Dr. Oakland to do an independent evaluation of Christopher.  It is obvious to me that Dr. Oakland was hired as a testifying expert and not really for an objective evaluation.  Accordingly, I am withdrawing my consent to have Christopher evaluated by the school district.

When I signed the consent, I was under the impression that it was for the school's counselor or a local psychologist to perform an independent study.  I feel the district has made up its mind by hiring legal counsel and having the legal counsel now hire a professional expert witness.

Dr. Joseph Biederman was hired by me because I wanted the best doctor in the world for Chris.  Dr. Biederman is world renowned in the field of child psychiatry and psychopharmacology.  He is well published and leads numerous research projects for Harvard Medical School on child bipolar disorder, ADHD, and learning disabilities related to these disorders.  I hired Dr. Biederman because he could and has helped Chris. I did not know that Dr. Biederman (and Dr. Braaten) from Harvard would strongly recommend a special school for Chris when I hired them.   All I know is that they have been correct in every recommendation made so far.

Dr. Oakland was apparently hired to testify and his opinions are probably a foregone conclusion that Chris does not need a special school.  Unfortunately, attorneys can call expert referral services that will  find for a fee experts on just about every topic that are friendly to the attorney's cause.  I asked for a copy of Dr. Oakland's resume from you and I have not received the same.  I also asked for a written explanation as to how the district concluded that Dr. Oakland from Gainesville, Florida, is the best doctor for Christopher. I have not received any response.  Accordingly, I have no choice but to withdraw my consent.

If you have any questions, please call me.  I am willing to talk to the district's attorney if he or she wishes to talk to me.  In any case, I wish to proceed with the ARD meeting.  Please call me to schedule the same.

Yours very truly,

William Kimball

cc: Mrs. Linda Krabill
    Mr. Rocky Parkert



EXHIBIT
A

000087

# KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.

SKAGGS & KOPPEL BUILDING
312 EAST VAN BUREN AVENUE
POST OFFICE BOX 2878
HARLINGEN, TEXAS 78551

TELEPHONE: (956) 425-2000
FACSIMILE: (956) 421-4298
Email: wfkimball@nakco.com

LINE M. KOPPEL
CHAEL R. EZELL*
T L. JACKSON, P.C.
IAM F. KIMBALL

ANDRO J. GARCIA

## FACSIMILE TRANSMISSION COVER SHEET

| DATE : 5-25-00 | TIME : 11:14 am |
|---|---|
| TO : Jolaine Laneheart | FAX #: 427-3589 |
| FROM: William Kimball | |
| RE : Christopher Kimball | |

Original will NOT follow __/__ Original will follow via: __/__ Regular Mail __ Certified Mail
__ Overnight Delivery __ Messenger

CONFIDENTIALITY NOTICE
... IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED AND ... OR WHICH CONSTITUTES WORK PRODUCT AND IS EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE ... RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ... DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE ... Y US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

AL NUMBER OF PAGES, INCLUDING COVER PAGE: 2
do not receive all the pages or if they are illegible, please call the operator at (956) 425-2000.

Message/Special Instructions:

000088

*Board Certified Residential Real Estate Law, Commercial Real Estate Law, Texas Board of Legal Specialization

```
HP LaserJet 3100              |    ND CONFIRMATION REPORT for
Printer/Fax/Copier/Scanner   |    Koppel, Ezell, Jackson, & Kimba
                             |    KOPPEL, EZELL, ET AL
                             |    May-25-00  11:15AM
```

| Job | Start Time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|---|---|---|---|---|---|---|---|
| 423 | 5/25 11:15AM | 0'42" | 956 427 3589 | Send............ | 2/ 2 | EC144 | Completed..................................... |

Total    0'42"    Pages Sent: 2    Pages Printed: 0

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**

FACSIMILE TRANSMISSION COVER SHEET

DATE: 5-25-00    TIME: 11:11 am
TO: Jalaine Lovenner    FAX #: 427-3519
FROM: William Kimball
RE: Christopher Kimball

TOTAL NUMBER OF PAGES, INCLUDING COVER PAGE: 2

000089

(4)
(956)
-421-
4,258

## Thomas Oakland Ph.D.
### Psychologist

1921 SW 8th Drive
Gainesville, Fl 32601-8405
(352) 376 8396 telephone and fax

I was asked by the Harlingen Consolidated ISD to provide an on-site program review and consultation in reference to the program being provided to Chris Kimbell, a ten year old student attending the Harlingen Consolidated ISD. I was requested to provide input and, if warranted, recommendations prior to the forthcoming ARD meeting concerning two issues: a need for the district to conduct an assessment that addresses Chris' academic and nonacademic needs and whether program changes are needed.

To those ends I conducted a comprehensive review of available school and medical records, observed Chris' ability to function in various settings, reviewed the behavioral intervention strategies in place for him, and interviewed staff and the school's physical resources on May 26th.

I met with the following staff during my visit:
Zaida Cann (Chris' self-contained classroom teacher)
Marlene Carper (assessment specialist)
Patricia Hofheinz (Chris' mainstream teacher)
Linda Krabill (principal of Treasure Hills Elementary School)
Jolaine Lanchart (director of special education)
Rebecca Montemayor (physical education teacher)
Jason (Rocky) Parkert (Chris' case manager and a self-contained classroom teacher)

I observed Chris in three settings: his self-contained classroom, his mainstream classroom, and during physical education. The first two settings provided opportunities to observe his behaviors in structured educational environments, and the third setting provided opportunities to observe his behaviors in an unstructured educational environment.

### Brief Educational History
Chris was referred for special education services in 1995. He was five years old and attending Kindergarten. The majority of his behaviors that prompted concerns at that time and during his early elementary years focused on inadequate attention and concentration, speech and language-related impairments, and low achievement in math and reading. He was found eligible for special education services in 1995 and has been receiving special education services since first grade. Diagnoses have included Learning Disabled, Other Health Impaired (OHI, given his ADHD qualities), and Emotional Disturbance (ED). Related services included those to address speech and occupational therapy needs.

An evaluation conducted in the spring of 1998 found Chris' development in the following areas to be below average: mental abilities, adaptive behaviors, receptive language skills, fine motor development, and achievement in reading and math. In contrast, his expressive language skills together with emotional and social behaviors at home and school were within the normal range.

### Self-contained Educational Setting
Chris receives his educational program in a self-contained class during much of the morning. He qualifies for these services given his dual diagnosis of OHI and ED. His two teachers, Mr. Parkert and Ms. Cann, work together as a team in providing services to the students in their somewhat large and well-equipped classroom. They 15 pupils; thus, there

1

000124

EXHIBIT
B

CSVPDF — www.fastio.com

the ratio between pupils and teachers is 7 1/2 to 1. Many students are out of the classroom for varying degrees of time during the school day. Four students, including Chris, were in class during my observation. Mr. Parkart and Ms. Casu are familiar with Chris' IEP, are conscientious in its implementation, and request needed resources when they are unavailable.

**Treasure Hills Elementary School**
Treasure Hills Elementary School has a reputation in the community for providing excellent educational services. Teacher and parent expectations are high, achievement levels generally are high, and parent involvement is strong. The principal, Linda Krabill, is supportive of special education services within her building. She also reports considerable support for these services from other faculty. Chris' teachers are academically and professionally prepared. All have at least a bachelor's degree, are certified in those areas in which they teach, and are experienced teachers.

