36

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

APR 1 1 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| WILLIAM K., Individually and as next friend of C.K., a minor child, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | |
| HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT and LUCIUS D. BUNTON, HEARING OFFICER FOR THE TEXAS EDUCATION AGENCY, | § § § § § § § | CIVIL ACTION NO. B-00-125 |
| Defendant. | § § | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Harlingen Consolidated Independent School District's (HCISD) Motion to Dismiss (Docket No. 4). The court withdraws its November 3, 2000 Memorandum Opinion and Order (Docket No. 20) and substitutes the following Memorandum Opinion and Order.

Plaintiff, C.K., a child, sues by his next friend, William K., seeking damages as well as declaratory and injunctive relief. C.K. has been diagnosed with numerous mental disorders and learning disabilities. C.K.'s doctors recommended that he be placed in a special education residential facility. HCISD opposed plaintiff's request and refused to pay for the residential schooling. On May 7, 2000, HCISD requested that C.K.'s parents give consent to evaluate C.K. C.K.'s parents agreed at first, but then rescinded their agreement after discovering that HCISD

1

planned to contest C.K.'s request for private residential schooling. HCISD denied C.K.'s request for residential schooling, and on June 26, 2000, C.K. filed an appeal of the decision with the Texas Education Agency ("TEA"). The TEA assigned Mr. Lucius D. Bunton to be the Special Education Hearing Officer. On June 30, 2000, HCISD filed a motion to compel a comprehensive assessment of C.K. Mr. Bunton granted the motion. C.K. then filed a motion to clarify, requesting, among other things, that his parents be permitted to videotape the examination in a non-intrusive manner. On August 9, 2000, Mr. Bunton denied the motion to clarify. On August 14, 2000, C.K. filed his Original Complaint and Application for Declaratory Judgment and Injunctive Relief (Docket No. 1) with this Court. The issues filed in the federal court action were identical to those before the TEA on the motion to clarify.

After having filed his complaint in federal court, C.K. continued to pursue his administrative appeal with the TEA. C.K. again argued the issues raised in his motion to clarify before Mr. Stephen Webb, who succeeded Mr. Bunton as the special education hearing officer. On October 6, 2000, Mr. Webb found that he did not have enough evidence before him to decide whether the evaluation could be videotaped. However, after finding that HCISD had a right to examine C.K., Mr. Webb stayed the proceedings until such time as C.K. submitted to the evaluation. On October 12, 2000, C.K. filed with the TEA a motion ro reconsider his previous motion for clarification. C.K. has, to date, refused to submit to the evaluation, leading Mr. Webb to proclaim that he intended to dismiss C.K.'s appeal. C.K. filed with this Court an application for injunctive relief (Docket No. 18), seeking to enjoin Mr. Webb from dismissing his cause. HCISD, in turn, filed a motion to dismiss, asserting, *inter alia*, that this Court lacks jurisdiction to issue injunctive relief.

## DISCUSSION

The Individuals with Disabilities Education Act ("IDEA"), formerly known as the Education for All Handicapped Act ("EHA"), 20 U.S.C. § 1400 *et seq.*, provides federal money to state and local education agencies in order to assist them in educating handicapped children, on the condition that the states and local agencies implement the substantive and procedural requirements of the Act. The principal purpose of the Act is "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet the handicapped child's unique needs." *Cedar Rapids Community Sch. Dist. v. Garret F.*, 526 U.S. 66, 68, 119 S.Ct. 992, 143 L.Ed.2d 154 (1999) (quoting 20 U.S.C. § 1400(c)); *see Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

To carry out these objectives, the IDEA provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. *See Honig v. Doe*, 484 U.S. 305, 311-12, 108 S.Ct. 592, 597-98, 98 L.Ed.2d 686 (1988). Section 1415(b)(6) guarantees parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Then, section 1415(f) states that whenever the parents file such a complaint, they are entitled to an impartial due process hearing conducted by the state or local educational agency. Next, section 1415(g) provides that if the hearing is conducted by a local educational agency, "any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency." Finally, section 1415(i)(2) provides for a civil action:

3

> Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

Before initiating such civil action, however, § 1415(l) further makes clear that:

> before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Thus, it is beyond doubt that the statute provides that a plaintiff must first exhaust the state administrative remedies before bringing an action in federal court under § 1415(b)(6). *See Gardner v. School Bd. of Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992).