Ms. Krabill reports Chris rarely has demonstrated a lack of self-discipline that warranted his being referred to her office. She reported on a recent school-sponsored day trip Chris and others took to Padre Island. Chris displayed excellent behaviors, consistent with those displayed by his mainstream peers.

**Education in Mainstream Settings**
Chris' physical education program occurs in a mainstream setting. His teacher, Ms. Montemayor, reports Chris displays no behavior problems in this unstructured setting. He blends in well with other students, is not inclined to initiate interactions with other students in the physical education class, and befriends mainly those in his class.

I also observed Chris in Ms. Hofheinz's classroom, a mainstream fourth grade setting in which Chris and other students receive instruction in science and social studies. Ms. Hofheinz describes Chris as being calm, easy going, interested in these subjects, generally not off task yet on occasion needing redirection and monitoring (similar to the needs of many fourth grade students in regular education). I observed Chris completing a lesson that required him to fill out a worksheet. He dictated his answers to another student who recorded his answers on the worksheet.

Classroom modifications include the following: Chris receives less complex questions and shorter assignments, is provided more time to complete assignments, is praised more frequently, and, as noted above, receives writing assistance from peers.

**Chris' Classroom Behaviors**
Chris generally is well behaved throughout the school day. He does not display behaviors at school that pose a problem to his safety or that of others. He never has physically confronted his teachers or peers. On one occasion, when frustrated, he picked up a chair. On another occasion he grasped a pencil in his fist in a knife-like manner. Both events were brief and appeared during a period of frustration. However, these are the only two events of this nature reported by his teachers during the last few years. Chris' teachers report his behaviors do not adversely impact their ability to provide for his academic and non-academic needs through his current school program.

On occasion, Chris speaks somewhat loudly and bluntly, is not focused, does not initiate social interactions with peers, and has a tendency to whine when asked to perform some activities; however, this whining is short-lived. There are no current reports of him becoming upset upon losing in a competitive situation or displaying hallucinations. He displays some diminished attention prior to lunch, at which time he takes additional

**2**

000125

medication to help overcome his ADHD-related behaviors. However, these behaviors improve following his lunch and medication.

His behavioral plan emphasizes three qualities: Chris will 1) stay in his assigned place at all times, 2) will speak and answer in a respectful manner, and 3) will follow teacher's directions. Chris level of attainment of 1) is very high; he generally displays these behaviors consistently. Chris level of attainment of 2) is somewhat high yet has not reached a level where these behaviors are habitual. Chris level of attainment of 3), although generally present, is less frequent and remains an area requiring continued attention.

Chris often displays self-restraint and good judgment. I observed him during a self-initiated 10 minute time out period at the beginning of his physical education class. His teacher had imposed this time out period the previous day on him and other students due to their failure to return promptly from the bathroom. In addition, his principal and teachers report that, when confronted by older boys, Chris has the ability to avoid confrontation and walk away. He also has shown considerable maturity by requesting assistance from the school counselor as to ways he can avoid and deal with confrontation when it arises.

Chris' Achievement
Chris' achievement is below grade level. It is highest in math, lower in reading, and lowest in writing. His teachers have utilized various instructional and curricular strategies together with technology to help advance his abilities in these three academic areas.

Recommendations

As noted above, I was asked to address two issues: is there a need for the district to conduct an assessment that addresses Chris' academic and nonacademic needs and whether program changes are needed. These two issues are discussed below.

Chris' last formal assessment that included school-based data occurred in the winter of 1998. Additional clinically based assessments have been performed by professionals that do not consider school-based data. Thus, I recommend a formal reassessment that examines Chris' academic and nonacademic qualities, reviews any external reports and, as needed, integrates their relevant information for purposes of guiding Chris' education.

My review of Chris' educational and behavioral programs suggest they are well-established, well-staffed, and provide needed services and benefits. Thus, based on my review of all existing data and my observations, Chris appears to be functioning well and receiving academic and nonacademic benefits from his present program. Thus, there is no need to suggest significant changes to his current educational and behavioral plans.

However, I would encourage the next ARD committee to consider the following issues.

Chris' present behavior plan focuses on his remaining in his assigned place at all times. This behavior is well-established and may be removed from the current list of three, to be replaced by another important behavior that may require attention.

The school staff, especially those providing special education services, may benefit from the provision of additional consultation services from professionals with expertise in childhood psychopathology, especially in the implementation of behavioral and educational programs for children who exhibit low incidence disorders (e.g., pervasive developmental disorders, bipolar disorders).

3

000126

Consultation with specialists in assistive technology from Region One may assist Chris by identifying technology that may help him become more adept in keyboarding and using a word processor to complete class assignments in light of his chronic fine motor deficits.

The school staff expressed a desire to acquire additional information as to the most effective methods to help advance the academic development of students who display diminished mental abilities. The administration and staff should remain alert to the publication of empirically-based research that examines these issues. A recent book by H. Lee Swanson, Interventions for Students with Learning Disabilities (1999, Guilford Press), may be of some benefit to this end. However, current research indicates no one program can advance students' reading and math achievement to average levels when they display diminished mental abilities.

Chris, like other students, will be expected to obtain more information from textbooks and other reading materials as he advances through the grades. The provision of recorded textbooks may assist Chris to acquire information in ways that bypass his diminished sight word and work attack reading skills. One must recognize too that his diminished mental abilities and reading comprehension also attenuate his ability to understand grade-level text. Nevertheless, this and other efforts to transmit needed information to Chris should be attempted and their effects evaluated.

000127

DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRISTOPHER K. | § | BEFORE A SPECIAL EDUCATION |
| B/N/F WILLIAM K. | § | |
| | § | |
| V. | § | HEARING OFFICER |
| | § | |
| HARLINGEN CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | FOR THE STATE OF TEXAS |

## MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT

TO THE HONORABLE HEARING OFFICER:

COMES NOW the Respondent, Harlingen Consolidated Independent School District [hereinafter "HCISD"] and hereby moves the Hearing Officer to order a comprehensive individual evaluation of Christopher K., the child who is the subject of this hearing, and under the reported custody and control of his parent, William K., and in support of this motion shows:

I.

On May 5, 2000, HCISD requested consent from Christopher K.'s parents for a comprehensive individual assessment. [See Exhibit A] On May 7, 2000, such consent was given. [See Exhibit B] On May 25, 2000, his father withdrew his consent. [See Exhibit C] At an ARD held on June 6, 2000, Petitioner represented he intended to send Christopher K. out of state for an extended summer vacation with a relative. On June 15, 2000, HCISD again requested parental consent for a comprehensive individual assessment. [See Exhibit D] On June 26, 2000, the Texas Education Agency received Petitioner's request for a due process hearing. This hearing is currently set for July 25, 2000.

II.

Petitioner alleges that Respondent has denied Christopher K. a free and appropriate public education in violation of the Individuals with Disabilities Education Act (IDEA) in its refusal to place Christopher in a residential treatment facility per parental request at an ARD of June 6, 2000. Petitioner demands that Respondent rely solely on his private assessments to place this student residentially. Petitioner submitted reports from his own experts, Dr. Joseph Biederman and Dr.

DOCKET NO. 388-SE-600
*CHRISTOPHER K. B/N/F WILLIAM K. V. HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT*
MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT
PAGE 1



Ellen B. Braaten from Harvard Medical School, which provide insufficient educationally-based data and various inconsistent diagnoses. The HCISD has not only the right to conduct its own evaluation using the expert of its choice but also has a legitimate and genuine need for an evaluation which will provide a conclusive diagnosis and recommendations based on educational needs. Respondent has been unable to conduct its own evaluation due to the Petitioner's withdrawal of consent.