"The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities." *Ass'n for Retarded Citizens of Alabama v. Teague*, 830 F.2d 158, 160 (11th Cir.1987) (*citing Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). Key reasons for requiring the exhaustion of administrative remedies are as follows: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error. *See id.*

4

The exhaustion requirement, however, is not jurisdictional and therefore " 'is not to be applied inflexibly.' " *Id.* (*quoting McGee v. United States*, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971)). The exhaustion of the administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate. *See id. (citing to Smith v. Robinson*, 468 U.S. at 1014 n. 17, 1019 n. 22, 104 S.Ct. at 3469 n. 17, 3472 n. 22). C.K. bears the burden of demonstrating the futility or inadequacy of administrative review. *See Honig*, 484 U.S. at 327, 108 S.Ct at 606.

The declaratory and injunctive relief sought by William K. would outline the parameters of how the school district would conduct the comprehensive assessment of C.K. Such parameters would include the presence of experts designated by William K. as well as a videographer to videotape the evaluation. While C.K. couches his motion in the form of declaratory and injunctive relief, in reality he is asking this court to review the interlocutory orders of Mr. Bunton and Mr. Webb, which denied the same relief, prior to the exhaustion of his administrative remedies. Perhaps it is understandable that C.K. wishes to circumvent the administrative process and gain a quick judicial determination of the propriety of videotaping his evaluation, however such an appellate function is inconsistent with the character of a court of original jurisdiction. It is a well settled principle of law that a federal district court ordinarily lacks jurisdiction to review interlocutory administrative agency decision. *See, e. g., Boire v. Greyhound Corporation*, 376 U.S. 473 (1964); *Pepsico, Inc. v. F.T.C.*, 343 F. Supp. 396 (S.D.N.Y. 1972).

There is a well-settled principle that fits this dispute, that it is inappropriate for a district court to adjudicate administrative matters before a decision has been 'formalized'; in this case being for the TEA to complete its task of determining whether C.K. should be placed in a special education

residential facility. *See Myers v. Bethlehem Shipping Corporation*, 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). As there is a need to protect the integrity of a court's process by minimizing interlocutory appeals, except in extraordinary cases, so it is necessary to afford at least this protection to a state administrative agency that is trying to act within its proper sphere of authority. *Cf. FPC v. Louisiana Power & Light Company*, 406 U.S. 621, 647, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); *Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 652, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973). The Supreme Court clearly drew this analogy in *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) when it explained this principle:

> A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals . . .

*Id.*, at 193-194, 89 S.Ct. at 1662-1663. When these principles are applied to this case, it becomes abundantly clear that this Court should not entangle itself in a disagreement over an interlocutory order of a state administrative proceeding.

Further, William K. has not met the burden of demonstrating the futility or inadequacy of administrative review. William K. steadfastly maintains that exhaustion of administrative remedies should not be required because "Plaintiff's administrative remedies on the video tape issue are futile or inadequate." (Plaintiff's Second Supplemental Brief in Support of Preliminary Injunction (Docket No. 18) at 6). This assertion misses the point of the futility doctrine. Rather than examining whether

6

it is futile to contest an interlocutory order in an administrative proceeding, this court should address whether the continuation of the proceeding as a whole would be futile or inadequate. *See Honig*, 484 U.S. 305, 108 S.Ct. 592. In the instant case, this Court cannot make such a finding. William K. has consulted several distinguished experts, all of whom agree that C.K. needs to be placed in residential schooling. On the other hand, the school district has not even had a chance to evaluate C.K. pursuant to 20 U.S.C. § 1414. Even if the school district's expert advises against residential schooling, it would still be up to the hearing officer to weigh the credible evidence in order to determine where C.K. should be placed. It would be sheer speculation to hold that the administrative proceeding would be futile or inadequate at this embryonic stage. *Cf. Waterman v. Marquette-Alger Intermediate School District*, 739 F.Supp. 361, 368 (W.D. Mich. 1990) ("A procedure that may result in any substantial relief is not futile.").

If the Hearing officer's threat to dismiss the case were to be considered a significant factor in judging the merits of William K.'s futility claim, it must be considered that it was William K.'s refusal to comply with the orders of Mr. Bunton and Mr. Webb that brought the administrative hearing to an abrupt halt. If a parent can bypass the exhaustion requirement of the IDEA by refusing to comply with an interlocutory order of a hearing officer and attempting to overturn the order in federal court, the whole administrative scheme established by the IDEA would be rendered nugatory. Permitting parents to avoid the requirements of the IDEA through such a "back door" would not be consistent with the legislative intent of the IDEA.[1]

---

[1] The reasoning behind the exhaustion requirement id "[to prevent] deliberate disregard and circumvention of agency procedures established by Congress." *Teague*, 830 F.2d at 160.