### III

The information sought to be elicited from the comprehensive individual assessment of Christopher K. is necessary to the Respondent's determination of an appropriate educational placement for Christopher K. in the least restrictive environment. Pursuant to the IDEA, State Board of Education Rules and <u>Andress v. Cleveland</u>, 64 F.3d. 176 (5th Cir.1995), the Respondent has a right to conduct its own evaluation of the Petitioner and there is no exception to this rule. Additionally, the school district cannot be compelled to accept independent assessments in lieu of completing its own re-evaluation. Moreover, in accordance with Texas Rules of Civil Procedure Rule 204.1, "[w]hen the mental or physical condition...of a party...is in controversy, the court in which the action is pending may issue an order for an examination." The parent's refusal to cooperate with the comprehensive individual assessment when the appropriate educational placement of the student is at issue is an attempt to prejudice the HCISD in this proceeding.

The IDEA requires the Respondent to re-evaluate each child at least once every three years to determine if the child continues to be a child with a disability. 34 CFR 300.536. The comprehensive individual assessment sought is a re-evaluation to fulfill this duty. Petitioner's lack of cooperation has impeded the Respondent's ability to fulfill its obligation under 34 CFR 300.536.

### IV.

Movant requests that the Hearing Officer make a finding that good cause exists for ordering the comprehensive individual assessment of Christopher K. and that the Hearing Officer order (1) Christopher K. and his father to appear for the examination and to cooperate with the HCISD in completing the assessment in every respect and (2) to abate these proceedings until such evaluation is completed.

WHEREFORE, Movant respectfully requests that the Hearing Officer grant Movant's Motion for a Comprehensive Individual Assessment of Christopher K., a person under the reported care, custody, or control of his parent, William K., on the terms and conditions requested and order Petitioner to cooperate with Respondent in all respects while conducting said evaluation.

DOCKET NO. 388-SE-600
*CHRISTOPHER K. B/N/F WILLIAM K. V. HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT*
MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT
PAGE 2

Respectfully submitted,

WALSH, ANDERSON, BROWN,
    SCHULZE & ALDRIDGE, P.C.
P.O. Box 2156
Austin, Texas 78768
TELEPHONE: (512) 454-6864
FACSIMILE: (512) 467-9318

BY: _____
    /DENISE H. ANDERSON
    State Bar No. 10095500

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2000, a true and copy of the above and foregoing

pleading has been sent to Lucius Bunton via facsimile number (512) 478-3910 and to Mr. William

Kimball via facsimile number 956-421-4258.

_____
DENISE H. ANDERSON

---

DOCKET NO. 388-SE-600
*CHRISTOPHER K. B/N/F WILLIAM K. V. HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT*
MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT
PAGE 3

**Docket No. 388-SE-600**

| | | |
|---|---|---|
| CHRISTOPHER K. | § | BEFORE A SPECIAL EDUCATION |
| B/N/F WILLIAM K. | § | |
| | § | |
| V. | § | HEARING OFFICER |
| | § | |
| HARLINGEN CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | FOR THE STATE OF TEXAS |

### PETITIONER'S RESPONSE TO RESPONDENT'S MOTION TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT AND MOTION TO STRIKE DR. OAKLAND

TO THE HONORABLE HEARING OFFICER:

NOW COMES, Petitioner, Christopher K. b/n/f William K., (hereinafter sometimes referred to as "Petitioner"), and files this, his response to the Motion filed by Respondent, Harlingen Consolidated Independent School District, (hereinafter sometimes referred to as "HCISD"), and support hereof, Petitioner would show as follows:

1. This case involves the request by Petitioner to pay for Christopher K's ("CK's") admission into a private residential school so that CK can overcome learning and mental handicaps which have prevented CK from learning to read and from achieving "meaningful" academic progress at Respondent's Treasure Hills Elementary School.[1]  CK currently reads at a first grade level even though he is now entering the Fifth Grade.  HCISD failure to properly address CK's mental and learning disabilities in violation of 20 U.S.C. §1400, et. seq., as amended in 1997, is the reason CK has poorly achieved in school and is the reason Petitioner makes this petition to the TEA.

---

[1]  See Board of Education v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed. 690 (1982) which required that educational benefits must be "meaningful" and not trivial or slight.  This standard has undoubtedly been greatly increased by the 1997 amendments by Congress to IDEA.

1



EXHIBIT
D

2.   Petitioner admits that on or about May 7, 2000, CK's parents initially gave approval to HCISD

to evaluate CK for the ARD meeting but deny that HCISD requested a "comprehensive individual

assessment." In fact, no where in the alleged consent form offered by the Respondent as an exhibit

to its motion, does it state that HCISD would conduct a "comprehensive individual assessment."

The June 5, 2000 letter specifically states: "the school district will need to conduct its own evaluation

of Chris' educational needs at this time." When CK's parents signed said form, they were under the

belief that HCISD was going to have one of its employees test CK's reading and grade level. CK's

parents were never informed that HCISD intended to hire a Florida psychologist to perform a

comprehensive psychological and educational test upon CK. Further, there were no details provided

in said consent form as to how and to what extent the examination would be conducted.

Accordingly, CK's parents never gave "informed consent."

3.   From May 5, 2000 until on or about May 18, 2000, CK's parents were not aware that HCISD

had actually hired the law firm of Walsh, Anderson, Brown, Schulze & Aldridge, P.C. of Austin,

Texas, for the purposes of denying Petitioner's request for placement of CK into a private residential

school for the Fall 2000. Until on or about May 18, 2000, CK's parents were also unaware that

HCISD's lawyers had hired Dr. Thomas Oakland, from Florida, to examine CK in an effort to gather

information for his expert testimony against CK and his parents.

4. While vacationing in California on or about Friday, May 19, 2000, CK's father had a telephone

conversation with HCISD's "Director of Special Education", Jolaine Lanehart, who for the first time

informed CK's father that HCISD had hired attorneys and that <u>HCISD's said attorneys hired Dr.</u>

<u>Thomas Oakland</u> to perform educational and psychological testing on CK. Being that HCISD had

hired lawyers when HCISD had given no verbal or written indication that it was contesting CK's

2

request for private residential school placement,[2] being that HCISD's lawyers hired Dr. Oakland and

not HCISD officials, and being that CK's father had no information about Dr. Oakland, CK's father

verbally withdrew his consent on or about May 19, 2000, (if in fact, there was ever any informed

consent). After returning from vacation in California, CK's father then delivered, via facsimile and

first class mail to HCISD, a letter dated May 25, 2000. Said letter was merely written confirmation

of the May 19, 2000 verbal statement to Ms. Lanehart by CK's father that CK's parents were not

agreeing to the examination of CK by Dr. Oakland. See **Exhibit "A"** attached hereto.

5. Despite being denied permission by CK's parents to examine CK, on <u>May 26, 2000</u>, HCISD had

Dr. Oakland fly to Harlingen, Texas and Dr. Oakland examined CK's private school and medical

records. Dr. Oakland also interviewed CK's teachers, counselor and principal, all in violation of

CK's privacy rights under law. A true and correct copy of Dr. Oakland's report is attached hereto

as **Exhibit "B"** and incorporated herein by reference for all purposes.