7

William K. has refused to go forward with C.K.'s evaluation because of his belief that the denial of the request to videotape the assessment violates both his and C.K.'s rights. However, he has neither presented caselaw nor statutory support for the proposition that a parent has the right to videotape the comprehensive assessment of a student. William K. instead makes the broad generalization that such actions on the part of the school district violate sections 1414 and 1415 of the IDEA as well as Article 1, Section 19 of the Texas Constitution and the Fourteenth Amendment of the United States Constitution. The evidence before the Court shows that the school district complied with sections 1414 and 1415 of the IDEA. Further, the Court cannot find any evidence, and William K. has offered none, of any violations of a constitutional nature. On the contrary, the school district informed William K. of its intent to seek an evaluation of C.K. in accordance with the guidelines set forth in sections 1414 and 1415 of the IDEA. The school district also consented to allow William K. to observe the evaluation in an unobtrusive way. Such actions are consistent with the rights of the parents as outlined in the IDEA. William K. has wholly failed to demonstrate that his administrative remedy is inadequate. Numerous decisions have upheld the constitutionality of status-review proceedings either identical or substantially similar to the proceedings challenged here. *See, e. g., Lewis v. Reagan*, 660 F.2d 124 (5th Cir. 1981); *Townsend v. Carter*, 476 F.Supp. 1070 (N.D. Tex.1979); *see also Darr v. Carter*, 640 F.2d 163 (8th Cir. 1981) ("(t)he status-review procedure evidences an awareness of the requirements of due process and a sensitivity to the particular needs of the parties likely to be involved.").

Finally, even if the Court were to assume jurisdiction over this matter, William K.'s request for declaratory and injunctive relief would still fail on the merits. Specifically, in terms of William K.'s motion for a preliminary injunction, none of the required conditions are met for the granting of

this extraordinary remedy. Likelihood of success on the merits cannot be depended upon in view of the lack of ripeness on the merits. The prematurity of this litigation is also emphasized by the absence of irreparable harm that can be perceived with any degree of reasonable certainty. William K.'s contention that he and C.K. will be harmed if they were not permitted to videotape the comprehensive assessment is dubious, at best. As stated above, William K. has not pointed to any recognized right of a parent to videotape the school board's evaluation of a student.

For similar reasons, this Court cannot grant the declaratory relief sought by William K. A federal district court has jurisdiction to adjudicate a controversy, and the power to render a declaratory judgment under 28 U.S.C. § 2201, but the question of whether to entertain the action and grant relief is a matter within the discretion of the court. *See Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *PPG Industries, Inc. v. Continental Oil Company*, 478 F.2d 674, 679 (5th Cir. 1973). The United States Supreme Court has emphasized that the declaratory judgment procedure is not to be used to preempt or prejudge issues that are committed to initial decision to an administrative body. *See Public Service Commission v. Wycoff Company*, 344 U.S. 237, 246, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *see also State of California v. Oroville-Wyandotte Irrig. District*, 409 F.2d 532, 535-536 (9th Cir. 1969). The Supreme Court was even more emphatic with regard to the use of the declaratory judgment procedure for proceedings pending before a state administrative agency:

> Anticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism. Is the declaration contemplated here to be res judicata, so that the Commission cannot hear evidence and decide any matter for itself? If so, the federal court has virtually lifted the case out of the State Commission before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights.

9

*Public Service Commission*, 344 U.S. at 247, 73 S.Ct. at 242. Thus, federal courts should be wary of judicial interference in an administrative matter until an administrative decision has been formalized and its effects felt in a concrete way by the challenging party. *Cf. Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

The Fifth Circuit has not decided whether exhaustion is a jurisdictional requirement in IDEA cases. *See Gardner*, 958 F.2d at 111. Lack of exhaustion usually is waivable, as lack of jurisdiction is not. *See Air Courier Conference v. Postal Workers Union*, 498 U.S. 517, 522-23 & n. 3, 111 S.Ct. 913, 916-17 & n. 3, 112 L.Ed.2d 1125 (1991); *Weinberger v. Salfi*, 422 U.S. 749, 766-67, 95 S.Ct. 2457, 2467-68, 45 L.Ed.2d 522 (1975); *cf. Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). However, in the instant case William K. has failed to carry the burden of proving that exhaustion would be futile or inadequate. *See Honig*, 484 U.S. at 327, 108 S.Ct at 606.

DONE at Brownsville, Texas, on this the 10th day of April, 2001.

/s/ John Wm. Black
John Wm. Black
United States Magistrate Judge

10