6. Petitioner maintains that HCISD's actions described above demonstrate that HCISD is not

attempting to obtain an objective second opinion from a qualified doctor. Instead, HCISD is

attempting to obtain access to CK so that its testifying "expert witness", (who has already given his

opinions in Exhibit "B" attached hereto), can claim that he has examined CK. Petitioner would not

have opposed an appropriate "independent" assessment of CK but HCISD has not offered any other

examiner other than Dr. Oakland. Petitioners would have agreed to a psychologist who Petitioners

believed was objective, fair, and competent. Dr. Oakland has demonstrated bias and dubious

methods of examination and ethics. If the Hearing Officer herein does in fact believe that a new

---

[2] In fact, HCISD's ARD committee had for a year and a half accepted Dr. Biederman's and Dr. Braaten's reports as true and correct and the same were utilized in previous ARD meetings.

3

comprehensive examination is necessary, then Petitioner would alternatively request that the Hearing Officer chose a truly unbiased, competent, and independent psychologist so that CK's future is not impacted by a professional "witness for hire."

7. By its actions described above, HCISD (and Dr. Oakland) have already violated Petitioner's and CK's right to privacy under the following state and federal authorities: Texas Occupation Code, §159.001 through §159.009 (Vernon 1999); Texas common law "invasion of privacy" tort law; **Billings v. Atkinson**, 489 S.W.2d 858, 859 (Tex. 1973) and **Household Credit Services, Inc. v. Driscol**, 989 S.W.2d 72, 84 (Tex.App.-El Paso 1998, no hist.); Federal Constitutional Rights to Privacy, as explained in **Tarrant County Hospital District v. Hughes**, 734 S.W.2d 675, 679 (Tex.App.-Fort Worth, no writ hist.), and the authorities cited therein; 20 U.S.C. §1232g(b)(1); 20 U.S.C. §1232g (2)(A); and 34 C.F.R. 99.30.

8. CK was given a comprehensive examination in April 1999 and in February 2000, by Ellen Braaten, Ph.D. of Massachusetts General Hospital, (assisted by Alysa Doyle, Ph.D. in April 1999, and by Gretchen Felopulos, Ph.D. in February 2000). Said standardized tests were ordered by CK's treating psychiatrist, Joseph Biederman, M.D. True and correct copies of Dr. Biederman's and Dr. Braaten's reports and resumes were filed simultaneously herewith by Petitioner for review by the Hearing Officer. These examinations and reports were made in the course and scope of Dr. Biederman's and Dr. Braaten's treatment of CK as CK's treating doctors. These reports were not made in the anticipation of litigation. Accordingly, Petitioner maintains that there is no need for an additional examination being that the testing is current, being that HCISD has failed to request or perform its legal obligations for reevaluations during the past year and a half, and being that Dr. Biederman and Dr. Braaten's reports have been accepted and used by HCISD in CK's IEP for the

4

past year and a half without contest or question by HCISD officials. HCISD officials have told CK's parents several times that they did in fact accept Dr. Biederman's and Dr. Braaten's reports as true and correct at previous ARD meetings and informally. HCISD is accordingly estopped at this point in time from challenging the validity and accuracy of said tests and test results.

9.  The reports of Dr. Braaten and Dr. Biederman do not contain "insufficient educationally based data" nor are there "variously inconsistent diagnoses," as alleged by HCISD. The records and opinions of Dr. Biederman and Dr. Braaten speak for themselves. Further, such records are consistent with prior psychological and educational testing Betty Lanier, Ph.D.(12-11-1998),[3] all part of the school record concerning CK. There is no need for further testing because the test results now in the possession of HCISD were done objectively and said conclusions have never been challenged by HCISD. In fact, the test results have been part of CK's school records and have been relied upon by HCISD in their failed attempts to overcome CK's learning disabilities.

10.  HCISD cites **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995) as its authority for requesting its own re-evaluation by its chosen examiner. **Andress** was decided upon pre-1997 facts and applies provisions of the Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. §1400, et. seq., prior to the Congressional sweeping revisions of IDEA effective June 4, 1997. Further, **Andress** was decided prior to the 1999 amendments to 34 C.F.R. 300, et. seq. Accordingly, **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995) is no longer valid law due to the overwhelming changes to IDEA.

---

[3] Dr. Susan Ander, CK's treating psychologist, requested that CK's parents have Dr. Lanier do an educational evaluation of CK in 1998 and CK's parents consented to do so at CK's father's expense. Dr. Ander arranged the scheduling of Dr. Lanier's evaluation.

CAMPDF - www.haxia.com

11. The 1997 amendments to IDEA has greatly expanded "findings" and "purposes" of IDEA. It no longer is merely a law to guarantee access to special education services. The 1997 IDEA now mandates effectiveness of special education by removing impediments to educational progress, particularly those resulting from society's preconceived notions of the limitations of the disabled. See e.g., 20 U.S.C. §1400(c)(1); 20 U.S.C. §1400(d)(4); and 103 Dick.L.Rev. 613, <u>Greater Expectations: How the 1997 IDEA Amendments Raise the Basic Floor of Opportunity for Children With Disabilities,</u> Tara L. Eyer (Spring 1999).   Also see President Bill Clinton's remarks at the signing of the bill into law, found at 1997 WL 10084718.

12. With the 1997 amendments to IDEA, Congress moved all provisions related to evaluation and reevaluation of children with disabilities to one place in the law, 20 U.S.C. §1414(a), (b), and (c). Section 1414 now combines procedural requirements of evaluations and reevaluations with the overall Congressional intent and purpose being that such evaluations and reevaluations be non-discriminatory and scientifically sound.  See 20 U.S.C.§1414(b)(2) and (3).  Section 1414 also requires that such testing be done <u>with parental consent</u> and that if the parents do not consent, then the school district is required to utilize the mediation and due process procedures of 20 U.S.C. §1415. See 20 U.S.C. §1414(c). Instead of following the Congressional mandates of Section 1414, (even though it had legal counsel at that time), and ignoring and violating CK's and CK's parents rights to privacy discussed above, HCISD still had Dr. Oakland travel to Harlingen, Texas from Florida on May 26, 2000 and HCISD intentionally and maliciously allowed Dr. Oakland to conduct an illegal examination of CK's medical and educational records as admitted by Dr. Oakland in his report, (See **Exhibit "B"** attached hereto), and allowed Dr. Oakland to make an unauthorized evaluation of CK, in violation of 20 U.S.C. §1414 (1997).

6

13. There is no requirement in the 1997 version of IDEA that a school district be allowed an independent evaluation by a psychologist or psychiatrist of its own choosing. In 1997, Congress chose not to insert such language despite the existence of the decision in **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995) and the authorities cited therein. Instead Congress worded Section 1414 of IDEA to lay out a procedures guaranteeing that reevaluations be non-discriminatory and technically sound. There is no mention in Sections 1414 or 1415 of any right of a school district to a reevaluation of a child using a psychologist or psychiatrist of its own choosing.   In fact, the provision relied upon so heavily by the Fifth Circuit Court of Appeals in **Andress v. Cleveland**, 64 F.3d 176 (5th Cir. 1995), (i.e., 34 C.F.R. §300.503), has been repealed and re-written by the 1999 amendments to 34 C.F.R. 300.1 through 300.756 (1999).

14. In any case, Dr. Oakland felt that he had enough data on May 26, 2000, to give his educational and psychological conclusions as evidenced by **Exhibit "B"** attached hereto. HCISD has not since May 26, 2000, identified any particular additional data needed nor has it identified exactly what it proposes to test or evaluate.   HCISD's motion on its face violates 20 U.S.C. §1414(a)(1)(C), 20 U.S.C. §1414(b)(1), and 20 U.S.C. §1415(b)(3) and (4) (1997) because HCISD has failed to disclose exactly what testing or evaluations it intends to perform, the testing methods, or any of the necessary details required for there to be an "informed consent." Section 1414(a)(1)(C)(I) requires parental "informed consent."

15. Based upon the facts and authorities discussed hereinabove, HCISD should be denied its request to have a new comprehensive examination of CK. It has had a year and a half to make such a request and has chose not to do so despite having copies of Dr. Biederman's and Dr. Braaten's reports in its possession. Further, for the past year and a half, HCISD has accepted and utilized Dr. Biederman's

7

CheCPDF - www.twsha.com

and Dr. Braaten's reports in making its decisions concerning CK. In any case, Dr. Oakland believed he had enough information when he wrongfully prepared his May 26, 2000 report.

16. Alternatively, if in fact, that the Honorable Hearing Examiner does determine that an additional evaluation of CK is appropriate, then Petitioner would request that such evaluation be done by an independent psychologist or educator agreed upon by the parties and the Hearing Examiner based upon the independence, neutrality, qualifications and experience of said individual.   This would satisfy the new Congressional mandates as set forth in 20 U.S.C.§1414 and §1415.

17. Additionally, Dr. Oakland should be disqualified to submit reports, testimony, and evidence in this case due to his wrongful and illegal acts described above.  To permit his participation in this case would create precedence for school districts in Texas to violate the procedural requirements of IDEA and it would reward and condone unethical and illegal acts which affect the future of mentally handicapped children in this state.

**WHEREFORE, PREMISED CONSIDERED**, Petitioner respectfully requests that Respondent's Motion be denied in all respects for the reasons set forth hereinabove, that Dr. Oakland be disqualified and stricken to testify herein for the reasons set forth herein, that in the alternative, if the Honorable Hearing Examiner does determine that an independent examination is appropriate, that a truly independent, unbiased, and qualified psychologist or educator be named to examine CK on specifically identified areas of concern with specifically identified modes of examination, that parental consent to the psychologist or educator be obtained and/or that the procedures of 20 U.S.C. §1414 be followed, and that the Honorable Hearing Examiner grant to Petitioner such other and further relief as Petitioner may show himself justly entitled to receive.

8

Respectfully submitted,

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**
312 E. Van Buren
P. O. Box 2878
Harlingen, Texas 78550
Tel. (956) 425-2000
Fax No. (956) 421-4258

BY: _____
    William Kimball
    State Bar No. 11418700

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was on this _10th_ day of July, 2000, sent via facsimile and mailed by certified mail, return receipt requested to: Ms. Denise H. Anderson, **Walsh, Anderson, Brown, Schulze & Aldridge, P.C.**, P.O. Box 2156, Austin, Texas.

_____
William Kimball

9

RECEIVED JUL 1 7 2000

DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRISTOPHER K., | § | BEFORE A SPECIAL EDUCATION |
| B/N/F WILLIAM K. | § | |
| | § | |
| VS. | § | HEARING OFFICER |
| | § | |
| HARLINGEN INDEPENDENT SCHOOL | § | |
| DISTRICT | § | FOR THE STATE OF TEXAS |

## ORDER GRANTING RESPONDENT'S MOTION
## TO COMPEL A COMPREHENSIVE INDIVIDUAL ASSESSMENT

On the 13th day of July, 2000, came on for consideration Respondent's Motion to Compel a Comprehensive Individual Assessment and Petitioner's response to the motion. After due consideration of the Motion and Petitioner's response, IT IS HEREBY ORDERED that Respondent's motion is GRANTED and that Christopher and his father are ordered to cooperate with Respondent in completing its assessment of Christopher. Respondent is entitled to conduct its own evaluation of Christopher. <u>Andress vs. Cleveland</u>, 64 Fed.3d 176 (5th Cir. 1995).

SIGNED this 13th day of July, 2000.



Lucius D. Bunton
Special Education Hearing Officer

**EXHIBIT**

**E**

## Docket No. 388-SE-600

| | | |
|---|---|---|
| **CHRISTOPHER K.** | § | **BEFORE A SPECIAL EDUCATION** |
| **B/N/F WILLIAM K.** | § | |
| | § | |
| **V.** | § | **HEARING OFFICER** |
| | § | |
| **HARLINGEN CONSOLIDATED** | § | |
| **INDEPENDENT SCHOOL DISTRICT** | § | **FOR THE STATE OF TEXAS** |

### PETITIONER'S MOTION FOR CLARIFICATION

TO THE HONORABLE HEARING OFFICER:

NOW COMES, Petitioner, Christopher K. b/n/f William K., (hereinafter sometimes referred to as "Petitioner"), and files this, his Motion for Clarification seeking clarification of the Order Granting Respondent's Motion to Compel a Comprehensive Individual Assessment, and support hereof, Petitioner would show as follows:

1. The Hearing Examiner granted Harlingen Independent School District's, (hereinafter sometimes referred to as "HCISD"), motion to Compel a Comprehensive Individual Assessment on or about July 13, 2000 citing **Andress v. Cleveland**, 64 F.3rd 176 (5th Cir. 1995).[1]

2. Without waiving Petitioner's objections to the said ruling, Petitioner seeks the following clarification of that ruling:

A. Do the parties have to agree upon the person who performs the examination or does the school district get to pick their own examiner?

B Will CK's parents and/or their doctors be permitted to be present?

_____

[1] Petitioner continues to maintain that said authority was effectively overruled by the 1997 revisions to 20 U.S.C. §1400, et. seq. 20 U.S.C. Sections 1414 and 1415 were completely rewritten by a bi-partisan Congress and required "informed consent" by the parents of the child for any reevaluation. See 103 Dick.L.Rev. 163, <u>Greater Expectations: How the 1997 IDEA Amendments Raise the Basic Floor of Opportunity for Children with Disabilities,</u> (Spring 1999).

1



EXHIBIT
F

C.   Will the parents of CK be permitted to videotape the examination in a non-intrusive manner? and

D.   Will it be disclosed to the Petitioner the methods and types of examination prior to the examination itself?

3.   Although the undersigned has not yet received any request for an examination by HCISD, CK would be available for examination beginning on August 8, 2000.

4.   Petitioner maintains that the "parental informed consent" provisions of 20 U.S.C. §1414 requires clarification of the Order and that if an agreement as to these questions cannot be reached, that 20 U.S.C. §1415 requires mediation on the matter.  Petitioner merely wishes to assert Petitioner's rights under Sections 1414 and 1415.

5.   Petitioner does not object to a fair and objective evaluation of CK, but HCISD has in the past hired an expert (Dr. Oakland) who has already made up his mind as to the needs and abilities of CK without the necessity of a "comprehensive examination."[2]  His opinions are a foregone conclusion. CK's entire future and his ability to fit into society may depend upon the decision of whether CK receives the requested services of residential treatment and schooling.  Accordingly, Petitioner requests clarification of the previous Order to assure fairness and objectivity.

**WHEREFORE, PREMISED CONSIDERED**, Petitioner respectfully requests that this motion be heard as soon as possible by telephonic conference, and that the Honorable Hearing Examiner clarify the previous Order as requested above and grant to the Petitioner such other and further relief as Petitioner may show himself justly entitled to receive.

---

[2] In fact, HCISD has in the past disclosed to Dr. Oakland CK's medical and educational records in violation of various state and federal statutes creating a civil cause of action.

2

Respectfully submitted,

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**
312 E. Van Buren
P. O. Box 2878
Harlingen, Texas 78550
Tel. (956) 425-2000
Fax No. (956) 421-4258

BY: _____
     William Kimball
     State Bar No. 11418700

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the above and foregoing instrument was on this
31st day of July, 2000, sent via facsimile and mailed by certified mail, return receipt requested to:
Ms. Denise H. Anderson, **Walsh, Anderson, Brown, Schulze & Aldridge, P.C.,** P.O. Box 2156,
Austin, Texas.

_____
William Kimball

3

## DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRIS K., b/n/f WILLIAM K., | § | BEFORE A SPECIAL EDUCATION |
| Petitioner, | § | |
| | § | |
| V. | § | HEARING OFFICER |
| | § | |
| HARLINGEN CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |
| Respondent. | § | FOR THE STATE OF TEXAS |

### <u>RESPONDENT'S RESPONSE TO MOTION FOR CLARIFICATION</u>

TO THE HONORABLE HEARING OFFICER:

COMES NOW, Harlingen Consolidated Independent School District, Respondent herein, and files its response to Petitioner's Motion for Clarification of the Order Granting Respondent's Motion to Compel a Comprehensive Individual Assessment and for cause shows as follows:

1.  On July 13, 2000, the Hearing Officer granted Respondent's Motion to Compel a Comprehensive Individual Assessment.

2.  On July 26, 2000, Respondent requested Petitioner advise the District of Chris K.'s availability and included the Notice of Assessment which detailed the specific areas identified for assessment.

3.  On July 31, Respondent received Petitioner's Motion for Clarification and responds to the issues raised therein as follows:

    A.  Under <u>Andress v. Cleveland ISD</u>, 64 F.3d 176 (5th Cir. 1995), the District has the right to choose its own examiner.

    B.  Parents or their doctors presence in the examination is not a right afforded to parents under IDEA or 20 U.S.C. §§1414 or1415.

    C.  Videotaping of the examination in a non-intrusive manner is not a right afforded to parents under IDEA or 20 U.S.C. §§1414 or 1415.

    D.  The methods and types of examination have been disclosed in the Notice of Assessment sent to Petitioner on July 26, 2000.

Docket No. 388-SE-600
*Chris K., b/n/f William K. v. Harlingen Cons. Independent School District*
Respondent's Response to Motion for Clarification
Page 1 of 3



EXHIBIT
G

CIMPDF - www.texta.com

4.  Responding to Petitioner's argument concerning "informed consent", the Hearing Officer's Order Granting Respondent's Motion to Compel ... overrides the requirement for parental consent and allows the Respondent to proceed with its assessment. In addition, Petitioner misrepresents the language in 20 U.S.C. §1415 as requiring the parties to mediate. In fact, §1415(b)(5) states that the procedures required shall include "an opportunity for mediation ..." and (c)(2)(A)(i) states that the procedures shall ensure the mediation process is "voluntary on the part of the parties."

5.  With reference to Petitioner's footnote #2, Respondent has not violated any state or federal statutes by disclosing existing records to its own consulting psychologist.

WHEREFORE, PREMISES CONSIDERED, Respondent prays that the Hearing Officer deny the matters requested by Petitioner in his Motion for Clarification.

Respectfully submitted,

WALSH, ANDERSON, BROWN,
    SCHULZE & ALDRIDGE, P.C.
P.O. Box 2156
Austin, Texas 78768
TELEPHONE: (512) 454-6864
FACSIMILE: (512) 467-9318

BY: _____
       DENISE H. ANDERSON
       State Bar No. 10095500

ATTORNEYS FOR RESPONDENT

---

Docket No. 388-SE-600
*Chris K., b/n/f William K. v. Harlingen Cons. Independent School District*
Respondent's Response to Motion for Clarification
Page 2 of 3

## CERTIFICATE OF SERVICE

I hereby certify that on the 31[h] day of July, 2000, a true and copy of the above and foregoing

pleading has been sent to Lucius Bunton via facsimile number (512) 478-3910, Mr. William Kimball

via facsimile number 956-421-4258, and via certified mail P 960 136 168 to Jill Johnson 2817 Quail

Run, Apt. A, Harlingen, Texas 78550.

DENISE H. ANDERSON

Docket No. 388-SE-600
*Chris K., b/n/f William K. v. Harlingen Cons. Independent School District*
Respondent's Response to Motion for Clarification
Page 3 of 3

# WALSH, ANDERSON, BROWN, SCHULZE & ALDRIDGE, P.C.

### ATTORNEYS AT LAW

Jim Walsh
Denise Howell Anderson
Judy Brown
Eric W. Schulze†
John S. Aldridge
Paul W. Hunn
Elena M. Gallegos
Nan P. Hundere
Joe B. Hairston
Dorcas Ann Green
Therold I. Farmer
Robert Russo
Paige C. Kyle
Oscar G. Treviño
Bridget R. Robinson*
Mark C. Goulet
Susan B. Graham

6300 La Calma Suite 200 Austin, Texas 78752
Austin Mailing Address:
P.O. Box 2156 Austin, Texas 78768
(512) 454-6864   FAX (512) 467-9318

San Antonio Office:
P.O. Box 460606, San Antonio, Texas 78246-0606
(210) 979-6633 FAX (210) 979-7024

Dallas/Fort Worth Office:
P.O. Box 168046, Irving, Texas 75016-8046
(214) 574-8800 FAX (214) 574-8901

Nona C. Matthews
Denise Hays
Paula Maddox Roalson
Daniel M. "Matt" Burns ‡
Terry L. Kyle
JoAnn S. Wright
Liza M. Crow
Stacy Tuer Castillo
Joe A. De Los Santos
George E. Grimes, Jr.
Yvomilda G. Muñiz
Marquette M. Maresh
Michael J. DePonte

*Texas Board of Legal Specialization
†Board Certified Civil Appellate Law
*Board Certified Civil Trial Law
‡Board Certified Personal Injury Trial Law

August 1, 2000

Mr. William Kimball
Koppel, Ezell, Jackson & Kimball, L.L.P.         VIA FACSIMILE (956)421-4258
312 East Van Buren
Harlingen, Texas 78551

RE: *Chris K. v. Harlingen CISD*; Docket No. 388-SE-600

Dear Mr. Kimball:

Responding to your letter dated July 31, 2000, concerning the issues you raised in your Motion for Clarification, the District's position as to those matters is set out in Respondent's Response to Petitioner's Motion for Clarification, transmitted to you yesterday by FAX.

Thank you for advising as to the dates of Chris' availability for testing. We would like to schedule the District's CIA for August 14 and 15, 2000. Please have Chris at Treasure Hills Elementary at 9 a.m. on August 14th and 15th. You have been provided specific notice of the areas of testing and types of instruments in the form sent twice to you, first by Ms. Lanehart and most recently by myself on July 26, 2000. We will notify you should any additional time be needed beyond those two days.

As to the deposition of Dr. Braaten, my availability during the week of August 21 to 25, is as follows: August 21ˢᵗ (entire day), and August 25ᵗʰ (9 to 12 noon).

I question the need to take the depositions of HCISD school personnel, as they are available conference you agreed there was no need to take their depositions.



August 1, 2000
Page 2


Finally, with respect to your suggestion that the parties proceed to mediation concerning the District's CIA, the District declines to subject its evaluation to the mediation process. The Hearing Officer's Order follows 5th Circuit authority as to the District's right to conduct its own assessment for a child it is obliged to serve. Additionally, should you disagree with the evaluator used by the District, or with any of the instruments selected by our evaluator, your remedy is to challenge the appropriateness of our evaluation and to seek an independent evaluation at public expense.

Sincerely,

Denise H. Anderson

cc:    Lucius D. Bunton, VIA FAX: 512-478-3910

       Jill Johnson, VIA Certified Mail - P 960-136-201
       2817 Quail Run, Apt. A.
       Harlingen, TX 78550

       Jolaine Lanehart, VIA FAX (956) 427-3456

DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRISTOPHER K., | § | BEFORE A SPECIAL EDUCATION |
| B/N/F WILLIAM K. | § | |
| | § | |
| VS. | § | HEARING OFFICER |
| | § | |
| HARLINGEN INDEPENDENT SCHOOL | § | |
| DISTRICT | § | FOR THE STATE OF TEXAS |

## ORDER DENYING PETITIONER'S MOTION FOR CLARIFICATION

On the 9th day of August, 2000, came on for consideration Petitioner's motion to clarify

an order of July 13, 2000, granting Respondent's motion to compel a comprehensive assessment.

After due consideration of the motion and Respondent's response to the motion, IT IS HEREBY

ORDERED that Petitioner's motion for clarification is DENIED.

SIGNED this _9th_ day of August, 2000.

_____
Lucius D. Bunton
Special Education Hearing Officer


EXHIBIT "I"

LB95025P

RECEIVED OCT 1 0 2000

## DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRISTOPHER K. b/n/f WILLIAM K. | § | BEFORE A SPECIAL EDUCATION |
| | § | |
| V. | § | HEARING OFFICER FOR THE |
| | § | |
| HARLINGEN | § | |
| INDEPENDENT SCHOOL DISTRICT | § | STATE OF TEXAS |

### <u>ORDER</u>

On August 21, 2000, I heard the arguments of the counsel for the parties on certain issues raised during the prosecution of this case. The parties supplemented their arguments with briefs filed in support of each positive. This order rules on the issues presented to the Hearing Officer.

Respondent has filed a Motion to Dismiss or, in the Alternative, a Motion to Stay the proceeding based on the refusal of Petitioner's next friend to consent to an evaluation to be performed by an expert for the District. Respondent cites the prior ruling by former Hearing Officer Lucious Bunton which denied identical relief. Respondent asserts that *res judicata* precludes the Petitioner from reurging his position regarding the right to attend or video tape Respondent's evaluation. I believe that Hearing Officer Bunton's ruling on this matter to be interlocutory and I do not concur that the Petitioner is prohibited from raising the objections to the District's evaluation.

Substantitively, Respondent cites *Andress v. Cleveland* as authority for its unconditional right to evaluate Christopher. Respondent also directs the Hearing Officer to the court authority which appears to support the unilateral right of a school district to choose and perform an evaluation.

Petitioner's objections to the evaluation are rooted in his concern that District's expert may be biased and may not perform a sound evaluation. He has proposed various methods to attend, view surreptitiously, or otherwise, review a recording of the evaluation. He also has contended that *Andress* has been "effectively overruled" by Congressional amendments to IDEA and which emphasize expanded access to educational results. Petitioner insists that the District's refusal to make the test results/recording available to parents is without support.

In the main, I feel compelled to rule with the District on this issue. I am not inclined to conclude that a decision of the Fifth Circuit has been "overruled" without clearer, more objective support for such a conclusion. I do believe that the District has right to perform an evaluation of a student using the expert of its own choosing and in a manner that is unfettered by the participation/interference of a party other than the evaluator. The remedy for the parent is the IEE to contradict the results of the District's evaluation. I am not convinced, however, that the District is entitled to perform an evaluation outside of the presence of the parent in a manner that does *not* interfere with the evaluation. I am even less impressed with the District's argument that the Petitioner is not even entitled to a discreetly recorded videotape of the evaluation. I have not seen persuasive authority for the proposition that the District is entitled to an evaluation that is <u>confidential</u> to the District, save for the evaluating expert's report.



For this reason, I am inclined to stay, rather than dismiss this proceeding until the District has been allowed to perform its evaluation. The issue of whether the evaluation can be viewed or recorded without contamination of the results is a fact issue that is subject to move comprehensive analysis than has, thus far, been provided. Without the evaluation, however, the District should not be required to prosecute this case further.

Functionally, it is not necessary for me to rule on the remaining disputed issues. However, pending the resolution of the conflict surrounding Christopher's evaluation, the parties are entitled to direction on the remaining issues.

Respondent has asked that a deposition of Petitioner's expert witnesses Dr. Joseph Biedermand, M.D. and Ellen Braaton, Ph.D., both of Boston, Massachusetts, be restricted to a video deposition only. I do not find Respondent's arguments in support of this request convincing. I am more persuaded by Petitioner's arguments regarding the basic due process right of a litigant to obtain the testimony of an expert. While the issue of the use of the deposition is certainly not ripe for a ruling, I was also not convinced by Respondent's assertions that the depositions, once obtained, cannot be substituted for their live testimony at the hearing. I see nothing in the law that would dictate that the testimony of a witness who is made available for cross examination is otherwise inadmissable during an evidentiary hearing.

Finally, I am aware that the Petitioner has sought to litigate certain issues in this case in federal court. This is certainly Petitioner's right. However, unless I am specifically enjoined by an order of a competent court with controlling authority, I do not intend to abate my consideration of this due process hearing. I will continue to issue rulings on matters brought before me, such as the motions that the subject of this order.

Accordingly, it is hereby ORDERED that all further proceeding in this case, except for further motions directed to the Hearing Officer, are stayed until October 26, 2000. Disclosure in this case need not be served on October 18, 2000. On October 26, 2000, the Hearing Officer shall convene a prehearing conference at 10:00 a.m. for the purpose of hearing arguments from the parties on whether the case should be dismissed.

ISSUED in Austin, Texas this 6th day of October, 2000.

Stephen P. Webb
Special Education Hearing Officer

SERVICE LIST:
Christopher K.:
William Kimball
Koppel, Ezell, Jackson & Kimball
 Skaggs & Koppel Building
312 East Van Buren
P.O. Box 2878
Harlingen, Texas 78551

Harlingen ISD:
Denise Anderson
Walsh, Anderson, Brown, Schulze
 & Aldridge, P. C.
P.O. Box 2156
Austin, Texas 78768

### Docket No. 388-SE-600

| | | |
|---|---|---|
| **CHRISTOPHER K.** | § | **BEFORE A SPECIAL EDUCATION** |
| **B/N/F WILLIAM K.** | § | |
| | § | |
| **V.** | § | **HEARING OFFICER** |
| | § | |
| **HARLINGEN CONSOLIDATED** | § | |
| **INDEPENDENT SCHOOL DISTRICT** | § | **FOR THE STATE OF TEXAS** |

## PETITIONER'S MOTION TO RECONSIDER PETITIONER'S PREVIOUS MOTION FOR CLARIFICATION

TO THE HONORABLE HEARING OFFICER:

NOW COMES, Petitioner, Christopher K. b/n/f William K., (hereinafter sometimes referred to as "Petitioner"), and files this, his Motion to Reconsider Petitioner's Previous Motion for Clarification seeking clarification of the Order Granting Respondent's Motion to Compel a Comprehensive Individual Assessment, and support hereof, Petitioner would show as follows:

1.  On or about July 13, 2000, (over the objections of Petitioner), the previous Hearing Examiner herein, Mr. Lucius Bunton, granted Harlingen Independent School District's, (hereinafter sometimes referred to as "HCISD"), Motion to Compel a Comprehensive Individual Assessment citing as the sole authority, **Andress v. Cleveland**, 64 F.3rd 176 (5ᵗʰ Cir. 1995).[1]  Petitioner has at all times material herein, argued that Mr. Bunton's said Order violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq. (1997) (specifically Sections 1414 and 1415 of said Act), and violated Petitioner's and CK's rights guaranteed under the United States Constitution and the Texas Constitution.  See also, **Holland v. District of Columbia**, 71 F.3d 417 (D.C. Cir.

---

[1]  Petitioner continues to maintain that said authority was effectively overruled by the 1997 revisions to 20 U.S.C. §1400, et. seq.  20 U.S.C. Sections 1414 and 1415 were completely rewritten by a bi-partisan Congress and required "informed consent" by the parents of the child for any reevaluation. See 103 Dick.L.Rev. 163, Greater Expectations: How the 1997 IDEA Amendments Raise the Basic Floor of Opportunity for Children with Disabilities, (Spring 1999).

1



EXHIBIT
"K"

1995), in which the United States Court of Appeals for the District of Columbia ruled that a school district's right to reevaluate a child is not absolute and that a district must afford the parents basic rights to information even under the pre-1997 IDEA Act.

2. The Petitioner then filed in this administrative hearing a Motion for Clarification on or about July 31, 2000.

3. The Hearing Officer at that time, Mr. Lucius Bunton, entered an Order denying Petitioner's Motion for Clarification on or about August 9, 2000.

4. On August 14, 2000, Petitioner then filed a federal lawsuit in the United States District Court for the Southern District of Texas seeking, in part, a clarification of Petitioner's rights under federal law and under the Texas and federal constitutions as raised in this administrative proceeding in Petitioner's Motion for Clarification.

5. Shortly after Petitioner filed the said federal lawsuit, Mr. Lucius Bunton resigned as hearing officer. Mr. Stephen Webb is the current hearing officer for the Texas Education Agency.

6. Mr. Webb issued an Order dated October 6, 2000, wherein he stated that the previous rulings by Mr. Bunton concerning Petitioner's and CK's rights in regard to a reevaluation of CK by HCISD, were "interlocutory" rulings. An interlocutory ruling is by definition not final and may be withdrawn, changed or modified at any time. Accordingly, Petitioner reasserts and asks for reconsideration of Petitioner's Motion for Clarification.

7. In this regard, and without waiving Petitioner's previous objections to the rulings of Mr. Bunton, Petitioner seeks the following clarification of Petitioner's and CK's rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq. (1997) and under the United States Constitution and the Texas Constitution, in regards to any future reevaluation of CK by HCISD:

2

A. Do CK's parents have to agree upon the person who performs the examination or does HCISD get to pick their own examiner over the objections of CK's parents?

B   Will CK's treating doctors be permitted to be present at any reevaluation in a non-intrusive manner, (i.e. via video monitor, video taping, and/or behind a one-way glass)?

C.   Will the parents of CK be permitted to be present at any reevaluation (i.e. via video monitor or behind a one-way glass), during said reevaluation by HCISD and/or will CK's parents be permitted to videotape the examination in a non-intrusive manner?   and

D.   Will it be disclosed to the Petitioner in detail the methods and types of examination prior to the examination itself?   In this regard, does Petitioner have the right to be advised as to the test objectives and methods of examination prior to the examination itself?

8.   Petitioner maintains that the "parental informed consent" provisions of 20 U.S.C. §1414 requires clarification of Petitioner's and CK's rights.   Petitioner objects to Dr. Oakland being the evaluator due to his bias already shown in this case.   Petitioner argues that the new IDEA requires consent by the parents even in the selection of the evaluator.   The proper remedy for disagreement is "mediation."   See   Sections 1414 and 1415 of IDEA as amended by Congress in 1997.

9. Petitioner does not object to a fair and objective evaluation of CK, but HCISD has in the past hired an expert (Dr. Oakland) who has already made up his mind as to the needs and abilities of CK without the necessity of a "comprehensive examination."   His opinions are a foregone conclusion. CK's entire future and his ability to function in society may depend upon the decision of whether CK receives the requested services of residential treatment and schooling.   Accordingly, Petitioner requests clarification of the previous Order compelling Petitioner to submit CK to reevaluation by HCISD and the Order denying Petitioner's Motion for Clarification.   Petitioner merely wishes to achieve fairness and objectivity in the reevaluation in reasserting this motion.

3

**WHEREFORE, PREMISED CONSIDERED**, Petitioner respectfully requests that this motion be heard as soon as possible by telephonic conference, and that after hearing hereof, that the Honorable Hearing Examiner withdraw, modify, amend and/or clarify the previous Orders of Mr. Lucius Bunton as requested hereinabove and grant to the Petitioner such other and further relief as Petitioner may show himself justly entitled to receive.

Respectfully submitted,

**KOPPEL, EZELL, JACKSON & KIMBALL, L.L.P.**
312 E. Van Buren
P. 0. Box 2878
Harlingen, Texas 78550
Tel. (956) 425-2000
Fax No. (956) 421-4258

BY: _____
William Kimball
State Bar No. 11418700

ATTORNEYS FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was on this 12th day of October, 2000, sent via facsimile and mailed by first class mail to: Ms. Denise H. Anderson, **Walsh, Anderson, Brown, Schulze & Aldridge, P.C.**, P.O. Box 2156, Austin, Texas.

_____
William Kimball

4

DOCKET NO. 388-SE-600

| | | |
|---|---|---|
| CHRISTOPHER K. b/n/f WILLIAM K. | § | BEFORE A SPECIAL EDUCATION |
| | § | |
| V. | § | HEARING OFFICER FOR THE |
| | § | |
| HARLINGEN | § | |
| INDEPENDENT SCHOOL DISTRICT | § | STATE OF TEXAS |

## DISMISSAL ORDER

On August 9, 2000, Respondent filed its Motion to Dismiss or, in the Alternative, Motion to Stay Proceeding and Petitioner's Response thereto was filed on August, 17, 2000. An Order was previously issued addressing the issues in said Motion on October 6, 2000. An additional prehearing conference was held on October 30, 2000, wherein the parties were allowed to further address issues raised in said Motion. In consideration of arguments by the parties in both prehearing conferences, as well as, authorities raised in pleadings filed regarding Respondent's Motion, the Hearing Officer has determined that Respondent's Motion has merit and should be granted. Accordingly, the referenced case is hereby dismissed.

ISSUED in Austin, Texas this 7th day of November, 2000.

Stephen P. Webb
Special Education Hearing Officer

SERVICE LIST:
Christopher K.:
William Kimball
Koppel, Ezell, Jackson & Kimball
 Skaggs & Koppel Building
312 East Van Buren
P.O. Box 2878
Harlingen, Texas 78551

Harlingen ISD:
Denise Anderson
Walsh, Anderson, Brown, Schulze
 & Aldridge, P. C.
P.O. Box 2156
Austin, Texas 78768



EXHIBIT
"L"